**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

|   |   |   |
|---|---|---|
| In re: | ) ) | Chapter 11 |
| PGX HOLDINGS, INC., *et al.*,[1] | ) ) | Case No. 23-10718 (CTG) |
| Debtors. | ) ) ) | (Joint Administration Requested) |

**FIRST OMNIBUS MOTION OF DEBTORS FOR ENTRY OF AN ORDER
(I) AUTHORIZING THE REJECTION OF CERTAIN UNEXPIRED
LEASES AND EXECUTORY CONTRACTS, (II) AUTHORIZING ABANDONMENT OF
CERTAIN PERSONAL PROPERTY, EACH EFFECTIVE AS OF
THE PETITION DATE, AND (III) GRANTING RELATED RELIEF**

**LANDLORDS RECEIVING THIS FIRST OMNIBUS REJECTION MOTION SHOULD LOCATE THEIR NAMES AND AGREEMENTS IN THE SCHEDULE ATTACHED HERETO AS EXHIBIT 1 TO EXHIBIT A**

The above-captioned debtors and debtors in possession (collectively, the "Debtors"), respectfully state the following in support of this motion (the "Motion"):[2]

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: PGX Holdings, Inc. (2510); Credit Repair UK, Inc. (4798); Credit.com, Inc. (1580); Creditrepair.com Holdings, Inc. (7536); Creditrepair.com, Inc. (7680); eFolks Holdings, Inc. (5213); eFolks, LLC (5256); John C. Heath, Attorney At Law PC (8362); Progrexion ASG, Inc. (5153); Progrexion Holdings, Inc. (7123); Progrexion IP, Inc. (5179); Progrexion Marketing, Inc. (5073); and Progrexion Teleservices, Inc. (5110). The location of the Debtors' service address for purposes of these chapter 11 cases is: 257 East 200 South, Suite 1200, Salt Lake City, Utah 84111.

[2] A detailed description of the Debtors and their business, including the facts and circumstances giving rise to the Debtors' chapter 11 cases, is set forth in the *Declaration of Chad Wallace, Chief Executive Officer of PGX Holdings, Inc., in Support of Chapter 11 Filing and First Day Motions* (the "First Day Declaration"), filed contemporaneously herewith on June 4, 2023 (the "Petition Date") and incorporated by reference herein. Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the First Day Declaration.

10520948.v3

**Relief Requested**

1.　　The Debtors seek entry of an order, substantially in the form attached hereto as **Exhibit A** (the "Order"), (a) authorizing the rejection of (i) certain unexpired leases (each, a "Lease," and collectively, the "Leases") for nonresidential real property located at the premises (collectively, the "Premises") set forth on **Exhibit 1** to **Exhibit A** attached hereto and (ii) certain executory contracts (each, a "Contract," and collectively, the "Contracts," and collectively with the Leases, the "Agreements[3]") set forth on **Exhibit 1** to **Exhibit A** attached hereto, (b) authorizing the abandonment of certain equipment, fixtures, furniture, or other personal property (the "Personal Property") that may be located at the Premises, each effective as of the Petition Date; and (c) granting related relief.

**Jurisdiction and Venue**

2.　　The United States Bankruptcy Court for the District of Delaware (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012. The Debtors confirm their consent, pursuant to rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), to the entry of a final order by the Court in connection with this motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

3.　　Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

---

[3] Certain of the Agreements may have been terminated prior to the Petition Date and their inclusion in this Motion is out of an abundance of caution.

4. The statutory bases for the relief requested herein are sections 105(a), 365(a), and 554(a) of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "Bankruptcy Code"), rule 6006 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Local Rule 9013-1(m).

## Background

5. The Debtors are one of the nation's leading credit repair service providers, helping customers repair their credit and achieve their credit goals. Setting the industry standard for transparency, cutting edge technology-enabled solutions, and quality customer service, the Debtors help consumers access and understand the information contained in their credit reports, ensure that the information contained in those reports is fair, accurate, and complete, and address other factors that may negatively impact their credit scores. The Debtors are headquartered in Salt Lake City, Utah and have employees in nine other states. Debtor PGX Holdings, Inc. and Debtor John C. Heath, Attorney At Law PC d/b/a Lexington Law Firm ("Lexington Law") generated approximately $388 million in combined revenue in 2022. As of the Petition Date, the Debtors have approximately $423 million in funded-debt obligations.

6. As set forth in greater detail in the First Day Declaration, certain Debtors are currently involved in litigation with the Consumer Financial Protection Bureau (the "CFPB") before the United States District Court for the District of Utah (the "District Court"). In such litigation, on five separate counts, the CFPB alleged that the defendant Debtors committed certain violations of federal consumer protection law through operation of their consumer assistance and credit repair business. On March 10, 2023, the District Court granted partial summary judgment against these Debtors on the first count in the litigation, finding that the billing practices were in violation of 16 C.F.R. § 310.4(a)(2), the Telemarketing Sales Rule (the "TSR"). In connection

with the first count, the CFPB demanded nearly $3 billion in restitution or refunds and other monetary relief, along with certain injunctive relief.

7. In response to the District Court's ruling on the TSR count, and a subsequent denial of a stay of the ruling, the Debtors immediately stopped certain telemarketing activities, closed many of their call centers, and began evaluating the impact of the ruling on the future of their business, a process that remains ongoing. Following the Debtors' reduction of business operations, the Debtors' revenues also declined. Upon further review, the Debtors determined that their liquidity would continue to be severely constrained and their debt obligations are now unsustainable in light of their smaller operational footprint and decreased revenues going forward. The Debtors have commenced these chapter 11 cases to fully and fairly resolve their liabilities, with the aim of preserving value for stakeholders and maintaining the ability to deliver best-in-class crucial credit repair services to customers.

8. On the Petition Date, each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. The Debtors are operating their business and managing their property as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. Concurrently with the filing of this motion, the Debtors filed a motion requesting procedural consolidation and joint administration of these chapter 11 cases pursuant to Bankruptcy Rule 1015(b). No request for the appointment of a trustee or examiner has been made in these chapter 11 cases, and no official committees have been appointed or designated.

**Leases to Be Rejected**

9. As a part of their restructuring efforts, the Debtors have examined their retail footprint and determined that their enterprise would be best served by eliminating certain locations. The Debtors have accordingly vacated the Premises set forth on Exhibit 1 to the Order attached hereto. In connection with vacating the locations, the Debtors delivered possession of the Premises

to the respective landlords and fully demonstrated their decision to vacate the Premises. In addition, the Debtors hereby waive their right to withdraw this Motion, absent the consent of the respective Landlord(s). To preserve value for their estates by avoiding unnecessary rent costs the Debtors hereby seek to reject the Leases.

10. The Leases relate to locations at which the Debtors are no longer conducting business. In certain circumstances, the Landlord(s) have retaken possession and locked the Debtors out of the Premises. In the other locations, the Debtors have willfully vacated the premises and removed all of the personal property that they intend to remove. Accordingly, the Debtors no longer have possession of the locations subject to the Leases and disclaim any interest they may have in the personal property that is in such locations.

11. The Leases to be rejected are no longer being used by the Debtors and provide no benefit to the Debtors' estates or these chapter 11 cases. Absent rejection, the Debtors would be obligated to pay rent under the Leases even though they have ceased operations at, and are no longer in possession of, these locations. Moreover, in addition to their obligations to pay rent under the Leases, the Debtors would be obligated to pay certain real property taxes, utilities, insurance, and other related charges associated with certain of the Leases. The Debtors have determined in their business judgment that such costs constitute a wasteful drain of estate assets. Additionally, the Debtors have determined in their business judgment that the costs of the Leases exceed any marginal benefits that could potentially be achieved from assignments or subleases of the Leases.

12. Accordingly, in an effort to reduce postpetition administrative costs and in the exercise of the Debtors' sound business judgment, the Debtors have determined that rejecting the

5

Leases set forth on <u>Exhibit 1</u> to the Order attached hereto as **Exhibit A** effective as of the Petition Date is in the best interests of the Debtors, their estates, and their creditors.

### Personal Property to Be Abandoned

13.     Additionally, the Debtors evaluated the Personal Property that may be located at the Premises and determined that (a) the Personal Property is of inconsequential value or (b) the cost of removing and storing the Personal Property for future use, marketing, or sale exceeds its value to the Debtors' estates, especially if postpetition rent with respect to such location would need to be paid.  Further, the Debtors' use of much of the Personal Property was for location-specific purposes.  Since the Debtors have closed the stores at the Premises, the Personal Property is no longer necessary for the administration of the Debtors' estates.

14.     Accordingly, to reduce postpetition administrative costs and in the exercise of the Debtors' sound business judgment, the Debtors believe that the abandonment of the Personal Property is appropriate and in the best interests of the Debtors, their estates, and their creditors.

### Contracts to be Rejected

15.     As a part of their restructuring efforts, the Debtors have begun to examine their executory contracts to determine which contracts may be useful to their ongoing operations.  The Debtors have identified the Contracts set forth on **Exhibit 1** to the order attached hereto as contracts that the Debtors do not intend to utilize in their ongoing operations.  The Debtors, either by the filing of this Motion or other methods prior to the filing of this Motion, have demonstrated their intention to cease utilization of the Contracts.  In addition, the Debtors hereby waive their right to withdraw this Motion, absent the consent of the respective counterparty to the Contracts.  To preserve the value for their estates, the Debtors seek to reject the Contracts.

16.     The Contracts to be rejected are no longer being used by the Debtors and provide no benefit to the Debtors' estates or these chapter 11 cases.  Absent rejection, the Debtors may be

obligated to pay charges under the Contracts that they are no longer utilizing. The Debtors have determined in their business judgement that such charges constitute a wasteful drain of estate assets. Additionally, the Debtors have determined in their business judgement that the costs of the Contracts exceed any marginal benefits that could potentially be achieved from assignments of the Contracts.

17. Accordingly, in an effort to reduce postpetition administrative costs and in the exercise of the Debtors' sound business judgment, the Debtors have determined that rejecting the Contracts set forth on **Exhibit 1** to the Order attached hereto as **Exhibit A**, effective as of the Petition Date, is in the best interests of the Debtors, their estates, and their creditors.

## Basis for Relief

I. **Rejection of the Agreements Effective as of the Petition Date Is Appropriate and Provides the Debtors with Significant Cost Savings.**

18. Section 365(a) of the Bankruptcy Code provides that a debtor in possession, "subject to the court's approval, may . . . reject any executory contract or unexpired lease of the debtor." 11 U.S.C. § 365(a). The decision to assume or reject an executory contract or unexpired lease is a matter within the "business judgment" of the debtor. *See Nat'l Labor Relations Bd. v. Bildisco & Bildisco (In re Bildisco)*, 682 F.2d 72, 79 (3d Cir. 1982) ("The usual test for rejection of an executory contract is simply whether rejection would benefit the estate, the 'business judgment' test." (citation omitted)); *see also Glenstone Lodge, Inc. v. Buckhead Am. Corp. (In re Buckhead Am. Corp.)*, 180 B.R. 83, 88 (Bankr. D. Del. 1995). Application of the business judgment standard requires a court to approve a debtor's business decision unless the decision is the product of bad faith, whim or caprice. *See Lubrizol Enters., Inc. v. Richmond Metal Finishes*, 756 F.2d 1043, 1047 (4th Cir. 1985). Further, "[t]his provision allows a trustee to relieve the bankruptcy estate of burdensome agreements which have not been completely performed."

*Stewart Title Guar. Co. v. Old Republic Nat'l Title Ins. Co.*, 83 F.3d 735, 741 (5th Cir. 1996) (citation omitted).

19. Rejection of an unexpired lease is appropriate where such rejection would benefit the estate. *See Sharon Steel Corp. v. Nan Fuel Gas Distrib. Corp. (In re Sharon Steel Corp.)*, 872 F.2d 36, 39–40 (3d Cir. 1989). Upon finding that a debtor has exercised its sound business judgment in determining that rejection of certain contracts or leases is in the best interests of its creditors and all parties in interest, a court should approve the rejection under section 365(a). *See In re Federal Mogul Global, Inc.*, 293 B.R. 124, 126 (D. Del. 2003); *In re Bradlees Stores, Inc.*, 194 B.R. 555, 558 n.1 (Bankr. S.D.N.Y. 1996), *appeal dismissed*, 210 B.R. 506 (S.D.N.Y. 1997); *In re Summit Land Co.*, 13 B.R. 310, 315 (Bankr. D. Utah 1981) (holding that absent extraordinary circumstances, court approval of a debtors' decision to assume or reject an executory contract "should be granted as a matter of course").

20. The Agreements are not a source of potential value for the Debtors' estates, creditors, or interest holders. The Debtors' obligations to pay, for example, postpetition rent, real estate taxes, utilities, insurance, and other related charges eliminates any potential value of the Agreements to the Debtors' estates—including any potential value from an assignment or sublease. Accordingly, the Debtors have determined that the Agreements constitute unnecessary drains on the Debtors' resources and, therefore, rejection of the Agreements reflects the Debtors' exercise of sound business judgment.

## II.    The Abandonment of Personal Property Is Appropriate.

21. Further, the abandonment of the Personal Property is appropriate and authorized by the Bankruptcy Code. *See* 11 U.S.C. § 554(a). Section 554(a) provides that "[a]fter notice and a hearing, the trustee may abandon any property of the estate that is burdensome to the estate or that is of inconsequential value and benefit to the estate." *Id.* Courts generally give a debtor in

possession great deference to its decision to abandon property. *See, e.g.*, *In re Vel Rey Props., Inc.*, 174 B.R. 859, 867 (Bankr. D.D.C. 1994) ("Clearly, the court should give deference to the trustee's judgment in such matters."). Unless certain property is harmful to the public, once a debtor has shown that it is burdensome or of inconsequential value to the estate, a court should approve the abandonment. *Id.*

22.  The Debtors have determined that the costs of moving and storing the Personal Property would outweigh any benefit to the Debtors' estates. Further, any efforts by the Debtors to move or market the Personal Property could unnecessarily delay the Debtors' surrender of the Premises and the rejection of the Leases, thus potentially adding postpetition rent to the cost-benefit calculation. Accordingly, it is in the best interests of the Debtors and their estates for the Debtors to abandon the Personal Property located on the Premises.

23.  Courts in this jurisdiction have approved relief similar to the relief requested herein. *See, e.g., In re Highpoint Resources Corp.*, No. 21-10565 (CSS) (Bankr. D. Del. March 31, 2021) (authorizing, but not directing, the debtors to abandon personal property that may be located at the debtors' leased premises that are subject to a rejected lease); *In re Bluestem Brands, Inc.*, No. 20-10566 (MFW) (Bankr. D. Del. Apr. 15, 2020) (same); I*n re Forever 21, Inc.*, No. 19-12122 (KG) (Bankr. D. Del. Oct. 28, 2019) (same); *In re Things Remembered, Inc.*, No. 19-10234 (KG) (Bankr. D. Del. Feb. 28, 2019) (same); *In re Charming Charlie Holdings Inc.*, No. 17-12906 (CSS) (Bankr. D. Del. Jan. 10, 2018) (same).[4]

---

[4]  Because of the voluminous nature of the orders cited herein, such orders have not been attached to this motion. Copies of these orders are available upon request of the Debtors' proposed counsel.

9

### III. This Court Should Deem the Agreements Rejected Effective as of the Petition Date.

24. Section 365 of the Bankruptcy Code does not restrict a bankruptcy court from applying rejection retroactively. *See In re Jamesway Corp.*, 179 B.R. 33, 37 (S.D.N.Y. 1995) (stating that section 365 does not include "restrictions as to the manner in which the court can approve rejection"); *see also In re CCI Wireless, LLC*, 297 B.R. 133, 138 (D. Colo. 2003) (noting that section 365 "does not prohibit the bankruptcy court from allowing the rejection of [leases] to apply retroactively"). Courts have held, that a bankruptcy court may, in its discretion, authorize rejection retroactively to a date prior to entry of an order authorizing such rejection where the balance of equities favors such relief. *See In re Thinking Machs. Corp.*, 67 F.3d 1021, 1028–29 (1st. Cir. 1995) (stating "rejection under section 365(a) does not take effect until judicial approval is secured, but the approving court has the equitable power, in suitable cases, to order a rejection to operate retroactively"); *In re Chi-Chi's, Inc.*, 305 B.R. 396, 399 (Bankr. D. Del. 2004) (stating "the court's power to grant retroactive relief is derived from the bankruptcy court's equitable powers so long as it promotes the purposes of § 365(a)"); *CCI Wireless*, 297 B.R. at 140 (holding that a "court has authority under section 365(d)(3) to set the effective date of rejection at least as early as the filing date of the motion to reject"); *BP Energy Co. v. Bethlehem Steel Corp.*, 2002 WL 31548723, at *3 (S.D.N.Y. Nov. 15, 2002) ("We cannot conclude . . . that a bankruptcy court's assignment of a retroactive rejection date falls outside of its authority when the balance of the equities favors this solution."); *see also In re At Home Corp.*, 392 F.3d 1064, 1065-66 (9th Cir. 2004) (holding "that a bankruptcy court may approve retroactively the rejection of an unexpired nonresidential lease"). In *In re Namco Cybertainment, Inc.*, the Court stated that retroactive rejection of an unexpired lease was permissible, provided: (a) the premises (and the keys thereto) were surrendered with an unequivocal statement of abandonment to the landlord; (b) the motion was served on the landlord; (c) the official committee consented to the requested relief; and (d) the

debtor waived its right to withdraw the motion. No. 98-173 (PJW) (Bankr. D. Del. Feb. 6, 1998); *see also TW, Inc. v. Angelastro (In re TW, Inc.)*, No. 03-10785, 2004 WL 115521, at *2 (D. Del. Jan. 14, 2004) (upholding bankruptcy court ruling denying rejection of leases *nunc pro tunc* to the petition date when the debtor had not surrendered possession prior to the petition date).

25.    Here, the balance of equities favors rejection of the Agreements effective as of the Petition Date.  Without such relief, the Debtors will potentially incur unnecessary administrative expenses related to the Agreements, which provide no benefit to the Debtors' estates in light of their recent operational wind-down. *See* 11 U.S.C. § 365(d)(3).  In fact, possession of the Premises was delivered to each respective landlord prior to the Petition Date with an unequivocal and irrevocable statement of surrender and abandonment of the Premises to the respective landlord. Similarly, the Debtors have ceased utilizing the Contracts and have either provided the counterparties with a statement that they will no longer be utilizing the Contracts prior to the filing of this Motion, or this Motion will serve as such statement.  Moreover, the counterparties will not be unduly prejudiced if the rejection is deemed effective as of the Petition Date. Contemporaneously with the filing of this Motion the Debtors will cause notice of this Motion to be served on the landlords and contract counterparties, thereby allowing each party sufficient opportunity to respond accordingly.  The Debtors have sought the relief requested at the earliest possible moment in these chapter 11 cases and do not seek to reject the Agreements effective as of the Petition Date due to any undue delay on their own part.

26.    Courts in this jurisdiction have approved relief similar to that requested herein. *See, e.g., In re Town Sports International, LLC*, No. 20-12168 (CSS) (Bankr. D. Del. Oct. 16, 2020) (authorizing rejection of unexpired leases effective as of the rejection date); *In re Forever 21, Inc.*, No. 19-12122 (KG) (Bankr. D. Del. Oct. 28, 2019) (authorizing rejection of unexpired leases

effective as of the petition date); *In re Bluestem Brands, Inc.*, No. 20-10566 (MFW) (Bankr. D. Del. Apr. 15, 2020) (authorizing rejection of unexpired leases effective as of the rejection date); *In re PES Holdings, LLC*, No. 19-11626 (KG) (Bankr. D. Del. Sep. 19, 2019) (authorizing rejection of unexpired leases and executory contracts).

27. Accordingly, the Debtors respectfully submit that the Court should deem the Agreements identified on **Exhibit 1** annexed to **Exhibit A** attached hereto rejected, effective as of the Petition Date.

### Waiver of Bankruptcy Rule 6004(a) and 6004(h)

28. To implement the foregoing successfully, the Debtors seek a waiver of the notice requirements under Bankruptcy Rule 6004(a) and the fourteen-day stay of an order authorizing the use, sale, or lease of property under Bankruptcy Rule 6004(h).

### Notice

29. The Debtors will provide notice of this motion to: (a) the United States Trustee; (b) the holders of the 30 largest unsecured claims against the Debtors (on a consolidated basis); (c) the office of the attorney general for each of the states in which the Debtors operate; (d) the United States Attorney's Office for the District of Delaware; (e) the Internal Revenue Service; (f) the United States Securities and Exchange Commission; (g) the United States Department of Justice; (h) the DIP Agent and counsel thereto; (i) First Lien Credit Agreement Agent and counsel thereto; (j) the Second Lien Credit Agreement Agent and counsel thereto; (k) the Lease and Contracts counterparties; and (l) any party that has requested notice pursuant to Bankruptcy Rule 2002 (the "Notice Parties"). The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

10520948.v3

**No Prior Request**

30. No prior request for the relief sought in this motion has been made to this or any other court.

WHEREFORE, the Debtors respectfully request that the Court enter the Order granting the relief requested herein and such other relief as the Court deems appropriate under the circumstances.

Dated: June 4, 2023
Wilmington, Delaware

/s/ Michael W. Yurkewicz

| | |
|---|---|
| **KLEHR HARRISON HARVEY BRANZBURG LLP** | **KIRKLAND & ELLIS LLP** <br> **KIRKLAND & ELLIS INTERNATIONAL LLP** |
| Domenic E. Pacitti (DE Bar No. 3989) | Joshua A. Sussberg, P.C. (*pro hac vice* pending) |
| Michael W. Yurkewicz (DE Bar No. 4165) | 601 Lexington Ave |
| 919 North Market Street, Suite 1000 | New York, New York 10022 |
| Wilmington, Delaware 19801 | Telephone:   (212) 446-4800 |
| Telephone:   (302) 426-1189 | Facsimile:    (212) 446-4900 |
| Facsimile:    (302) 426-9193 | Email:           joshua.sussberg@kirkland.com |
| Email:           dpacitti@klehr.com | |
|                       myurkewicz@klehr.com | - and - |
| - and - | Spencer Winters (*pro hac vice* pending) |
| | Alison J. Wirtz (*pro hac vice* pending) |
| Morton R. Branzburg (*pro hac vice* pending) | 300 North LaSalle |
| 1835 Market Street, Suite 1400 | Chicago, Illinois 60654 |
| Philadelphia, Pennsylvania 19103 | Telephone:   (312) 862-2000 |
| Telephone:   (215) 569-3007 | Facsimile:    (312) 862-2200 |
| Facsimile:    (215) 568-6603 | Email:           spencer.winters@kirkland.com |
| Email:           mbranzburg@klehr.com |                       alison.wirtz@kirkland.com |
| *Proposed Co-Counsel to the Debtors and Debtors in Possession* | *Proposed Co-Counsel to the Debtors and Debtors in Possession* |

10520948.v3