IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| PGX HOLDINGS, INC, et al.,[1] | : | Case No. 23-10718 (CTG) |
| | : | |
| | : | Obj. Deadline: June 21, 2023 at 4:00 p.m. |
| Debtors. | : | Hearing Date: June 28, 2023 at 2:00 p.m. |

**UNITED STATES TRUSTEE'S OBJECTION TO MOTION OF THE DEBTORS FOR ENTRY OF ORDERS (I)(A) APPROVING BIDDING PROCEDURES FOR SUBSTANTIALLY ALL OF THE DEBTORS' ASSETS, (B) AUTHORIZING THE DEBTORS TO ENTER INTO ONE OR MORE STALKING HORSE AGREEMENTS AND TO PROVIDE BIDDING PROTECTIONS THEREUNDER, (C) SCHEDULING AN AUCTION AND APPROVING THE FORM AND MANNER OF NOTICE THEREOF, (D) APPROVING ASSUMPTION AND ASSIGNMENT PROCEDURES, AND (E) SCHEDULING A SALE HEARING AND APPROVING THE FORM AND MANNER OF NOTICE THEREOF; (II)(A) APPROVING THE SALE OF THE DEBTORS' ASSETS FREE AND CLEAR OF LIENS, CLAIMS, INTERESTS AND ENCUMBRANCES AND (B) APPROVING THE ASSUMPTION AND ASSIGNMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES; AND (III) GRANTING RELATED RELIEF**

In support of his objection to the *Motion of the Debtors for Entry of Orders (I)(A) Approving Bidding Procedures for Substantially All of the Debtors' Assets, (B) Authorizing the Debtors to Enter Into One or More Stalking Horse Agreements and to Provide Bidding Protections Thereunder, (C) Scheduling an Auction and Approving the Form and Manner of Notice Thereof, (D) Approving Assumption and Assignment Procedures, and (E) Scheduling a Sale Hearing and Approving the Form and Manner of Notice Thereof; (II)(A) Approving the Sale*

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number are:: PGX Holdings, Inc. (2510); Credit Repair UK, Inc. (4798); Credit.com, Inc. (1580); Creditrepair.com Holdings, Inc. (7536); Creditrepair.com, Inc. (7680); eFolks Holdings, Inc. (5213); eFolks, LLC (5256); John C. Heath, Attorney At Law PC (8362); Progrexion ASG, Inc. (5153); Progrexion Holdings, Inc. (7123); Progrexion IP, Inc. (5179); Progrexion Marketing, Inc. (5073); and Progrexion Teleservices, Inc. (5110). The location of the Debtors' service address for purposes of these chapter 11 cases is: 257 East 200 South, Suite 1200, Salt Lake City, Utah 84111.

*of the Debtors' Assets Free and Clear of Liens, Claims, Interests and Encumbrances and (B) Approving the Assumption and Assignment of Executory Contracts and Unexpired Leases; and (III) Granting Related Relief* [D.I. 66] (the "Motion"), Andrew R. Vara, the United States Trustee for Regions 3 and 9 ("U.S. Trustee"), by and through his undersigned counsel, states as follows:

## PRELIMINARY STATEMENT

1. The Motion seeks, *inter alia*, approval of bidding procedures for the sale of substantially all of the Debtors' assets and authority to enter into two stalking horse agreements. The first stalking horse agreement is with the Debtors' DIP Lenders[2] and prepetition First Lien Lenders (collectively, the "Lenders") who seek to make a credit bid for substantially all of the assets of the Debtors (the "PGX Assets"), exclusive of Lexington Law. The second stalking horse agreement is with the owners and the principal attorney at Lexington Law for substantially all of the assets of Lexington Law. The two agreements are conditioned on each other and are intended to permit the Debtors' businesses to continue as a going concern. Mot. ¶ 2.

2. The U.S. Trustee objects to the Motion to the extent that it seeks to provide a bid protection in the form of an expense reimbursement in a maximum amount not to exceed $1 million to the Lenders making a credit bid for the PGX Assets.[3] Bid protections are intended to provide an incentive for a party to expend the time and resources performing necessary due diligence to make a stalking horse bid. Here, the Lenders did not need any additional incentive to place a bid, as they are already incentivized to protect the value of their collateral as a secured lender to the Debtors and will not need to be compensated if they are not the prevailing bidder.

---

[2] Capitalized terms not defined herein shall have the meaning ascribed to such terms in the Motion.

[3] No expense reimbursement is sought in connection with the stalking horse bid for the Lexington Law assets. Motion, ¶ 23.

The U.S. Trustee also objects to the Debtors' request to treat any allowed expense reimbursement as a superpriority administrative claim. The Debtors seek superpriority status under sections 105(a), 503(b) and 507(a)(2) of the Bankruptcy Code, none of which provide for superpriority status.

## JURISDICTION AND STANDING

3. This Court has jurisdiction to hear this Objection.

4. Pursuant to 28 U.S.C. § 586, the U.S. Trustee is charged with the administrative oversight of cases commenced pursuant to chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"). This duty is part of the U.S. Trustee's overarching responsibility to enforce the bankruptcy laws as written by Congress and interpreted by the courts. *See United States Trustee v. Columbia Gas Sys., Inc. (In re Columbia Gas Sys., Inc.),* 33 F.3d 294, 295-96 (3d Cir. 1994) (noting that U.S. Trustee has "public interest standing" under 11 U.S.C. § 307, which goes beyond mere pecuniary interest); *Morgenstern v. Revco D.S., Inc. (In re Revco D.S., Inc.)*, 898 F.2d 498, 500 (6th Cir. 1990) (describing the U.S. Trustee as a "watchdog").

5. Pursuant to 11 U.S.C. § 307, the U.S. Trustee has standing to be heard with regard to this Objection.

## BACKGROUND

6. On June 4, 2023, the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code.

7. On June 12, 2023, the U.S. Trustee appointed an official committee of unsecured creditors.

8. On June 6, 2023, the Debtors filed the Motion.

9. The proposed purchase price of the PGX Assets consists of a credit bid of the amount of the DIP Facility, plus a portion of the first lien credit facility, for a total purchase

amount of approximately $237.5 million.  The proposed purchase price for the Lexington Law assets consists of the assumption and cure of the Operating Agreements with PGX, including (i) prepetition cure amounts of approximately $24 million, (ii) payment of up to $4.4 million of administrative expenses, and (iii) the assumption of the engagement agreements between Lexington Law and its direct clients.  Motion, ¶ 2.

## ARGUMENT

**A. The Lenders Are Not Entitled to the Requested Bid Protection.**

10. Bid protections must be sought and analyzed under Bankruptcy Code section 503(b).  See *In re Reliant Energy Channelview LP*, 594 F.3d 200, 206 (3d Cir. 2010) ("[A] bidder must seek a break-up fee under 11 U.S.C. § 503(b)[.]") (citing *Calpine Corp. v. O'Brien Envtl. Energy, Inc. (In re O'Brien Envtl. Energy, Inc.*), 181 F.3d 527, 535 (3d Cir.  1999).

11. The analysis of bid protections under section 503(b) "must be made in reference to general administrative expense jurisprudence.  In other words, the allowability of break-up fees, like that of other administrative expenses, depends upon the requesting party's ability to show that the fees were actually necessary to preserve the value of the estate." *O'Brien*, 181 F.3d at 535.  "[T]ermination fees are subject to the same general standard used for all administrative expenses under 11 U.S.C. § 503[.]" *In re Energy Future Holdings Corp.*, 904 F.3d 298, 313 (3d Cir. 2018).

12. A break-up fee must be structured to encourage, not discourage competing bids. *See In re O'Brien*, 181 F.3d at 535 ("the assurance of a break-up fee may serve to induce an initial bid (a permissible purpose), it may also serve to advantage a favored purchaser over other bidders by increasing the cost of acquisition to the other bidders (an impermissible purpose)." Even if a break-up fee would benefit the estate, the Court must still determine "whether the proposed fee's potential benefits to the estate outweigh any potential harms, such that the fee is

actually necessary to preserve the value of the estate." *Energy Future Holdings,* 904 F.3d at 314 (*citing O'Brien*, 181 F.3d at 535 (quotation marks omitted).

13. Here, the Lenders certainly would have been prepared to make a bid whether or not the expense reimbursement was offered as a bid protection, in order to protect the value of its collateral. Additionally, whatever the outcome of the auction, the Lenders will benefit. Either the Lenders will be the winning bidder, or if they are outbid, the additional proceeds of the sale will be used to pay down the Lenders' pre-petition claims and DIP financing claims. Since the Lenders have a strategic incentive to preserve their current interest in the Debtors, they do not need the protection of the requested expense reimbursement to secure their participation. As such, the requested expense reimbursement is not "actually necessary to preserve the value of the estate," as required under *O'Brien*.

    **B. The Expense Reimbursement Is Not Entitled to Superpriority Treatment Under the Bankruptcy Code.**

14. The Debtors seek to have the expense reimbursement treated as an "allowed super priority administrative expense claim" pursuant to sections 105(a), 503(b), and 507(a)(2) of the Code, to provide such claims with priority over all other administrative expenses of the kind specified in section 503(b) of the Bankruptcy Code, except (i) the Carve-Out (as defined in the DIP Order) and (ii) claims arising under the DIP Financing Agreement. Ex. A to Mot. ¶ 13.

15. None of the sections cited by the Debtors – namely, sections 105(a), 503(b), and 507(a)(2) of the Code -- provide for superpriority status. Rather, such status is provided for only in sections 364(c)(1) and 507(b) of the Code. Those sections are addressed exclusively to (a) claims of entities providing post-petition financing, and (b) claims of pre-petition secured lenders for adequate protection for diminution in value of their collateral during the bankruptcy case. Expense reimbursements in connection with sales do not fall under either of these two categories

and therefore cannot receive superpriority administrative claim status under the Bankruptcy Code. "[C]ourts do not have the authority to create a right to recover from [a] bankruptcy estate where no such right exists under the Bankruptcy Code." *See Energy Future Holdings Corp.*, 904 F.3d at 313 (*quoting O'Brien*, 181 F.3d at 532) (quotation marks omitted).

16.     Permitting stalking horses, especially those with connections to the Debtors' majority equity holder and pre and post-petition lenders, to prime other administrative expense claimants has no basis in the Bankruptcy Code, is inconsistent with Third Circuit precedent, and should be denied.

WHEREFORE, the U.S. Trustee requests that this Court issue an order denying the Motion and/or granting such other relief as this Court deems appropriate, fair and just.

>
> Respectfully submitted,
>
> **ANDREW R. VARA**
> **UNITED STATES TRUSTEE**
> **REGIONS 3 AND 9**
>
> **By:**   */s/ Jane M. Leamy*
>      Jane M. Leamy (#4113)
>      Trial Attorney
>      J. Caleb Boggs Federal Building
>      844 King Street, Suite 2207, Lockbox 35
>      Wilmington, DE 19801
>      (302) 573-6491
>      Jane.M.Leamy@usdoj.gov

Dated: June 21, 2023