IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) Chapter 11 |
| PGX HOLDINGS, INC., *et al.*,[1] | ) Case No. 23-10718 (CTG) |
| Debtors. | ) (Jointly Administered) |
| | ) Objection Deadline: July 14, 2023 at 4:00 p.m. |
| | ) Hearing Date: July 21, 2023 at 10:00 a.m. |

**DEBTORS' APPLICATION FOR ENTRY OF AN ORDER AUTHORIZING RETENTION AND EMPLOYMENT OF WILLIAMS & CONNOLLY LLP AS SPECIAL LITIGATION COUNSEL EFFECTIVE AS OF JUNE 4, 2023 PURSUANT TO SECTIONS 327(E), 328(A), 330, AND 363(B)(1) OF THE BANKRUPTCY CODE**

The above-captioned debtors and debtors in possession (collectively, the "Debtors")[2] respectfully state as follows in support of this application (this "Application").

**Relief Requested**

1. PGX Holdings, Inc. and certain of its affiliated debtors and debtors in possession (collectively, with their Debtor affiliates, the "Debtors" and, together with their non-Debtor affiliate CreditCo Limited, but excluding their Debtor affiliate Lexington Law Firm, "PGX").[3] PGX Holdings, Inc. is a private company based in Salt Lake City, Utah, organized under the laws

---

[1] The debtors in these chapter 11 cases, along with the last four digits of each debtor's federal tax identification number, are: PGX Holdings, Inc. (2510); Credit Repair UK, Inc. (4798); Credit.com, Inc. (1580); Creditrepair.com Holdings, Inc. (7536); Creditrepair.com, Inc. (7680); eFolks Holdings, Inc. (5213); eFolks, LLC (5256); John C. Health, Attorney At Law PC (8362); Progrexion ASG, Inc. (5153); Progrexion Holdings, Inc. (7123); Progrexion IP, Inc. (5179); Progrexion Marketing, Inc. (5073); and Progrexion Teleservices, Inc. (5110). The location of the debtors' service address for purposes of these chapter 11 cases is: 257 East 200 South, Suite 1200, Salt Lake City, Utah 84111.

[2] A detailed description of the Debtors and their business and the Debtors' chapter 11 cases are set forth in greater detail in the Declaration of Chad Wallace in Support of Chapter 11 Petitions and First Day Motions [Docket No. 12] (the "First Day Declaration"), filed contemporaneously with the Debtors' voluntary petitions for relief filed under chapter 11 of title 11 of the United States Code, on June 4, 2023 (the "Petition Date").

[3] Capitalized terms used but not immediately defined herein have the meanings given to them in other sections herein.

of Delaware, and a debtor and debtor in possession in the above-captioned cases along with 11 of its direct and indirect subsidiaries.

2. Pursuant to sections 327(e), 328(a), 330, and 363(b)(1) of title 11 of the United States Code (the "Bankruptcy Code") and rules 2014(a), 2016, and 5002 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), the Debtors seek entry of an order, substantially in the form attached hereto as **Exhibit A** (the "Order"), authorizing them to retain and employ the law firm of Williams & Connolly LLP ("Williams & Connolly" or the "Firm") as special litigation counsel ("Special Litigation Counsel") to represent the Debtors in connection with the CFPB Litigation (as defined herein) in accordance with the terms and conditions set forth in that certain engagement letter between the Debtors and Williams & Connolly (the "Engagement Letter"), a copy of which is attached as **Exhibit 1** to **Exhibit B** hereto, effective as of June 4, 2023. In support of this Application, the Debtors submit the *Declaration of Edward J. Bennett in Support of Debtors' Application for Entry of an Order Authorizing Retention and Employment of Williams & Connolly as Special Litigation Counsel Effective as of June 4, 2023 Pursuant to Sections 327(e), 328(a), 330, and 363(b)(1) of the Bankruptcy Code* (the "Bennett Declaration"), which is attached hereto as **Exhibit B** and incorporated herein by reference, and the *Declaration of Chad Wallace in Support of Debtors' Application for Entry of an Order Authorizing Retention and Employment of Williams & Connolly as Special Litigation Counsel Effective as of June 4*, 2023 *Pursuant to Sections 327(e), 328(a), 330, and 363(b)(1) of the Bankruptcy Code* (the "Wallace Declaration"), attached hereto as **Exhibit C** and incorporated herein by reference.

## Jurisdiction and Venue

3. The United States Bankruptcy Court for the District of Delaware (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated

2

10556333.v4

February 29, 2012 (the "Amended Standing Order"). The Debtors confirm their consent, pursuant to rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), to the entry of a final order by the Court in connection with this Application to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

4. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

5. The bases for the relief requested herein are sections 327(e), 328(c), 330, and 363(b)(1) of the Bankruptcy Code, Bankruptcy Rules 2014(a), 2016, and 5002, and Local Rules 2014-1 and 2016-1.

**BACKGROUND**

6. PGX is a technology and services company that specializes in credit report repair services and consumer credit education. One of the nation's leading credit repair service providers, PGX helps customers repair their credit and achieve their credit goals. Setting the industry standard for transparency, cutting edge technology-enabled solutions, and quality customer service, PGX assists consumers with accessing and understanding the information contained in their credit reports, ensures the information contained in those reports is fair, accurate, and substantiated, educates consumers to make better financial decisions and build positive credit, and helps to address other factors that may negatively impact customers' credit scores.

7. PGX owns the consumer-facing brands and trademarks "Lexington Law," "CreditRepair.com," and "Credit.com." The Lexington Law brand is licensed to Debtor John C. Heath, Attorney at Law P.C. ("Lexington Law Firm"), an independently-owned Utah professional corporation that provides credit repair legal services directly to its clients. Through a set of Operating Agreements, PGX provides comprehensive operational support services to Lexington

Law Firm, including marketing, custom proprietary software, technology, and administrative services.

8. Consumers of credit nationwide have benefitted from the life-changing products and services delivered by the Debtors. Today, the Debtors provide the preferred premium alternatives for consumers who seek options to understand and improve their credit profile. Notwithstanding significant growth of the Debtors' businesses in the period leading up to 2016, since that time, these businesses have faced an increasingly challenging operational environment, ongoing litigation with the Consumer Financial Protection Bureau (the "CFPB"), and, ultimately, severe liquidity constraints.

### The Litigation and The Retention Of Williams & Connolly

9. On May 2, 2019, the CFPB filed a complaint against several PGX entities and Lexington Law Firm in the case styled *Bureau of Consumer Financial Protection v. Progrexion Marketing, Inc., et al.*, Case No. 2:19-CV-00298-BSJ (the "CFPB Litigation"), currently pending in the United States District Court for the District of Utah (the "District Court"). The CFPB Litigation alleges the following under five counts: (a) certain violations of 16 C.F.R. § 310.4(a)(2), which is the advance fee provision of the Telemarketing Services Rule (the "TSR"), under Count I, and (b) various unlawful deceptive acts or practices, under Counts II-V. Under Count I of the complaint, the CFPB alleges that the TSR makes it unlawful for the Debtors to bill for credit repair services until (a) the time frame represented for the delivery of all such services has expired and (b) the seller has provided the customer with a credit report demonstrating promised results issued more than six months after such results were achieved. Under Counts II-V, the CFPB alleges, among other things, that various unaffiliated third parties that refer customers to the Debtors have made misleading statements to such customers about the efficacy of their own or the Debtors'

services. The Debtors deny the allegations in the CFPB Litigation and for years have vigorously defended the lawsuit.

10. On January 24, 2022, Debtors engaged Williams & Connolly to represent them in the CFPB Litigation. Williams & Connolly has represented several of the Debtors in various matters since 2019, and successfully defended several Debtors in a federal jury trial in November 2021.

11. On March 10, 2023, the District Court granted a partial summary judgment against the Debtors on Count I of the CFPB Litigation. The United States Court of Appeals for the Tenth Circuit entered a temporary stay of the District Court's ruling on March 15, 2023. The Court of Appeals stay was lifted on April 3, 2023, and on April 6, 2023, the District Court denied Debtors' motion for a stay. On April 11, 2023, the CFPB filed a Motion for Monetary and Injunctive Relief, Assessment of Civil Monetary Penalties, and Entry of Judgment on Count I. The District Court held a hearing on the CFPB's motion on June 1 and 2, 2023, and on June 7, 2023, the District Court denied the CFPB's motion without prejudice.

12. A pretrial hearing in the CFPB Litigation is set for July 10 and 11, 2023. A trial date has not been set.

13. On the June 4, 2023 (the "Petition Date"), each of the Debtors filed a petition with the Court under chapter 11 of the Bankruptcy Code. The Debtors continue to operate their businesses and manage their properties as debtors and debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. These chapter 11 cases are procedurally consolidated and jointly administered pursuant to Bankruptcy Rule 1015(b). No party has requested the appointment of a trustee or examiner in these chapter 11 cases. On June 14, 2023, the United States Trustee for the District of Delaware (the "U.S. Trustee") appointed an official committee of

10556333.v4


unsecured creditors pursuant to section 1102 of the Bankruptcy Code (the "<u>Committee</u>") [Docket No. 90].

### Basis for Relief

14. Section 327(e) of the Bankruptcy Code provides that the debtor in possession, "with the Court's approval, may employ for a specified special purpose . . . an attorney that has represented the debtor if it is in the best interest of the estate, and if such attorney does not represent or hold any interest adverse to the debtor or to the estate with respect to the matter on which such attorney is to be employed." 11 U.S.C. § 327(e).

15. Section 363(b)(1) of the Bankruptcy Code provides that the trustee, "after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1).

16. As set forth in the Bennett Declaration, Williams & Connolly has represented Debtors in connection with the CFPB Litigation since January 2022.

17. The Debtors believe that Williams & Connolly is well qualified to represent the Debtors in connection with the CFPB Litigation, and that the retention of Williams & Connolly is necessary and in the best interests of the Debtors and their estates. It is anticipated that Williams & Connolly will provide the following services:

    a. representing the Debtors in connection with the CFPB Litigation (including, by way of illustration only, any hearings and/or trials in the CFPB Litigation), as well as any similar matters initiated by the United States Government or by state or local governmental entities;

    b. representing the Debtors in any trial, appeal, or arbitration matters relating to the foregoing;

    c. attending meetings with third parties with respect to the above matters on behalf of the Debtors;

      d.      appearing before the Bankruptcy Court, any district or appellate courts, and the United States Trustee on behalf of the Debtors with respect to the matters referred to above;

      e.      facilitating and coordinating communications between the Debtors and other parties in connection with the CFPB Litigation; and

      f.      performing on behalf of the Debtors other legal services normally associated with matters such as those identified above.

18.    Williams & Connolly has indicated its willingness to act in these cases as Special Litigation Counsel and to render the foregoing services. Williams & Connolly will work closely with other professionals as may be retained by the Debtors and others in connection with the CFPB Litigation, to protect the legal rights of the Debtors, and to take the necessary and appropriate steps to avoid any unnecessary duplication of effort with such other professionals.

**TERMS OF RETENTION**

19.    Williams & Connolly's hourly rates range from $1,350 - $2,250 for partners, $1,150 - $1,210 for counsel, $720 - 1,210 for associates, and $320 - $510 for paralegals. The rates for contract law clerks and non-lawyer staff such as paralegals, litigation support, and research personnel are set according to their experience and/or skill sets and also will be reflected on Williams & Connolly's statements. Williams & Connolly charges for time devoted to the representation, including travel time, and it adjusts its hourly rates each January 1. Williams & Connolly charges for reimbursement of out-of-pocket expenses including the costs of travel, local counsel, investigators, accountants, consultants, expert witnesses, litigation support vendors, technology providers, court reporting services, messengers, copying, printing as a substitute for copying, telephone and video conferencing, court costs, filing fees, working meals, and data storage requirements. The full terms of Williams & Connolly's engagement are set forth in the

10556333.v4

firm's December 16, 2019 and January 24, 2022 Engagement Agreements, attached as **Exhibit 1** to **Exhibit B** hereto.

20. During the ninety (90) days prior to the Petition Date, Williams & Connolly received $2,154,547.52 from the Debtor or one of its affiliates pursuant to the Engagement Letter, which included a June 2 payment of $662,680.41. $305,237.87 of the June 2, 2023 payment was applied to cover fees and expenses incurred prior to and including June 4, 2023. The remaining $357,442.54 is being held in the Firm's accounts.

21. If retained, Williams & Connolly will apply to the Court from time to time for allowances of compensation and reimbursement of expenses in accordance with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and any applicable orders of this Court by submitting fee applications on appropriate notice on a monthly basis. In light of privilege and confidentiality considerations, however, Williams & Connolly reserves the right to redact its time and expense records and to seek authority from the Court to file such time and expense records under seal.

**Williams & Connolly Has No Conflicts on the Matters for Which It Is To Be Retained**

22. To the best of the Debtors' knowledge and except as set forth in the Bennett Declaration:

    a. As required by section 327(e) of the Bankruptcy Code, neither Edward J. Bennett nor any attorney at the Firm holds or represents an interest adverse to the Debtors or the estates with respect to the matters on which Williams & Connolly is to be retained.

23. Neither Edward J. Bennett nor any attorney at the Firm is or was a creditor or an insider of the Debtors as such terms are respectively defined in section 101(10) and (31) of the Bankruptcy Code.

10556333.v4

24. Neither Edward J. Bennett nor any attorney at the Firm is or was, within three years before the filing of the Debtors' chapter 11 cases, an investment banker of the Debtors, or an attorney for an investment banker of the Debtors, in connection with the offer, sale, or issuance of any security of the Debtors.

25. Neither Edward J. Bennett nor any attorney at the Firm is or was, within two years before the Petition Date, a director, officer, or employee of the Debtors or of an investment banker of the Debtors.

26. Williams & Connolly does not have an interest materially adverse to the interests of the estates or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with or interest in the Debtors or an investment banker specified in the foregoing paragraphs, including with respect to the matters on which Williams & Connolly is to be retained. If retained, Williams & Connolly intends to work closely with other law firms engaged by Debtors to ensure that there is no unnecessary duplication of services performed for or charged to the Debtors' estate.

27. No attorney at Williams & Connolly is related to any United States District Judge or U.S. Bankruptcy Judge for the District of Delaware or to the U.S. Trustee for such district or to any known employee of the office thereof.

28. As set forth in the Bennett Declaration, Williams & Connolly previously represented, or currently represents, various creditors of one or more of the Debtors and other parties who are, or may be, parties-in-interest in the Debtors' cases, in matters that are substantially unrelated to the Debtors' cases and/or the CFPB Litigation.

29. To the best of the Debtors' knowledge, information, and belief, Williams & Connolly (i) does not hold or represent any interest which is adverse to the Debtors' estates with

respect to the matters on which Williams & Connolly is to be retained, and (ii) is a "disinterested person" as that term is defined in section 101(14) of the Bankruptcy Code for the purpose of the representation described.

30. The Debtors believe that Williams & Connolly is well-qualified to represent the Employees in connection with the CFPB Litigation and that its retention is in the best interest of the Debtors and their estates.

31. The Debtors request that Williams & Connolly's retention be approved effective as of June 4, 2023. The decision to approve the employment of professionals on a *nunc pro tunc* basis is well within the discretion of this Court. *In re F/S Airlease, II, Inc.*, 844 F.2d 99, 103 (3d Cir.), cert. denied, 488 U.S. 852 (1988). Retroactive approval of Williams & Connolly's retention is appropriate under the circumstances. Specifically, the preparation and presentation of this Application on a *nunc pro tunc* basis has not been occasioned by any action or omission of Williams & Connolly or its personnel, but was the result of, among other things, the complexity of the Debtors' cases and the Litigation, the very limited scope of Williams & Connolly's retention, and the number of creditors and parties-in-interest in the Debtors' cases, which lengthened the amount of time that Williams & Connolly needed to address potential conflict issues. Accordingly, it is respectfully submitted that good cause exists justifying the *nunc pro tunc* retention requested herein. *See In re Arkansas Co.*, Inc., 798 F.2d 645, 548 (3d Cir. 1986).

32. As described above, the Debtors believe that the retention of Williams & Connolly as Special Litigation Counsel is in the best interests of the estate and, for the reasons described herein and in the Bennett Declaration, the Debtors respectfully submit that they have demonstrated a "good business reason" for the requested relief. *In re Lionel Corp.*, 722 F.2d 1063, 1071 (2d Cir. 1983) ("The rule we adopt requires that a judge determining a § 363(b) application expressly find

from the evidence presented before him at the hearing a good business reason to grant such an application."). *See also In re Enron Corp.*, 335 B.R. 22 (S.D.N.Y. 2005) (approving an application to retain Special Litigation Counsel under section 363(b)(1) of the Bankruptcy Code where the retention was in the debtors' best interest).

## **NOTICE**

33. The Debtors will provide notice of this motion to (a) the Office of the U.S. Trustee for the District of Delaware; (b) counsel to the Prepetition First Lien Lenders and DIP Lenders; (c) counsel to the official committee of unsecured creditors; and (d) any party that request service pursuant to Bankruptcy Rule 2002. The Debtors respectfully submit that, in light of the nature of the relief requested, no other or further notice need be given. A copy of this Application is also available on the website of the Debtors' notice and claims agent at https://www.kccllc.net/PGX. In light of the nature of the relief requested, the Debtors submit that no other or further notice is required.

## **No Prior Request**

34. No prior motion for the relief requested herein has been made to this or any other court.

*[Remainder of page intentionally left blank.]*

10556333.v4

WHEREFORE, the Debtors respectfully request that the Court enter the Order, granting the relief requested herein and such other relief as the Court deems appropriate under the circumstances.

Respectfully Submitted,

**PGX HOLDINGS, INC.**
(for itself and on behalf of its affiliated debtors and debtors in possession)

Dated: June 30, 2023

*/s/ Chad Wallace*
Name: Chad Wallace
Title:   Chief Executive Officer