IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re | Chapter 11 |
| PGX HOLDINGS, INC., *et al.*,[1] | Case No. 23-10718 (CTG) |
| Debtors. | (Jointly Administered) |
| | **Related D.I. Nos. 17 and 66** |

**PRELIMINARY OMNIBUS OBJECTION AND RESERVATION OF RIGHTS
OF OFFICIAL COMMITTEE OF UNSECURED CREDITORS TO THE
DEBTORS' DIP FINANCING MOTION AND BIDDING PROCEDURES MOTION**

The Official Committee of Unsecured Creditors (the "Committee") appointed pursuant to section 1102 of Title 11 of the United States Code (the "Bankruptcy Code") in the chapter 11 cases (the "Chapter 11 Cases") of PGX Holdings, Inc., *et al.* (collectively, the "Debtors"), by and through its undersigned proposed counsel, hereby files this preliminary omnibus objection and reservation of rights (the "Objection") to the *Motion of Debtors for Entry of Interim and Final Orders (I) Authorizing the Debtors to (A) Obtain Postpetition Financing and (B) Utilize Cash Collateral, (II) Granting Liens and Superpriority Administrative Expense Claims, (III) Modifying the Automatic Stay, (IV) Scheduling a Final Hearing, and (v) Granting Related Relief* [D.I. 17] (the "DIP Motion") and the *Motion of the Debtors for Entry of Orders (I)(A) Approving Bidding Procedures for Substantially All of the Debtors' Assets, (B) Authorizing the Debtors to Enter Into One or More Stalking Horse Agreements and to Provide Bidding Protections Thereunder, (C)*

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: PGX Holdings, Inc. (2510); Credit Repair UK, Inc. (4798); Credit.com, Inc. (1580); Creditrepair.com Holdings, Inc. (7536); Creditrepair.com, Inc. (7680); eFolks Holdings, Inc. (5213); eFolks, LLC (5256); John C. Heath, Attorney At Law PC (8362); Progrexion ASG, Inc. (5153); Progrexion Holdings, Inc. (7123); Progrexion IP, Inc. (5179); Progrexion Marketing, Inc. (5073); and Progrexion Teleservices, Inc. (5110). The location of the Debtors' service address for purposes of these chapter 11 cases is: 257 East 200 South, Suite 1200, Salt Lake City, Utah 84111.

AFDOCS:198535643.5

*Scheduling an Auction and Approving the Form and Manner of Notice Thereof, (D) Approving Assumption and Assignment Procedures, and (E) Scheduling a Sale Hearing and Approving the Form and Manner of Notice Thereof; (II)(A) Approving the Sale of the Debtors' Assets Free and Clear of Liens, Claims, Interest and Encumbrances and (B) Approving the Assumption and Assignment of Executory Contracts and Unexpired Leases; and (III) Granting Related Relief* [D.I. 66] (the "Bidding Procedures Motion").[2] In support of this Objection, the Committee respectfully states as follows:

## PRELIMINARY STATEMENT

1. Several facts and circumstances of these cases, including the relief sought in the DIP and Bidding Procedures Motions, are so unusual and contrary to established bankruptcy jurisprudence and practice that they warrant careful scrutiny and additional consideration. Absent material modifications to the relief sought, approval of the DIP Facility and Bidding Procedures will essentially deliver the assets to insiders and leave the estates barren, stripped of all unencumbered assets and claims, and unable to muster any recovery for legacy unsecured creditors. Such a result can and should be avoided.

2. The Debtors entered Chapter 11 on the heels of an adverse ruling in favor of the Consumer Financial Protection Bureau (the "CFPB") in March 2023, wherein the United States District Court for the District of Utah found the Debtors had been violating telemarketing regulations for approximately 7 years. Following the ruling, PGX[3] faced operational challenges and attempted to draw $30 million on their second-lien loan from majority stockholder Prospect— but Prospect refused to fund (despite having committed to do so three months earlier while the

---

[2] Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the DIP Motion, the DIP Loan Agreement, the Bidding Procedures Motion or the Bidding Procedures, as applicable.

[3] As defined in the First Day Declaration, "PGX" refers to all of the Debtors other than the Heath Law Firm.

CFPB litigation was pending) due to an *anticipated* covenant default arising from the CFPB litigation. In other words, Prospect—the controlling stockholder of a company found to be committing regulatory violations—amplified the company's insolvency and distress in response to an event that was not unexpected and certainly not new. To say it another way, Prospect caused itself to default. The Debtors propose to release Prospect from any liability under the Final DIP Order and as part of an overarching insider cleansing transaction.

3. The Debtors have responded to their insolvency and distress in stunning fashion. On or about April 5, 2023, the Debtors terminated hundreds of employees and then, two days later, paid more than $1.3 million in bonuses to executives and other management personnel—including legal and compliance managers. The Debtors did not stop there, however. Just days before commencing these Chapter 11 Cases in June 2023, the Debtors paid more than $4.5 million in additional bonuses to insiders, executives, and management. Of the nearly $6 million in bonuses over this period, approximately $3.2 million was paid to just 8 executives, while vendors and other unsecured creditors went largely unpaid. At the same time, the Debtors engaged two serial directors who regularly work with Kirkland, under the guise of independence at a cost of over $1 million per year.

4. The Debtors seek to release both Debtors' executives and many other parties including the principals and insiders of John C. Heath, Attorney at Law PC (the "Heath Law Firm"), as part of an interconnected DIP facility and insider cleansing transaction. The proposed DIP Facility provided by the Prepetition Secured Lenders (including insider Prospect) will fix a sale process and timeline, capture all value otherwise available for unsecured creditors and lock in the insider cleansing transaction, leaving unsecured creditors with virtually no recovery.

5.      First, the DIP Facility requires the Heath Law Firm to guaranty $62 million of postpetition debt, comprised of $20 million in new money provided *to PGX* and a "roll-up" of $42 million in prepetition debt issued *by PGX prepetition,* while encumbering all of the *Heath Law Firm's* assets.[4]  This gives the DIP Lenders/Prepetition Secured Parties the ability to control the outcome of the sale of the Heath Law Firm (in addition to PGX).  Notably, the Heath Law Firm entered Chapter 11 with *no secured debt*, more than $1.6 million in unencumbered cash, and an operating law firm generating hundreds of millions of dollars per year in revenues.  Given that the Heath Law Firm has no prepetition obligation under the Prepetition Facilities (as defined below), the result of the postpetition transactions are so shocking that it defies understanding and as such, should be denied outright as to the Heath Law Firm and its estate.  In addition, the Final DIP Order provides DIP Lenders/Prepetition Lenders with liens and claims on all Avoidance Actions, D&O claims and commercial tort claims and the proceeds thereof, and the ability to "purchase" such claims as part of the sale transaction.

6.      Second, the DIP is conditioned on a sale occurring in accordance with the proposed Bidding Procedures.  Under the sale structure, principals and insiders of the Heath Law Firm will reacquire the Heath Law Firm as a going concern without providing any real consideration to the estates, while insulating themselves from any liability to creditors.  The only alleged consideration to be paid from one insider (the Heath Law Firm) to another insider (PGX) is the assumption of a liability using the very assets that are being acquired to make the payment.  The Prepetition First Lien Lenders as the new owners of PGX (by way of credit bid in a separate but intertwined sale

---

[4]  *See* DIP Motion, ¶ 3 ("Additionally, as security for the DIP Obligations, the Debtors granted the DIP Agent a first lien on unencumbered property (including all of the previously unencumbered assets of the [Heath Law Firm])...."); *see also* DIP Declaration ¶ 11 ("The DIP Facility will be secured by a perfected superpriority first priming lien on the collateral securing the prepetition first lien obligations (subject to Prepetition Permitted Liens), a perfected first priority lien on unencumbered property (including all of the previously unencumbered assets of [the Heath Law Firm] . . . .").

transaction) stand to be the only beneficiary. The structure of the Heath Law Firm transaction raises serious questions about the use of § 363 to sell the Heath Law Firm's assets, as opposed to a Chapter 11 plan sale that is subject to creditor voting, input, and protections.

7. Third, the Final DIP Order attempts to (i) foreclose any challenges to the Prepetition Secured Obligations and (ii) grant releases of the Prepetition Secured Lenders (including undersecured second lien lender and insider Prospect) by including, as an Event of Default, the mere commencement of a Challenge. Further, if the Committee is successful in any Challenge, including for example, subordinating an out-of-the-money insider's second lien debt, the DIP Lender/Prepetition Secured Lenders can call a default. These kinds of provisions undermine a fair and transparent process and impede the Committee from the outset.

8. There are additional issues and concerns with the proposed Final DIP Order set forth herein, including exculpation provisions that seek to advantage the DIP Lenders/Prepetition Secured Parties and insiders to the detriment of unsecured creditors.

9. The Committee does not object to proceeding with the sale process as to PGX at this time. The Committee does, however, object to the current proposed sale of the Heath Law Firm (a sale that requires zero consideration or value to be paid or provided by Heath, the purchaser and equity holder of the Heath Law Firm) and, as a result, the Bidding Procedures as to the Heath Law Firm should be denied outright or held in abeyance. Should the Heath Law Firm nonetheless desire to proceed, under the circumstances a plan process is the appropriate path. To allow the current path simply undercuts the integrity of the bankruptcy process and so lacks transparency, legitimacy and credibility that it should not be allowed to proceed at this time.

10. The Bidding Procedures also contain a number of infirmities. The insider Stalking Horse Agreements set overbid thresholds that are significantly higher than market indicators

justify.  Whereas non-insider bidders are required to place deposits in connection with their bids, there is no such requirement for the insider Stalking Horse Purchasers because they are not supplying any new value to the estate other than the First Lien Agent's credit bid and the assumption of certain yet-undisclosed liabilities.  Any sale process under § 363 of the Bankruptcy Code must level the playing field for non-insider bidders, and otherwise ensure basic fairness for unsecured creditors.  Likewise, the proposed purchasers of PGX and the Heath Law Firm should be required to provide meaningful and market deposits.

11.    The proposed transactions must be reformed to promote competitive bidding, untether the sales from the value-destructive RSA, clarify the magnitude of assumed liabilities, and eliminate the sale of causes of action and other unencumbered assets.  Without these important modifications and improvements, the Committee respectfully requests that the Court deny the Bidding Procedures Motion without prejudice.

12.    Finally, when evaluating the DIP and Bidding Procedures Motions, it is critical to understand and appreciate the unusual corporate structure and corporate governance at play in these Chapter 11 Cases.  PGX and the Heath Law Firm are separate companies, with separate capital structures, separate ownership, and separate management, being "jointly administered" for purposes of these cases.  PGX and the Heath Law Firm are connected only through a series of service and licensing agreements whereby PGX provides certain services to the Heath Law Firm.[5]  PGX is thus the largest unsecured (and also an insider) creditor of the Heath Law Firm with an outstanding prepetition claim of approximately $28 million.  PGX and the Heath Law Firm claim to have strengthened their corporate governance with "independent" directors and layers of

---

[5] The Debtors claim these services agreements render Heath Law Firm and PGX "affiliates" under section 101(2) of the Bankruptcy Code.  The Committee has not made a determination as to such characterization and reserves all rights with respect thereto.

additional professionals.[6] But it is unclear what (if any) benefit such "independent" directors have provided. The Debtors have refused to produce the PGX independent directors or Mr. Heath for depositions in connection with their role in the proposed insider transactions.[7]

13.  The Committee supports a process that is designed to ensure that the businesses of the Debtors continue and are viable. Notwithstanding the foregoing and the numerous issues and concerns raised herein, the Committee believes there is a path forward that provides transparency and legitimacy, preserves value for the estates and unsecured creditors and allows these businesses to emerge stronger and healthier. The Committee remains hopeful that a consensual resolution can be achieved to put these Chapter 11 Cases on the right track. At this time, however, the Court's intervention is required so the Final DIP Order and Bidding Procedures do not pre-determine an outcome for the benefit of insiders and equity holders to the detriment of the Debtors, their estates and unsecured creditors.

## BACKGROUND

14.  The Debtors filed these Chapter 11 Cases on June 4, 2023 (the "Petition Date"). On or around the Petition Date, the Debtors filed the Bidding Procedures Motion, the DIP Motion, the First Day Declaration and the RSA.

15.  The Heath Law Firm entered Chapter 11 with no material secured debt. First Day Declaration, ¶ 11. The Heath Law Firm is not indebted or obligated to Blue Torch Finance LLC ("Blue Torch") or Prospect and was not a borrower or guarantor under the First Lien Facility (defined below).

---

[6]  First Day Declaration, ¶ 12 (each of PGX and Heath Law Firm appointed "independent directors" and have hired, respectively, Landis Rath & Cobb LLP and Pachulski Stang Ziehl & Jones LLP as conflicts counsel).

[7]  The Committee intends to compel necessary discovery to the extent these insider witnesses continue to refuse to cooperate and participate in the Committee's investigation of insider conduct, transactions and releases.

16. In contrast, PGX has approximately $423.5 million in funded debt obligations, including $243.5 million in first lien term loan obligations under a financing agreement (the "First Lien Facility") with Blue Torch as administrative agent and collateral agent. *See* First Day Declaration, ¶¶ 11, 30–31. The First Lien Facility is purportedly secured by a lien on substantially all of the assets of PGX. *Id.* at ¶ 32. PGX also has approximately $180 million of second-lien credit obligations under a financing agreement (the "Second Lien Facility" and together with the First Lien Facility, the "Prepetition Facilities") with their equity sponsor Prospect, which appears to be completely undersecured. *Id.* at ¶¶ 33–34. Prospect is also a participating lender in the First Lien Facility. *Id.* at ¶ 13.

17. The Second Lien Facility was entered while the Debtors were engaged in litigation with the CFPB and expressly contemplated the possibility of an adverse ruling in that litigation.[8] The Second Lien Facility provided, among other things, that the occurrence of such a ruling would not constitute a "Material Adverse Effect" giving rise to an "Event of Default." Nonetheless, in March 2023, Prospect refused to fund a $30 million draw request under the Second Lien Facility based on anticipated future default related to an adverse ruling in the CFPB litigation. *Id.* at ¶ 53. As set forth in the First Day Declaration, Prospect's refusal to fund had significant consequences for PGX's ability to sustain operations and precipitated the filing of these Chapter 11 Cases.[9]

18. The Committee was appointed on June 14, 2023, as set forth in the notice filed in the Chapter 11 Cases by the United States Trustee [D.I. 90]. The Debtors confirmed that the Committee's objection deadline for the DIP Motion and Bidding Procedures Motion would be

---

[8] *See Id.* ¶ 48 ("The refinanced First Lien Facility and Second Lien Facility included additional liquidity tests to apply in the event of a judgment or resolution of the CFPB Litigation.").

[9] *See Id.* at ¶¶ 53-55.

extended through July 16, 2023. The Committee files this Objection based on the information received to date and reserves all rights.

## OBJECTION

### I. The Court Should Not Approve the DIP Motion Absent Modification.

19. The DIP Facility should not be approved to the extent it extends to the Heath Law Firm. The Heath Law Firm is a discrete and separate entity and its so-called symbiotic relationship with PGX is not unusual or extraordinary. The Heath Law Firm is not obligated under the Prepetition Facilities and its assets are not encumbered. There is simply no basis to extend the DIP Facility to a separate and independent debtor and estate.

20. Certain terms of the DIP Motion are also inappropriate, unnecessary and prejudicial to unsecured creditors and the Debtors and their estates. The key issues and objections are summarized below. In sum, the Final DIP Order should not be a means for locking in a single sale outcome, encumbering all previously unencumbered assets, and releasing claims against insiders and the Prepetition Secured Lenders. Modifications are key to keeping a level playing field and ensuring unsecured creditors have an opportunity for a recovery.

    a. **The Heath Law Firm is incurring postpetition and prepetition obligations and liens on all previously unencumbered assets.** The Heath Law Firm is a guarantor of the DIP Facility, including $19.95 million of new money and a $42 million Roll-Up of prepetition debt of PGX. The Heath Law Firm is not receiving any new money under the DIP Budget, nor was it a party to the Prepetition Secured Documents. The Debtors fail to explain the bases for (i) rolling up prepetition debt against an non-obligor of the prepetition debt; (ii) obligating the Heath Law Firm to repay DIP Obligations from which it receives no funds under the DIP Budget; and (iii) granting liens on all of Heath Law Firm's assets which had been entirely unencumbered. The relief will also encumber $1.6 million in unencumbered cash held by the Heath Law Firm on the Petition Date that should be made available to unsecured creditors.

    b. **Liens and Claims on Avoidance Actions, D&O Claims and Commercial Tort Claims**. The DIP Lenders and Prepetition Secured Lenders should not be provided DIP Liens, DIP Superiority Claims, Adequate Protection Liens and Adequate Protection § 507(b) Claims against Avoidance Actions, D&O claims and

commercial tort clams and the proceeds thereof.[10] In this case in particular, insider Prospect may be the target of certain litigation and challenges. Moreover, the Debtors paid millions of dollars to executives immediately before the commencement of these cases. There has been no independent investigation of those claims or other claims against the Debtors' officers and directors and no disclosure as to the price being paid for those claims. These actions and proceeds thereof are an important (and perhaps only) potential source of recovery for general unsecured creditors. The Committee is the only party fit to conduct such an investigation and these claims should be preserved for unsecured creditors.

c. **The DIP Loan Documents are Conditioned on a Sale Consistent with the Bidding Procedures**. The DIP Loan Documents require that any sale be conducted in accordance with the Bidding Procedures. *See* DIP Loan Agreement, § 9.01(l). And, because the entire DIP Facility is guaranteed by the Heath Law Firm and PGX, an Event of Default occurs if any sale (whether PGX or the Heath Law Firm) does not satisfy the DIP Obligations. *See Id.* at § 9.01(u)(I). As stated above, the Heath Law Firm should not be obligated to repay the DIP Obligations and give the DIP Lenders/Prepetition Secured Lenders control over the sale outcome. The PGX sale should not be conditioned on the Heath Law Firm sale, giving rise to a potential Event of Default.

d. **Challenge Deadline of August 3, 2023 is Unreasonable**. The proposed Final Order seeks to impose Challenge Deadline of August 3, 2023, which is the earlier of, with respect to the Committee, (i) 60 calendar days after appointment of the committee (*i.e.* Sunday, August 13, 2023) and (ii) the Bid Deadline, which according to the proposed Final DIP Order, is a date that is no later than 60 calendar days after the Petition Date as the deadline for the submission of binding bids, or Thursday August 3, 2023. This shortened time frame is unreasonable, unnecessary and unfair.[11] The Committee must have adequate time to investigate and challenge

---

[10] It is well established that avoidance actions should be preserved for the benefit of unsecured creditors. *See* 11 U.S.C. § 551. Avoidance actions, designed to facilitate equality of distribution among unsecured creditors, are not truly property of a debtor's estate, but instead are rights the estate holds in trust for the benefit of creditors. *See Bethlehem Steel Corp. v. Moran Towing Corp.* (*In re Bethlehem Steel Corp.*), 390 B.R. 784, 786-87 (Bankr. S.D.N.Y. 2008)("Avoidance actions . . . never belonged to the Debtor, but rather were creditor claims that could only be brought by a trustee or debtor in possession . . . ."). Because of the unique nature of avoidance actions, courts have recognized that "empowering the trustee or debtor in possession to avoid a transaction by pursuing an individual creditor's cause of action is a method of forcing that creditor to share its valuable right with other unsecured creditors." *Official Comm. of Unsecured Creditors v. Chinery* (*In re Cybergenics Corp.*), 330 F.3d 548, 567 (3d Cir. 2003); *Bear, Stearns Sec. Corp. v. Gredd*, 275 B.R. 190, 194 (S.D.N.Y. 2002) ("[T]he purpose of § 547 is to ensure fair distribution between creditors, while the purpose of § 548 is to protect the estate itself for the benefit of all creditors.").

[11] *See* Local Rules for the United States Bankruptcy Court for the District of Delaware, Rule 4001-2(a)(i)(Q) (all financing motions pursuant to sections 363 and 364 of the Bankruptcy Code must set forth justification for inclusion of any provision that binds the estate or other parties in interest in respect to the validity, perfect or amount of the secured creditor's prepetition lien, or the waiver of claims against the secured creditor, "without first giving parties in interest, including, but not limited to, any official committee appointed in these cases, at least seventy-five (75) days from the entry of the initial interim order to investigate such matters," or limits the

the liens and the DIP Lender/Prepetition Secured Parties should not use Final DIP Order to constrain or interfere with that process.

e. **Commencement of a Challenge Constitutes an Event of Default**. Perhaps in error, the DIP Loan Documents provide that commencing any Challenge to the Prepetition Secured Debt, for any reason, constitutes an Event of Default. *See* DIP Loan Agreement, § 9.01(u)(O). Further, if the Committee is successful, even as to a Challenge or claim with respect to the second lien lender who is not credit bidding an Event of Default would occur. *See Id.* These provisions undermine the purpose of the Challenge provisions of the Final DIP Order and should be removed.

f. **Exculpation Provisions Benefiting the Prepetition Secured Parties.** The proposed Final DIP Order includes an exculpation for the Prepetition Secured Parties for prepetition actions. Such a provision could foreclose the investigation and claims into Prospect's refusal to fund prepetition and should be removed from the Final DIP Order. *See* Final DIP Order, ¶ 31.

g. **Adequate Protection Payments are not Subject to Recharacterization and the Determination of "Diminution in Value" is Sweeping.** All Adequate Protection Payments are only made to the extent of Diminution in Value. They therefore must be subject to recharacterization as principal. Second Lien Lenders should not receive Adequate Protection, particularly here where they are undersecured by the Debtors' own valuations. In addition, the calculation of Diminution in Value should exclude the payments to Professionals and the Lenders. Otherwise, Diminution of Value occurs immediately.

h. **Budget and Professional Fee Inequality.** The Debtors' eight-plus bankruptcy professionals and the Committee's three professionals should be subject to the same terms. As proposed, only the Committee's carve-out is limited by the Approved Budget, which is merely 10% of the budgeted amount for the Debtors' professionals (which amounts do not even include the $1 million paid to the "independent directors"). The Committee must be adequately funded in order to satisfy its statutory and fiduciary duties.

---

court's ability to grant relief in the event of a successful challenge. The Debtors must provide justification for a challenge period that would expire fewer than 75 days after entry of the Interim DIP Order (August 21, 2023)).

## II. The Court Should Not Approve the Stalking Horse Agreements.

21. The Debtors request that the Court approve the terms of the Stalking Horse Agreements as part of the Bidding Procedures Order. The Committee requests that the Court deny the Debtors' request for at least the following reasons[12]:

   a. **Improper Releases.** Both Stalking Horse Agreements feature extensive de facto releases of insiders and other parties with no consideration to the estates. The Committee is investigating the role of insiders and others in the Debtors' regulatory violations and other conduct leading to these Chapter 11 Cases, as well as the payment of substantial bonuses to insiders and other executives following the adverse CFPB ruling. The Debtors entered Chapter 11 with unencumbered claims against these parties. The Stalking Horse Agreements require that these claims be sold and/or released either directly as part of the sales or indirectly through incorporation of the RSA (which mandates the releases as part of any plan).[13] Even more remarkable is that such releases are being given for no consideration. The Committee objects to any attempt by the Debtors and the insider Stalking Horse Bidders to encumber, acquire, or release causes of action against themselves or other executives or any other assets that were unencumbered as of the Petition Date.

   b. **No Credit Bidding for Unencumbered Assets.** The insider PGX Stalking Horse Bid (as defined in the Bidding Procedures Order) consists solely of a credit bid, which cannot be used to acquire unencumbered assets. The Committee is currently considering filing a motion seeking to reduce or limit Blue Torch's right to credit bid under section 363(k) of the Bankruptcy Code. The Bidding Procedures Order should not forever preclude such relief. All rights of the Committee and interested parties to challenge the credit bid must be preserved. Although the Committee does not object in principle to Blue Torch serving as Stalking Horse Bidder for PGX's assets, the PGX APA should not approved without these modifications.

   c. **The Heath Law Firm Bid is Illusory.** The insider Heath Law Firm APA Stalking Horse Bid consists of an amorphous insider-to-insider payment obligation from the acquired assets after the sale, with the existing equity continuing the business through a duplicate entity. The existing equity/duplicate entity have no obligation to fund a deposit or otherwise establish their financial wherewithal to perform under the Heath Law Firm Stalking Horse Bid, in stark contrast to other potential bidders.

---

[12] In general, insider transactions must be subject to greater scrutiny than non-insider transactions. *See In re TSIC, Inc.*, 428 B.R. 103, 111 (Bankr. D. Del. 2010) ("An insider is any person or entity whose relationship with a debtor is sufficiently close that any transactions between them ought to be subjected to closer scrutiny than those occurring at arm's length."); *In re Evergreen Energy, Inc.*, 546 B.R. 549 (Bankr. D. Del. 2016) (same applies in preferential transfer context).

[13] *See* Heath Law Firm APA § 2.1(d) (highlighting purchased assets include all "Buyer Avoidance Actions," defined to mean "any actual and/or potential Avoidance Actions or other Claim by Seller against John C. Heath and Eric Kamerath."; *see also* the RSA "Plan Release and Exculpation Provisions," Ex. B Annex 1.

        There is no basis for deeming the existing equity/duplicate entity to be a Qualified Bidder or giving the existing equity preferential bidding terms.

   d.   **The Heath Law Firm Assets Should Not Be Sold in a § 363 Sale.** There is no need or justification for the Heath Law Firm's assets to be sold to existing equity (*for no consideration to the estate*) through a separate § 363 sale process. The Debtors' efforts to market and sell the Heath Law Firm have been minimal at best. The Debtors anticipate prosecuting a plan of liquidation and the Heath Law Firm's assets could be transferred in connection with such plan under appropriate terms that preserve value for the estate and are subject to creditor voting and other protections. The existing equity of the Heath Law Firm should not be permitted to reacquire the business and release themselves of all liability, while providing no new value or tangible consideration in return to the estate. The Court should deny the Debtors' Motion to establish Bidding Procedures for the Heath Law Firm and enable the Heath Law Firm to pivot to a plan process.

## III.   The Court Should Deny the Bidding Procedures Absent Material Modifications.

22.   As set forth above, the Court should not approve the Bidding Procedures as to the Heath Law Firm, which should only be restructured through a plan of reorganization in compliance with the Bankruptcy Code and where creditors have the protections of the solicitation and voting process. The sale is flawed with no recognizable value or consideration provided by the equity holder Heath. There is no need to continue with the § 363 sale process and, as such, the Bidding Procedures as to the Heath Law Firm should be denied or held in abeyance. To the extent Bidding Procedures are approved for PGX, they should be untethered from the sale of the Heath Law Firm assets and revised to ensure a fair and equitable process:

- **Premature Good Faith Findings.** The Committee's investigation into the prepetition conduct of equity holders and insiders is ongoing, including the negotiation of the Stalking Horse Agreements. The Committee has significant concerns about the roles of equity holders and insiders in these transactions, including John Heath and Prospect—each of whom is participating in the respective Stalking Horse Buyers. The Debtors' refusal to produce Heath or the PGX independent directors (who were appointed by Prospect) for depositions regarding the Bidding Procedures (or DIP Financing) magnifies the Committee's concerns in

this regard. As such, all findings of good faith under § 363(m) or otherwise should be removed from the Bidding Procedures Order.[14]

- **Preservation of Committee Challenge Rights.** Any right to credit bid must be subject to the Committee's right to assert a Challenge, as defined in the Interim DIP Order.

- **Reduction of Overbid Requirement.** The Debtors are requiring a minimum overbid of $5,000,000 for PGX's assets, which is approximately 2% of the purchase price.[15] *See* Bidding Procedures, § VI(a)(4). This is excessive and inconsistent with market norms. The minimum overbid for PGX's assets should be reduced to approximately 0.5% of the purchase price, or $1,300,000. To the extent, if it all, the Court authorizes a § 363 bidding process for the Heath Law Firm assets, there should be no overbid requirement since the buyer is providing no value or consideration.

- **Clarification of Joint Sale Terms.** The Bidding Procedures do not sufficiently clarify the requirements and expectations for joint bids, and should be revised to make clear that all joint bids shall be treated as bids for all purposes.

- **Unclear Treatment of Heath Law Firm Clients.** In addition to the Committee's overall objection to a § 363 sale for the Heath Law Firm's assets, the Committee notes that the insider Stalking Horse Bid includes the "assumption" of 150,000 engagement agreements. *See* Bidding Procedures Motion, ¶ 2. The proposed Assignment and Assumption Procedures appear inadequate to accomplish such a transfer and would violate state rules of professional responsibility. The Utah Rules of Professional Conduct note: "The practice of law is a profession, not merely a business. Clients are not commodities who can be purchased and sold at will." Utah R. Prof. C. 1.17, Cmt. 1. Although the Debtors assert they will comply with applicable ethical rules, the Assignment and Assumption Procedures do not appear to incorporate those rules, including but not limited to the 90-day notice and objection period. Utah R. Prof. C. 1.17(c).

---

[14] *See In re Pursuit Capital Management, LLC*, 874 F.3d 124, 135 (3d Cir. 2017)(The good-faith requirement encompasses a buyer who purchases in "good faith" and for "value," and "speaks to the integrity of [the purchaser's] conduct in the court of the sale proceedings. Typically, the misconduct that would destroy a purchaser's good faith status at a judicial sale involves fraud, collusion between the purchaser and other bidders or the trustee, or an attempt to take grossly unfair advantage of other bidders." (*quoting In re Abbots Dairies of Pennsylvania, Inc.*, 788 F.2d 143, 147 (3d Cir. 1986)).

[15] The Committee also notes the minimum bid requirement appears to require a potential buyer to pay the Debtors the value of the DIP financing twice. Under the PGX APA, the aggregate consideration for the Purchased Assets "shall be no less than $[257,488,673.27]," which consists of (a) all obligations owed under the DIP Facility and (B) "not less than $[237,563,673.27] of the obligations under the Prepetition First Lien Financing Agreement." Section VI.A.4 of the Bidding Procedures provides that any minimum overbid for all of the assets of the PGX Debtors must include full cash consideration of "not less than the sum of the purchase price," plus "all 'Obligations outstanding under the DIP Documents.'" This error must also be corrected.

### IV.  Committee has Made Progress but Consensual Discovery is Incomplete

23. Since the Committee's formation, the Debtors and their professionals have been working with the Committee so that the Committee can substantially complete its diligence and investigation on an expedited basis. For the past several weeks, the Committee has worked tirelessly to make meaningful progress.

24. To allow the diligence and investigation to occur and enable negotiations among the parties, the hearings have been adjourned and relief from the Committee's deadlines to file objections provided.

25. The Committee's time to file objections was extended to the date hereof at 4 pm and it was agreed discovery would be scheduled on a consensual basis given the limited time between filing and the hearing.

26. Certain depositions are scheduled for July 18th and July 19th. Despite the agreement, the Debtors have, without any basis, refused to produce Mr. John C. Heath—the Heath Law Firm's equity holder, Chief Executive Officer, Managing Partner, and proposed purchaser of the Heath Law Firm's assets. The Debtors have also declined to produce Sebastien Cervinka, a director of PGX appointed by Prospect after the December 2022 transaction.

### RESERVATION OF RIGHTS

The Committee reserves the right to raise further and other objections to the DIP Motion and Bidding Procedures Motion prior to or at the hearing thereon in the event the Committee's objections raised herein are not resolved prior to such hearing or in the event that any further changes to the Final DIP Order, DIP Motion, Bidding Procedures Motion, the Bidding Procedures or the APAs are proposed and reserves all rights regarding any sale.

## CONCLUSION

**WHEREFORE**, the Committee respectfully requests that the Court deny the DIP Motion and Bidding Procedures Motion unless the proposed modifications set forth herein are made, and grant such other and further relief as the Court deems just and proper.

Dated: July 17, 2023
Wilmington, Delaware

By: */s/ Eric J. Monzo*
Eric J. Monzo (DE Bar No. 5214)
Brya M. Keilson (DE Bar No. 4643)
Jason S. Levin (DE Bar No. 6434)
**MORRIS JAMES LLP**
500 Delaware Avenue, Suite 1500
Wilmington, DE 19801
Telephone: (302) 888-6800
Facsimile: (302) 571-1750
E-mail: emonzo@morrisjames.com
E-mail: bkeilson@morrisjames.com
E-mail: jlevin@morrisjames.com

-and-

Andrew I. Silfen (admitted *pro hac vice*)
Beth M. Brownstein (admitted *pro hac vice*)
**ARENTFOX SCHIFF LLP**
1301 Avenue of the Americas, 42nd Floor
New York, New York 10019
Telephone: (212) 484-3900
Facsimile: (212) 484-3990
E-mail: Andrew.Silfen@afslaw.com
E-mail: Beth.Brownstein@afslaw.com

-and-

Justin A. Kesselman (admitted *pro hac vice*)
**ARENTFOX SCHIFF LLP**
800 Boylston Street, 32nd Floor
Boston, MA 02199
Telephone: (617) 973-6100
Facsimile: (617) 367-2315
E-mail: Justin.Kesselman@afslaw.com

*Proposed Counsel for the Official Committee of Unsecured Creditors*