**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re | Chapter 11 |
| PGX HOLDINGS, INC., *et al.*,[1] | Case No. 23-10718 (CTG) |
| Debtors. | (Jointly Administered) |
| | **Related D.I. Nos. 17, 66, 153** |

**SUPPLEMENT TO PRELIMINARY OMNIBUS OBJECTION AND RESERVATION OF RIGHTS OF OFFICIAL COMMITTEE OF UNSECURED CREDITORS TO THE DEBTORS' DIP FINANCING MOTION AND BIDDING PROCEDURES MOTION**

The Official Committee of Unsecured Creditors (the "Committee") appointed pursuant to section 1102 of Title 11 of the United States Code (the "Bankruptcy Code") in the chapter 11 cases (the "Chapter 11 Cases") of PGX Holdings, Inc., *et al.* (collectively, the "Debtors"), by and through its undersigned proposed counsel, hereby files this supplement ("Supplemental Objection") to the *Preliminary Omnibus Objection and Reservation of Rights of Official Committee of Unsecured Creditors to the Debtors' DIP Financing Motion and Bidding Procedures Motion* [D.I. 153] (the "Preliminary Objection").[2]  In support of this Supplemental Objection, the Committee respectfully states as follows:

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: PGX Holdings, Inc. (2510); Credit Repair UK, Inc. (4798); Credit.com, Inc. (1580); Creditrepair.com Holdings, Inc. (7536); Creditrepair.com, Inc. (7680); eFolks Holdings, Inc. (5213); eFolks, LLC (5256); John C. Heath, Attorney At Law PC (8362); Progrexion ASG, Inc. (5153); Progrexion Holdings, Inc. (7123); Progrexion IP, Inc. (5179); Progrexion Marketing, Inc. (5073); and Progrexion Teleservices, Inc. (5110).  The location of the Debtors' service address for purposes of these chapter 11 cases is: 257 East 200 South, Suite 1200, Salt Lake City, Utah 84111.

[2]    Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Preliminary Objection, as applicable.

## SUPPLEMENTAL OBJECTION

1.      Discussions and negotiations among the Debtors, Committee, Secured Lenders and Prospect are continuing and the Committee is hopeful a global resolution can be achieved.  If a global resolution is not obtained, then the next steps for building consensus among the parties may be mediation.  The Committee simply files this Supplemental Objection to identify (i) the key remaining outstanding issues in dispute regarding the DIP Financing Motion and Bidding Procedures Motion, as summarized in **Exhibit A**; (ii) certain critical facts the Committee recently uncovered during its diligence process (iii) the need for transparency and integrity of the process; and (iv) that the case needs to proceed on a non-urgent, non-accelerated or compressed schedule.[3]

2.      The facts recently uncovered validate the Committee's concerns about Prospect and other insiders who are attempting to lock in a transaction that will cleanse the businesses of the Debtors, strip the Debtors' estates of all unencumbered assets, transfer the Debtors' businesses to existing equity, the sponsor and other insiders, and insulate the sponsor, lenders, equity holders and other insiders (including officers and directors) from any liability for their self-interested and value-destructive prepetition actions.

3.      To be clear, Prospect's stated basis on March 24 for refusing to fund their $30 million obligation to the PGX Debtors was an alleged statement by their now-CEO Chad Wallace that their auditor was unable to deliver financials by March 31.  Mr. Wallace testified during his deposition that he did not make such a statement, that the auditor did not make such a statement, that the PGX Debtors believed and certified they had met the requirements for funding, and that Prospect's refusal to fund had significant and material consequences for the Debtors—particularly

---

[3]      On Friday, July 28th, the Debtors filed the revised proposed Final DIP Order, Bidding Procedures Order and asset purchase agreement.  This Supplement is filed in part to address these recent filings.

AFDOCS:198596709.5

in light of the operational changes required following the CFPB ruling.[4]  After initially objecting to the funding refusal, however, senior management soon began negotiating a lucrative restructuring arrangement with Prospect and Blue Torch, including millions of dollars in unearned bonuses to be prepaid by the Debtors on the eve of bankruptcy and an inchoate post-sale equity stake in the Progrexion Stalking Horse Bidder (as defined in the Bidding Procedures Motion).

4.      The Debtors' newly installed "independent" directors blessed the insider restructuring plan—including the substantial insider pre-payments, encumbrances on causes of action, and extensive releases for Prospect and other insiders—without conducting any investigation into the extent or value of the causes of action or releases being encumbered and sold.  The Debtors, DIP Lenders, and Stalking Horse Purchasers are attempting to hamstring the Committee's investigation into causes of action by imposing imbalanced budgetary restrictions and an artificially compressed sale and Challenge timeline that requires the Committee to determine whether to commence litigation within **3 days** after the Final DIP and Bidding Procedures Hearing in order to preserve value for creditors, all under the overhang of a default under the DIP Facility if the Committee dares to interpose such a challenge.  These tactics are designed to ensure a *fait accompli* and are not the hallmarks of a fair, equitable, and transparent Chapter 11 process.

5.      While the Committee learned a number of key facts that will inevitably be raised with the Court in due course, below are pertinent developments of which the Court should be aware in considering the relief sought under the DIP Motion and Bidding Procedures Motion:

---

[4]    *See* Deposition of Chad Wallace (July 18, 2023) ("Wallace Dep.") at 59:17-21, 61:3-21, 63:16-64:4.  After Mr. Wallace's deposition, Prospect revised its story with new purported grounds for the funding refusal. *Statement of Prospect Capital Corporation Regarding Preliminary Omnibus Objection and Reservation of Rights of Official Committee of Unsecured Creditors to the Debtors' DIP Financing Motion and Bidding Procedures Motion*, ¶ 4. [D.I. 239].

- **The PGX Board Chair Is Not "Independent" and Cannot Be Relied Upon.** Sebastian Cervinka is a former 10-year employee of Prospect who maintains continuing personal relationships with Prospect senior executives. He has sat on the boards of at least 4 companies for Prospect over the course of his employment and post-employment tenures. Prospect gave Cervinka shares in the Debtors' direct parent company, PGX TopCo LLC ("PGX TopCo"), and installed him as Board Chair and officer of PGX TopCo, and Board Chair of its subsidiaries, the PGX Debtors.[5] As set forth below, his deposition testimony evidenced an extraordinary lack of knowledge and recollection regarding PGX TopCo and the PGX Debtors for someone in his position, and that he is simply rubber stamping the insider-slanted proposals put in front of him without any diligence or material level of review.

- **The PGX Board Chair did not scrutinize and cannot recall critical decisions and information**. Mr. Cervinka's testimony included, among other things, that:

  - He never read the Second Lien Facility documents, which he later contradicted by stating he did read the documents but not understand how the terms addressed the possibility of a CFPB ruling. (Cervinka Dep. at 63:3-64:25, 67:8-68:1, 73:17-74:3);

  - He did not review the funding request to Prospect, did not review Prospect's refusal letter, did not know whether PGX had met the conditions for funding, did not know PGX's view as to whether the request was valid (contradicting his prior testimony that PGX believed the request was valid), had no recollection of the basis for Prospect's refusal, had no recollection of discussing with the Board or management how to respond to Prospect, and had no recollection of whether PGX responded. (*Id.* at 76:21-77:23, 83:13-22, 87:3-23);

  - He did not review the Progrexion APA (as defined in the Bidding Procedures Motion) and did not understand the requirements of credit bidding, despite affirming in the Board resolutions approving entry into the Chapter 11 Cases that he had reviewed and approved the agreement and process. (*Id.* at 116:9-117:7, 120:8-19, 121:20-122:9);

  - He reviewed less than 5% of the DIP Loan Agreement over the course of less than ten minutes and did not investigate the extent of DIP Collateral (as defined in the DIP Loan Agreement), including the granting of liens on causes of action and other unencumbered assets, despite approving the DIP Loan Agreement (*Id.* at 124:9-19);

---

[5]    He was contemporaneously installed in a similar shareholder/director role for another Prospect portfolio company. *See* Deposition of Sebastian Cervinka (July 26, 2023) ("Cervinka Dep.") at 23:15-25, 34:24-37:19, 38:6-15.

AFDOCS:198596709.5

> o   He reviewed less than 5% of the RSA over the course of less than ten minutes and did not investigate the releases being granted to insiders, despite approving the RSA (*Id.* at 128:13-22);
>
> o   He relied on counsel in preparing the engagement letter for Eugene Davis (recommended to him by Prospect) on behalf of PGX TopCo, but could not recall the identity of counsel or whether PGX TopCo had any counsel (*Id.* at 100:12-103:23); and
>
> o   He never took notes at Board meetings (*Id.* at 73:17-74:3) and generally could not recall what was discussed, including various critical business issues for PGX.

- **No PGX Board Investigation Into Prospect Funding Refusal.**  As explained above, the PGX Board, including their so-called "independent" Board Chair Cervinka (who holds equity in the Debtors' parent alongside his former employer, Prospect), conducted no investigation into claims and defenses against Prospect arising from the $30 million funding refusal, which PGX's CEO testified was unjustified.[6]

- **The Heath Law Firm's Independent Director Is Elevating the Interests of Insiders Over Unsecured Creditors.**  Roger Meltzer performed no investigation or analysis into the Debtors' unencumbered assets (including cash),[7] has no understanding the magnitude of unsecured liabilities to be left behind in the sale to insiders, and has not considered the pool of assets that would be available for creditors in the event the Heath Law Firm's assets remain unencumbered.  He did not closely read the DIP Loan Agreement or the Lexington Law APA (as defined in the Bidding Procedures Motion), but rather flipped through them and did not perform any investigation into claims against insiders that are being encumbered and sold in the proposed transactions.[8]

- **No Investigation or Diligence Into Insider Causes of Action and Releases.**  PGX pre-paid millions of dollars in unearned retention bonuses when they were in a liquidity crisis and had stopped or deferred payments to others.  Mr. Cervinka also had no knowledge of the details of a long term incentive program for one insider and why millions of dollars had been paid to the insider's law firm.[9]  Mr. Meltzer had no knowledge of any Heath Law Firm's retention bonus program, despite retention bonuses being paid to insiders during the year preceding the Petition Date.[10]  The Debtors' boards have not conducted any

---

[6]   *See* Cervinka Dep. 117:18-120:1; Wallace Dep. 59:16-21.

[7]   This is not surprising, considering the 99% equity owner of the Heath Law Firm testified at his deposition that he did not know the cash on hand on the day before the bankruptcy filing was unencumbered.  *See* Deposition of John C. Heath (July 26, 2023) ("Heath Dep.") at 179:1-14.

[8]   *See* Deposition of Roger Meltzer (July 19, 2023) ("<u>Meltzer Dep.</u>") at 81:9-82:20, 84:13-86:16, 137:3-138:18, 139:2-50).

[9]   *See* Cervinka Dep. at 138:19-139:9.

[10]  *See* Meltzer Dep. at 106:106:4-107:3.  And despite paying several quarterly or incentive bonuses and retention bonuses in the year preceding the Petition Date, the Heath Law Firm had no actual bonus program set forth in writing  *See* Heath Dep. at 120:12-16, 124:3-6),

investigation or diligence into the nature or value of claims or causes of actions that the Debtors propose to encumber and/or release under the Final DIP Order and the RSA and that are proposed to be transferred to the Stalking Horse Bidders.[11]

6.      The foregoing is a snapshot of the Debtors' lack of diligence and investigation prior to seeking approval of the DIP Loan Agreement and Bidding Procedures.  The Court should not permit the Debtors to shield insiders from liability by conveying all potential sources of estate value to the same or other insiders, while leaving legacy unsecured creditors with no source of potential recovery.  Permitting the Debtors to encumber causes of action and all of the assets of the Heath Law Firm (including with a substantial roll-up of prepetition obligations) will ensure such a result.

7.      Nor is there any justification for the expedited timeline the Debtors and Secured Lenders ask the Court to impose.  The DIP Budget runs through September 16th, 2023, the Debtors are ahead of budget, any sale of the Heath Law Firm cannot close until mid-September, and professional fees under the budget are being pre-funded.[12]  It appears the only purpose served by accelerating the challenge deadline to August 3rd (in contravention of this Court's Local Rules) and the Sale Hearing to August 11th, is to further hinder any meaningful investigative process by the only independent fiduciary in these cases – the Committee. These cases can and should proceed on a reasonable timeline that enables transparency, fairness and integrity.

8.      The Debtors' primary response to the Committee's legitimate concerns is to claim that the questionable DIP terms are the result of arms-length, hard fought negotiations, based on the Debtors' business judgment and cannot be modified.  But the record does not support such assertions and the Debtors cannot rely on them.

---

[11]     *See* Cervinka Dep. at 117:18-120:1; 142:5-146:3.

[12]     The Debtors' professionals alone are estimated at $12.5 million.

9.     The DIP Facility must be substantially curtailed and adjusted, and the sale process extended, to allow the Committee time and resources to complete the investigation that the Debtors and their "independent" directors have refused to conduct.   A summary of the Committee's remaining key points of concern are set forth in **Exhibit A**.

10.     In conclusion, the Committee would like to underscore that it supports the continuity of the Debtors' businesses and a sale process and reasonable funding of these proceedings.  Conversion or dismissal of these proceedings is not beneficial.  The Committee also believes that a global consensual resolution is in the best interest of the Debtors and estates under the circumstances.   The Debtors, the Committee and the key stakeholders are working hard to reduce friction and create a path for a successful sale and confirmation of a fully consensual plan of liquidation.   Part of that global resolution also includes a central and material role for the Committee to act as gatekeeper.   Nevertheless, the requested changes to and expressed concerns with the DIP financing and Bidding Procedures cannot be ignored by the Secured Lenders, Prospect and other insiders at the expense of the estates and unsecured creditors.

Dated: July 30, 2023
Wilmington, Delaware

/s/ Eric J. Monzo
Eric J. Monzo (DE Bar No. 5214)
Brya M. Keilson (DE Bar No. 4643)
Tara C. Pakrouh (DE Bar No. 6192)
**MORRIS JAMES LLP**
500 Delaware Avenue, Suite 1500
Wilmington, DE 19801
Telephone: (302) 888-6800
Facsimile: (302) 571-1750
E-mail: emonzo@morrisjames.com
E-mail: bkeilson@morrisjames.com
E-mail: tpakrouh@morrisjames.com

-and-

AFDOCS:198596709.5

Andrew I. Silfen (admitted *pro hac vice*)
Beth M. Brownstein (admitted *pro hac vice*)
**ARENTFOX SCHIFF LLP**
1301 Avenue of the Americas, 42nd Floor
New York, New York 10019
Telephone: (212) 484-3900
Facsimile: (212) 484-3990
E-mail: Andrew.Silfen@afslaw.com
E-mail: Beth.Brownstein@afslaw.com

-and-

Justin A. Kesselman (admitted *pro hac vice*)
**ARENTFOX SCHIFF LLP**
800 Boylston Street, 32nd Floor
Boston, MA 02199
Telephone: (617) 973-6100
Facsimile: (617) 367-2315
E-mail: Justin.Kesselman@afslaw.com

*Proposed Counsel for the Official Committee of Unsecured Creditors*