**EXHIBIT A**
**SUMMARY CHART OF PROPOSED CRITICAL REVISIONS TO**
**PROPOSED FINAL DIP ORDER AND PROPOSED BIDDING PROCEDURES ORDER[1]**

---

[1] Capitalized terms not otherwise defined in this Exhibit A shall have the meanings ascribed to them in the DIP Loan Agreement, the proposed Final DIP Order, or the proposed Bidding Procedures Order, as applicable.  Citations herein refer to the proposed Final DIP Order filed at D.I. 246 and the proposed Bidding Procedures Order filed at D.I. 192.

| Key Provision in Dispute | Current Provision in Proposed Final DIP Order, DIP Loan Agreement, or Bidding Procedures | Committee's Proposed Changes for Final DIP Order or Bidding Procedures Order[2] |
|---|---|---|
| Liens on Assets of Heath Law Firm<br><br>(DIP Loan Agreement, § 1.01 at 12; Proposed Final DIP Order ¶ 5(a)). | The DIP Loan Agreement provides that the Heath Law firm shall be a Guarantor.  The Final DIP Order provides for a first priority senior security interest in and lien upon all tangible and intangible pre- and post-petition unencumbered property of the Heath Law Firm, including $1.6 million in unencumbered cash held by the Heath Law Firm on the Petition Date. | The Court should not allow the Heath Law Firm to be obligated to pay Prepetition Secured Loan Obligations of PGX.  The Heath Law Firm is not an obligor or guarantor of the Prepetition Secured Loan Obligations, did not pledge or secure its assets for the benefit of PGX, and had no prepetition secured debt of its own.  The Heath Law Firm is not even a party or signatory to the Prepetition Secured Documents.  The Heath Law Firm is not receiving any new money under the DIP Budget.  There is no justification or support to permit the Heath Law Firm to become obligated to pay the Prepetition Secured Loan Obligations. All assets of the Heath Law Firm should also be excluded from any grant of security interest under the DIP Facility, especially in relation to the Roll-Up. |
| Liens and Claims on Avoidance Actions, D&O Claims, Commercial Tort Claims<br><br>(DIP Loan Agreement, §§ 4.10(iii), (xiv); Proposed Final DIP Order ¶¶ 4. 9(b); | The DIP Lenders and Prepetition Secured Lenders are granted DIP Liens, DIP Superpriority Claims, Adequate Protection Liens and Adequate Protection § 507(b) claims against Avoidance Actions, D&O claims and commercial tort claims and the proceeds thereof. | The Court should strike these provisions in their entirety.  There has been no independent investigation into potential claims, including but not limited to potential litigation against Prospect and significant prepetition payments to executives and others that may be subject to avoidance actions.  The Committee is the only party fit to investigate these claims, which could be a substantial source of recovery that must be preserved for unsecured creditors.  The very targets of the investigation would be the beneficiary of these liens.<br><br>As set forth below, in the event DIP Liens are granted in Avoidance Actions, they should be subject to the doctrine of marshalling. |

---

[2]    This chart summarizes the key objectionable provisions identified by the Committee in the proposed Final DIP Order and DIP Loan Agreement, and the Committee's suggested revisions.  It does not include a complete list of all objections and proposed changes to the proposed Final DIP Order, which are further but not completely set out in DIP Objection.

| Key Provision in Dispute | Current Provision in Proposed Final DIP Order, DIP Loan Agreement, or Bidding Procedures | Committee's Proposed Changes for Final DIP Order or Bidding Procedures Order[2] |
|---|---|---|
| Challenge Deadline is Unreasonable<br><br>(Proposed Final DIP Order ¶ 15). | The Final DIP Order gives the Committee until the earlier of 60 calendar days after the Committee's appointment and the deadline for submitting bids pursuant to the Bidding Procedures to file any Challenges—that date being **August 3, 2023**—and only permits extensions with the prior written consent of the Prepetition Agents or pursuant to a Court order. The Final DIP Order also does not deem the Committee to have standing to make any Challenge. | The Committee must be given at least 75 days from the entry of the Interim DIP Order to investigate any potential Challenges, pursuant to Local Rules for the United States Bankruptcy Court for the District of Delaware, Rule 4001-2(a)(i)(Q)—**August 21, 2023** (75 days falls on Sunday, August 20). Under the circumstances and given delays in receiving requested information and the complexity of the prepetition transactions, the Committee's challenge deadline should be extended to at least **September 7, 2023.** Since the challenge deadline is tied to the sale approval hearing,  the hearing on the sale transactions should be scheduled for **September 14, 2023.**<br><br>The Committee should also be provided with a reasonable budget to conduct such investigation. |
| Events of Default caused by bringing Challenges<br><br>(DIP Loan Agreement, § 9.01(u)(O)). | Events of Default include the occurrence and continuance of any of the following in any Chapter 11 Case:  the Debtors **or any other person** shall seek, or shall support any other person's motion seeking (in any such case, verbally in any court of competent jurisdiction or by way of any motion or pleading with the Bankruptcy Court, or any other writing to another party in interest by Debtors) to challenge the validity or enforceability of any of the DIP Lien, Obligations, Lien (as defined therein) or Prepetition Obligations of the parties under the Prepetition Loan Documents, including, but not limited to, seeking to prohibit, limit or restrict the right of the Prepetition First Lien Agent (on behalf of the Prepetition First Lien Lenders) to credit bid for any or all of the Debtors' assets, or (2) the Bankruptcy Court enters an order prohibiting, restricting, precluding, or otherwise impairing the unqualified right of the DIP Agent or the Prepetition Agents (or their respective designees) from having the right to or being permitted to "credit bid" any amount of the Obligations or Prepetition Obligations, respectively, with respect to the assets of the Debtors. | The Court should strike this provision in its entirety because it would undermine the purpose of the Challenge provisions of the Final DIP Order.  The Prepetition Secured Lenders should not be able to default the Debtors and exercise remedies because the Committee asserted a Challenge within its rights and in accordance with the DIP order. |

AFDOCS:198596709.5

| Key Provision in Dispute | Current Provision in Proposed Final DIP Order, DIP Loan Agreement, or Bidding Procedures | Committee's Proposed Changes for Final DIP Order or Bidding Procedures Order[2] |
|---|---|---|
| Diminution in Value Limits on Adequate Protection<br><br>(Proposed Final DIP Order ¶¶ 9, 22). | The Prepetition Secured Lenders are entitled to adequate protection of their interests in all Prepetition Collateral, including Cash Collateral, solely to the extent of and in an amount equal to the aggregate Diminution in Value, if any, of the Prepetition Secured Lenders' interest in the Prepetition Collateral.  Any and all payments or proceeds remitted to the DIP Agent or DIP Lenders or, subject to paragraph 15 of the Final DIP Order, the Prepetition Agents, pursuant to the provisions of the Final DIP Order or the DIP Documents shall be irrevocable and received free and clear of any claim, charge, assessment or other liability, whether asserted or assessed by, through or on behalf of the Debtors. | Because adequate protection is limited to the extent of and in an amount equal to the aggregated Diminution in Value:<br><br>- Adequate Protection Payments must be subject to recharacterization as principal.  Secured Lenders are only entitled to such payments in the event Diminution of Value occurs;<br><br>- Second Lien Lenders, who are currently and projected to be unsecured by the Debtors' own valuations and the transactions proposed, cannot or should not receive Adequate Protection; and<br><br>- Diminution in Value calculations should exclude the payments to Professionals and Lenders.<br><br>Given the difficulties between the assessing Prospect's activities as equity holder, minority first lien lender and second lien lender, and the commingling of work, Prospect's reimbursement professional fees should be subject to additional scrutiny. |
| Marshaling Waivers<br><br>(DIP Loan Agreement § 9.01(u)(W); Proposed Final DIP Order, Preamble ¶H, ¶ 14). | The Secured Lenders are not subject to doctrine of "marshaling." | If liens on Avoidance Actions and the proceeds thereof are granted, the doctrine of marshalling must apply to the payment of the DIP Facility and the DIP Lenders should be required to look last at debtor and estate claims to satisfy the DIP Facility.  The DIP Lenders should not credit bid liens on the only assets that may be available for unsecured creditors. |

AFDOCS:198596709.5

| Key Provision in Dispute | Current Provision in Proposed Final DIP Order, DIP Loan Agreement, or Bidding Procedures | Committee's Proposed Changes for Final DIP Order or Bidding Procedures Order[2] |
|---|---|---|
| DIP Budget; Professional Fee Inequality<br><br>(*Notice of Revised DIP Budget*, Ex. A [D.I. 45]; Proposed Final DIP Order, ¶ 18(a)) | The Carve-Out caps only the Committee's professional fees, at 10% of the budgeted amount for the Debtors' eight-plus bankruptcy professionals. This constitutes disparate treatment of professionals. | In order for the Committee to satisfy its statutory and fiduciary duties, it must be adequately funded and not be treated unreasonably and radically differently than the Debtors' professionals. Here where the Debtors have four main law firms, a financial advisor, an investment banker, and two highly paid directors appointed shortly before the filing (plus ordinary course professionals), there is no justification or reason to severely limit the payment of committee fees and expenses. |
| Milestones<br><br>(Proposed Final DIP Order, ¶ 11). | The proposed Milestones are based on the dates set out in the RSA. However, the RSA contemplates effectuation of a sale within 105 days of the Petition Date (September 17, 2023). | The proposed Milestones set forth in paragraphs 11(d)-(f) of the Final DIP Order should be pushed back in order to allow consideration of alternative transactions and a plan of reorganization, adequately allow a postpetition sale process where no prepetition sale process occurred, and prevent impeding the Committee from performing its duties on behalf of unsecured creditors. Here where equity is paying no consideration for the assets of the Heath Law Firm and the assets of PGX are being conveyed to the Lenders and sponsor on a credit bid, there is a need to proceed cautiously. There is absolutely no support for an accelerated sale process. The Debtors are not a melting ice cube. The Sale Hearing should be no earlier than **September 14, 2023**. |

AFDOCS:198596709.5

| Key Provision in Dispute | Current Provision in Proposed Final DIP Order, DIP Loan Agreement, or Bidding Procedures | Committee's Proposed Changes for Final DIP Order or Bidding Procedures Order[2] |
|---|---|---|
| Sale Timeline<br><br>(Proposed Bidding Procedures Order) | As with the Milestones, the Debtors' proposed Sale timeline is significantly abbreviated and has not been adjusted to account for the delayed hearing to approve the Bidding Procedures. The proposed Bidding Procedures Order provides, among other dates, for:<br><br>- Bid Deadline on August 3, 2023 at 5:00 p.m. (prevailing Eastern Time);<br><br>- Auction, if any, on August 8, 2023 at 5:00 p.m. (prevailing Eastern Time);<br><br>- Post-Auction Objection Deadline on August 9, 2023 at 5:00 p.m. (prevailing Eastern Time);<br><br>- Sale Hearing on August 11, 2023 at 5:00 p.m. (prevailing Eastern Time) | The Committee proposes these dates be extended and keyed off a Sale Hearing no earlier than **September 14, 2023**. |
| Good Faith Finding (Proposed Bidding Procedures Order, ¶ G) | The Bidding Procedures Order provides for the Court to deem the Progrexion Stalking Horse Bidder has acted in "good faith" in connection with the Progrexion Stalking Horse Bidder's negotiation of the Bidding Procedures and entry into the Progrexion APA. | The "good faith" finding is premature at the entry of the Bidding Procedures Order, and is more appropriately addressed in the Sale Order. The Court should strike this provision in its entirely. |

AFDOCS:198596709.5