## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| PGX HOLDINGS, INC., *et al.*,[1] | ) | Case No. 23-10718 (CTG) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

**MOTION OF DEBTORS FOR ENTRY OF AN ORDER (I) APPROVING
THE ADEQUACY OF THE DISCLOSURE STATEMENT ON AN INTERIM
AND FINAL BASIS, (II) SCHEDULING A COMBINED DISCLOSURE STATEMENT
APPROVAL AND PLAN CONFIRMATION HEARING, (III) APPROVING
THE SOLICITATION AND NOTICE PROCEDURES, (IV) APPROVING THE
COMBINED HEARING NOTICE, AND (V) GRANTING RELATED RELIEF**

The above-captioned debtors and debtors in possession (collectively, the "Debtors") state

as follows in support of this motion:[2]

**Preliminary Statement**

1.      The Debtors seek approval of this motion to permit the Debtors to begin solicitation

of votes on the Plan[3] and to combine the hearings on final approval of the Disclosure Statement

and Confirmation of the Plan.  Based on the circumstances of these chapter 11 cases, the Debtors

---

[1]     The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are:  PGX Holdings, Inc. (2510); Credit Repair UK, Inc. (4798); Credit.com, Inc. (1580); Creditrepair.com Holdings, Inc. (7536); Creditrepair.com, Inc. (7680); eFolks Holdings, Inc. (5213); eFolks, LLC (5256); John C. Heath, Attorney At Law PC (8362); Progrexion ASG, Inc. (5153); Progrexion Holdings, Inc. (7123); Progrexion IP, Inc. (5179); Progrexion Marketing, Inc. (5073); and Progrexion Teleservices, Inc. (5110).  The location of the Debtors' service address for purposes of these chapter 11 cases is:  257 East 200 South, Suite 1200, Salt Lake City, Utah 84111.

[2]     A detailed description of the Debtors and their business, including the facts and circumstances giving rise to the Debtors' chapter 11 cases, is set forth in the *Declaration of Chad Wallace, Chief Executive Officer of PGX Holdings, Inc., in Support of Chapter 11 Filing and First Day Motions* (the "First Day Declaration"), filed contemporaneously herewith on June 4, 2023 (the "Petition Date") and incorporated by reference herein.

[3]     Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the *Joint Chapter 11 Plan of PGX Holdings, Inc. and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* filed contemporaneously herewith (as may be amended, supplemented, or modified from time to time, the "Plan"), as applicable.

believe the expedited solicitation and hearing process proposed herein is reasonable and does not unfairly prejudice any creditors. All creditors and parties in interest with appropriate standing will be afforded adequate time to review the Plan and Disclosure Statement prior to the objection deadline. Moreover, this combined process will streamline and facilitate the Debtors' wind down of their estates on an expedited basis, minimize the go-forward costs of the chapter 11 process, and allow for a swift resolution of these chapter 11 cases. Accordingly, the Debtors seek (i) interim approval of the Disclosure Statement to enable the Debtors to immediately begin soliciting votes on the Plan and (ii) to set a combined hearing on final approval of the Disclosure Statement and Confirmation of the Plan for October 27, 2023.

2.      Following the commencement of these chapter 11 cases in June, the Debtors engaged in an extensive marketing process to obtain the highest and best offer for the Debtors' Assets and deliver the Debtors' stakeholders a value-maximizing outcome. Additionally, the Debtors have engaged in multilateral, hard fought, good faith, arms'-length negotiations with their stakeholders and the Committee. Such negotiations resulted in the Global Settlement with the Committee, the terms of which are implemented in the Plan. The Global Settlement contemplated in the Plan minimizes administrative costs, maximizes stakeholder recoveries, and facilitates a swift exit from chapter 11. As a final step to the chapter 11 process, the Plan—together with an integrated Confirmation schedule—is designed to bring an orderly and efficient conclusion to these chapter 11 cases. Prosecuting the Plan and Disclosure Statement on a combined basis as set forth herein is essential to that end.

## **Relief Requested**

3.      The Debtors seek entry of an order, substantially in the form attached hereto as **Exhibit A** (the "Order"), granting the following relief and such other relief as is just and proper:

(a)     approval of the *Disclosure Statement for the Joint Chapter 11 Plan of PGX Holdings, Inc. and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code*, substantially in the form attached to the Order as <u>Exhibit 1</u> (as amended, supplemented, or otherwise modified from time to time, the "<u>Disclosure Statement</u>"), on an interim basis as containing "adequate information" pursuant to section 1125 of the Bankruptcy Code;

(b)     approval of procedures for: (i) soliciting, receiving, and tabulating votes to accept or reject the Plan; (ii) voting to accept or reject the Plan; and (iii) filing objections to the Plan, substantially in the form attached to the Order as <u>Exhibit 2</u> (the "<u>Solicitation and Voting Procedures</u>");

(c)     approval of the form of ballots (collectively, the "<u>Ballots</u>"), substantially in the forms attached to the Order as <u>Exhibits 3A</u>, <u>3B</u>, <u>3C</u>, <u>3D</u>, <u>3E</u>, and <u>3F</u> respectively;

(d)     approval of (i) the form of notice applicable to Holders of Claims that are Unimpaired under the Plan and who are, pursuant to section 1126(f) of the Bankruptcy Code, conclusively presumed to accept the Plan; (ii) the form of notice applicable to Holders of Claims that are Impaired under the Plan and who are, pursuant to section 1126(g) of the Bankruptcy Code, conclusively deemed to reject the Plan; and (iii) the form of notice applicable to Holders of Claims or Interests that are subject to a pending objection by the Debtors and who are not entitled to vote the disputed portion of such Claim (each, a "<u>Non-Voting Status Notice</u>"), substantially in the forms attached to the Order as <u>Exhibits 4</u>, <u>5</u>, and <u>6</u>, respectively;

(e)     approval of the solicitation materials and documents included in the solicitation packages (each, a "<u>Solicitation Package</u>") that will be sent to, among others, Holders of Claims entitled to vote to accept or reject the Plan, in compliance with rules 3017(d) and 2002(b) of the Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>");

(f)     approval of the form of letter that the Debtors will send to Holders of Claims entitled to vote to accept or reject the Plan recommending that such parties to vote in favor of the Plan, substantially in the form attached to the Order as <u>Exhibit 7</u> (the "<u>Cover Letter</u>");

(g)     approval of the form and manner of notice of hearing to be held by the Court to consider Confirmation of the Plan (the "<u>Combined Hearing</u>" and, the notice thereof, the "<u>Combined Hearing Notice</u>") pursuant to section 1129 of the Bankruptcy Code, substantially in the form attached to the Order as <u>Exhibit 8</u>;

(h)     approval of the notice related to the filing of the Plan Supplement, substantially in the form attached to the Order as <u>Exhibit 9</u> (the "<u>Plan Supplement Notice</u>");

(i)     approval of the form of notice to counterparties to Executory Contracts and Unexpired Leases that will be assumed or assumed and assigned pursuant to the Plan, substantially in the forms attached to the Order as <u>Exhibit 10</u> (the "<u>Assumption Notice</u>");

(j)     approval of the form of notice to counterparties to Executory Contracts and Unexpired Leases that will be rejected pursuant to the Plan, substantially in the form attached to the Order as <u>Exhibit 11</u> (the "<u>Rejection Notice</u>");

(k)     shortening the periods and notice requirements set forth under rule 9006-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "<u>Local Rules</u>") for notice of the Interim Disclosure Statement Hearing in accordance with Bankruptcy Rule 9006(c)(1); and

(l)     establishing the following dates and deadlines with respect to Confirmation, subject to modification as necessary (the "<u>Confirmation Timeline</u>").

| Event | Date | Description |
|---|---|---|
| Interim Disclosure Statement Objection Deadline | September 7, 2023, at 4:00 p.m. (prevailing Eastern Time) | Deadline by which objections to the Disclosure Statement must be filed and served so as to be actually received by the appropriate notice parties (the "<u>Interim Disclosure Statement Objection Deadline</u>") |
| Interim Disclosure Statement Hearing | September 14, 2023 | Date and time of the interim disclosure statement hearing (the "<u>Interim Disclosure Statement Hearing</u>"), subject to the Court's availability |
| Voting Record Date | September 15, 2023 | Date for determining (i) which Holders of Claims in the Voting Classes, as defined herein, are entitled to vote to accept or reject the Plan and (ii) whether Claims have been properly assigned or transferred to an assignee under Bankruptcy Rule 3001(e) such that the assignee or transferee, as applicable, can vote to accept or reject the Plan (the "<u>Voting Record Date</u>") |
| Solicitation Launch | September 22, 2023 | Date for distributing Solicitation Packages, including Ballots, to Holders of Claims and Interests entitled to vote to accept or reject the Plan (the "<u>Solicitation Deadline</u>") |
| Plan Supplement Filing Deadline | October 13, 2023 | Date by which the Debtors will File the initial Plan Supplement |
| Voting Deadline | October 20, 2023, at 4:00 p.m. (prevailing Eastern Time) | Deadline by which *all* Ballots must be properly executed, completed, and delivered so that they are ***actually received*** (the "<u>Voting Deadline</u>") by Kurtzman Carson Consultants, LLC, the notice, claims, and solicitation agent retained by the Debtors in these chapter 11 cases (the "<u>Notice and Claims Agent</u>")[4] |

---

[4]    An Order authorizing the Debtors to retain and employ Kurtzman Carson Consultants, LLC to provide noticing and claims services and serve as Notice and Claims Agent, was entered by the Court on June 6, 2023 [Docket No. 56]. An Order authorizing the Debtors to retain and employ Kurtzman Carson Consultants, LLC to serve as Administrative Agent was entered by the Court on July 19, 2023 [Docket No. 202].

| Event | Date | Description |
|---|---|---|
| Confirmation Objection Deadline | October 20, 2023, at 4:00 p.m. (prevailing Eastern Time) | Deadline by which objections to the Disclosure Statement or the Plan must be filed and served so as to be actually received by the appropriate notice parties (the "Objection Deadline") |
| Voting Report Filing Deadline | October 24, 2023 | Date by which the report tabulating the voting on the Plan (the "Voting Report") shall be Filed |
| Confirmation Brief Filing Deadline | October 24, 2023 | Date by which the Debtors' will File the brief in support of Confirmation (the "Confirmation Brief") |
| Combined Hearing Date | October 27, 2023 | Date and time of the Disclosure Statement and Confirmation Hearing (the "Combined Hearing Date"), subject to the Court's availability |

## Jurisdiction and Venue

4.　　The United States Bankruptcy Court for the District of Delaware (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012.  The Debtors confirm their consent, pursuant to rule 9013-1(f) of the Local Rules, to the entry of a final order by the Court in connection with this motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

5.　　Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

6.　　The statutory bases for the relief requested herein are sections 105, 1125, 1126, and 1128 of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "Bankruptcy Code"), rules 1007, 2002, 3016, 3017, 3018, 3020 and 9006 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Local Rules 1007-1, 3017-1, 3017-2, and 9006-1.

## Background

### I.　　General Case Background.

7.　　The Debtors are one of the nation's leading credit repair service providers, helping customers repair their credit and achieve their credit goals.  Setting the industry standard for transparency, cutting edge technology-enabled solutions, and quality customer service,

the Debtors help consumers access and understand the information contained in their credit reports, ensure that the information contained in those reports is fair, accurate, and complete, and address other factors that may negatively impact their credit scores.  The Debtors are headquartered in Salt Lake City, Utah and have employees in nine other states.  Debtor PGX Holdings, Inc. and Debtor John C. Heath, Attorney At Law PC d/b/a Lexington Law Firm ("Lexington Law") generated approximately $388 million in combined revenue in 2022.  As of the Petition Date, the Debtors had approximately $423 million in funded-debt obligations.

8.      As set forth in greater detail in the First Day Declaration, certain Debtors are currently involved in litigation with the U.S. Consumer Financial Protection Bureau (the "CFPB") before the United States District Court for the District of Utah (the "District Court").  In such litigation, on five separate counts, the CFPB alleged that the defendant Debtors committed certain violations of federal consumer protection law through operation of their consumer assistance and credit repair business.  On March 10, 2023, the District Court granted partial summary judgment against these Debtors on the first count in the litigation, finding that the billing practices were in violation of 16 C.F.R. § 310.4(a)(2), the Telemarketing Sales Rule (the "TSR").  In connection with the first count, the CFPB demanded nearly $3 billion in restitution or refunds and other monetary relief, along with certain injunctive relief.

9.      In response to the District Court's ruling on the TSR count, and a subsequent denial of a stay of the ruling, the Debtors immediately stopped certain telemarketing activities, closed their call centers, and began evaluating the impact of the ruling on the future of their business, a process that remains ongoing.  Following the Debtors' reduction of business operations, the Debtors' revenues also declined.  Upon further review, the Debtors determined that their liquidity would continue to be severely constrained and their debt obligations are now unsustainable in light

of their smaller operational footprint and decreased revenues going forward. The Debtors have commenced these chapter 11 cases to fully and fairly resolve their liabilities, with the aim of preserving value for stakeholders and maintaining the ability to deliver best-in-class crucial credit repair services to customers.

10. On the Petition Date, each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. The Debtors are operating their business and managing their property as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. On June 6, 2023, the Court entered an order [Docket No. 55] authorizing the joint administration and procedural consolidation of these chapter 11 cases pursuant to Bankruptcy Rule 1015(b). No request for the appointment of a trustee or examiner has been made in these chapter 11 cases. On June 14, 2023, the United States Trustee for the District of Delaware (the "U.S. Trustee") appointed an official committee of unsecured creditors pursuant to section 1102 of the Bankruptcy Code (the "Committee") [Docket No. 90].

11. On August 4, 2023, the Court entered the *Order (I)(A) Approving Bidding Procedures for the Sale of Substantially All of the Debtors' Assets; (B) Authorizing the Debtors to Enter into One or More Stalking Horse Agreements and to Provide Bidding Protections Thereunder; (C) Scheduling an Auction and Approving the Form and Manner of Notice Thereof; (D) Approving Assumption and Assignment Procedures; and (E) Scheduling A Sale Hearing and Approving the Form and Manner of Notice Thereof; (II)(A) Approving the Sale of the Debtors' Assets Free and Clear of Liens, Claims, Interests and Encumbrances and (B) Approving the Assumption and Assignment of Executory Contracts and Unexpired Leases; and (III) Granting Related Relief* [Docket No. 331]. The sale hearing is scheduled for August 25, 2023.

## II.    The Notice Procedures.

12.    In an effort to manage the Debtors' liquidity concerns and efficiently implement the Sale Transaction and wind-down contemplated by the Plan, the Debtors and their advisors are proposing a noticing plan that is robust and cost-effective.  Specifically, the Debtors will provide to parties in interest, including parties entitled to vote to accept or reject the Plan, in the following ways: (a) serving and noticing the Combined Hearing Notice on parties in interest, including parties entitled to vote; (b) posting the Plan and Disclosure Statement in a conspicuous manner on the public website of the Notice and Claims Agent; and (c) publishing the Publication Notice (as defined below) in the *USA TODAY* or another similar nationally circulated news publication. The Debtors believe that the Publication Notice provides sufficient notice of the pending approval of the Disclosure Statement, the Combined Hearing, and the Objection Deadline to entities who will not otherwise receive notice as provided herein and through the Solicitation Procedures.

13.    The Debtors propose that, on or before September 22, 2023 the Debtors will cause the Notice and Claims Agent to serve the Combined Hearing Notice on, among other parties, Holders of Claims in Class 4, Class 5, Class 6A, Class 6B, Class 6C, and Class 6D, the U.S. Trustee, and all parties that have requested notice pursuant to Bankruptcy Rule 2002.  To provide another layer of notice to parties in interest, the Debtors will also cause the Notice and Claims Agent to update the website maintained for these chapter 11 cases at https://kccllc.net/PGX to provide instructions for obtaining copies of the Plan and Disclosure Statement and to advise parties of important dates and deadlines related to the Plan and Disclosure Statement, including the Voting Record Date, the Voting Deadline, the Objection Deadline, and the Combined Hearing.

## III.    The Solicitation Procedures.

14.    The Debtors propose that they will commence solicitation of votes on the Plan from Holders of Claims in Class 4, Class 5, Class 6A, Class 6B, Class 6C, and Class 6D in accordance

with the Solicitation Procedures and the Bankruptcy Code.   More specifically, on or before September 22, 2023, the Debtors will cause the Notice and Claims Agent to distribute Solicitation Packages by email, where available, and otherwise by first-class U.S. mail, to Holders of Claims in Classes 4, 5, 6A, 6B, 6C, and 6D.   The Disclosure Statement and Ballots will direct Holders of Claims in Classes 4, 5, 6A, 6B, 6C, and 6D to follow the instructions contained in the Ballots (and described in the Disclosure Statement) to complete and submit their respective Ballots to cast a vote to accept or reject the Plan.   The Disclosure Statement and applicable Ballot will expressly provide that a Holder of a Claim seeking to vote on the Plan needs to submit its Ballot so that it is actually received by the Notice and Claims Agent on or before 4:00 p.m., prevailing Eastern Time, on October 20, 2023, to be counted.

15.     Certain other Holders of Claims will not be provided a Solicitation Package because such Holders are: (a) Unimpaired under, and conclusively presumed to accept, the Plan pursuant to section 1126(f) of the Bankruptcy Code, or (b) Impaired, entitled to receive no distribution on account of such Claims under the Plan, and, therefore, deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code.

16.     The Debtors' procedures and standard assumptions for tabulating Ballots include:

**Votes Not Counted**
- Any Ballot that is illegible or contains insufficient information to permit the identification of the Holder of the Claim or Interest;
- Any Ballot that is illegible or contains insufficient information to permit the identification of the Holder of the Claim or Interest;
- Any Ballot transmitted by means other than as specifically set forth in the Ballots;
- Any Ballot cast by an entity that is not entitled to vote on the Plan;

- Any Ballot cast for a Claim listed in the Debtors' schedules as contingent, unliquidated, or disputed for which the applicable bar date has passed and no proof of claim was filed;

- Any Ballot cast for a Claim that is subject to an objection pending as of the Voting Record Date (unless temporarily allowed in accordance with the Order);

- Any Ballot that was sent to the Debtors, the Debtors' agents/representatives (other than the Notice and Claims Agent), or the Debtors' financial or legal advisors instead of the Notice and Claims Agent;

- Any Ballot that is unsigned; and

- Any Ballot that is not clearly marked to either accept or reject the Plan or it is marked both to accept and reject the Plan.

**No Vote Splitting**

- Holders must vote all of their Claims within a particular Class either to accept or reject the Plan and may not split any votes. Accordingly, a Ballot that partially rejects and partially accepts the Plan will not be counted.

## IV.    Plan Overview.

17.    The Plan classifies Holders of Claims or Interests into the following Classes of Claims and Interests for all purposes, including with respect to voting on the Plan, pursuant to section 1126 of the Bankruptcy Code. The following chart represents the Classes of Claims and Interests under the Plan:[5]

| Class | Claim/Interest | Status | Voting Rights |
|-------|----------------|--------|---------------|
| 1 | Secured Tax Claims | Unimpaired | Not Entitled to Vote (Presumed to Accept) |
| 2 | Oher Secured Claims | Unimpaired | Not Entitled to Vote (Presumed to Accept) |
| 3 | Other Priority Claims | Unimpaired | Not Entitled to Vote (Presumed to Accept) |
| 4 | Prepetition First Lien Claims | Impaired | Entitled to Vote |
| 5 | Prepetition Second Lien Claims | Impaired | Entitled to Vote |
| 6A | Continuing Trade Claims | Impaired | Entitled to Vote |
| 6B | Other General Unsecured Claims | Impaired | Entitled to Vote |
| 6C | Litigation Claims | Impaired | Entitled to Vote |

---

[5]    The Plan constitutes a separate chapter 11 plan for each Debtor. The classifications set forth in Classes 1–11 shall be deemed to apply to each Debtor, as applicable. The Debtors reserve the right to modify the Plan in accordance with the terms thereof, including the right to withdraw the Plan as to an individual Debtor at any time before the Confirmation Date.

| 6D | CFPB Claim | Impaired | Entitled to Vote |
|---|---|---|---|
| 7 | Intercompany Claims | Unimpaired / Impaired | Not Entitled to Vote (Presumed to Accept or Deemed to Reject) |
| 8 | Intercompany Interests | Unimpaired / Impaired | Not Entitled to Vote (Presumed to Accept or Deemed to Reject) |
| 9 | Interests in PGX | Impaired | Not Entitled to Vote (Deemed to Reject) |
| 10 | Interests in Lexington Law Firm | Impaired | Not Entitled to Vote (Deemed to Reject) |
| 11 | 510(b) Claims | Impaired | Not Entitled to Vote (Deemed to Reject) |

18.     The Plan provides for the following distributions to be made to the Debtors' creditors and equity holders:

| Class | Claim/Interest | Treatment of Claim/Equity Interest |
|---|---|---|
| Class 1 | Secured Tax Claims | Except to the extent that a Holder of an Allowed Secured Tax Claim agrees to less favorable treatment, in full and final satisfaction, compromise, settlement, and release of and in exchange for such Secured Tax Claim, on or as soon as practicable after the later to occur of (i) the Effective Date and (ii) the date such Claim becomes Allowed (or as otherwise set forth in the Plan), each Holder of a Secured Tax Claim shall receive, at the option of the Plan Administrator:<br><br>(i)  payment in full in Cash of such Holder's Allowed Secured Tax Claim, or<br><br>(ii)  equal semi-annual Cash payments commencing as of the Effective Date or as soon as reasonably practicable thereafter and continuing for five years, in an aggregate amount equal to such Allowed Secured Tax Claim, together with interest at the applicable non-default rate under non-bankruptcy law, subject to the option of the Plan Administrator to prepay the entire amount of such Allowed Secured Tax Claim during such time period. |
| Class 2 | Other Secured Claims | Except to the extent that a Holder of an Allowed Other Secured Claim agrees to less favorable treatment, in full and final satisfaction, compromise, settlement, and release of and in exchange for such Allowed Other Secured Claim, on or as soon as practicable after the Effective Date, in full and final satisfaction, compromise, settlement, and release of and in exchange for such Allowed Other Secured Claim, each Holder of an Allowed Other Secured Claim shall receive, at the option of the applicable Debtor or Wind-Down Debtor:<br><br>(i)  payment in full in Cash of such Holder's Allowed Other Secured Claim;<br><br>(ii)  the collateral securing such Holder's Allowed Other Secured Claim;<br><br>(iii)  Reinstatement of such Holder's Allowed Other Secured Claim; or |

| Class | Claim/Interest | Treatment of Claim/Equity Interest |
|---|---|---|
| | | (iv)  such other treatment rendering such Holder's Allowed Other Secured Claim Unimpaired. |
| Class 3 | Other Priority Claims | Except to the extent that a Holder of an Allowed Other Priority Claim agrees to less favorable treatment, in full and final satisfaction, compromise, settlement, and release of and in exchange for such Allowed Other Priority Claim, on or as soon as practicable after the later to occur of (i) the Effective Date and (ii) the date such Claim becomes Allowed (or as otherwise set forth in the Plan), each Holder of an Administrative, Priority or Priority Tax Claim will either be satisfied in full, in Cash, or otherwise receive treatment consistent with the provisions of section 1129(a)(9) of the Bankruptcy Code. |
| Class 4 | Prepetition First Lien Claims | Except to the extent that a Holder of a Prepetition First Lien Claim agrees to less favorable treatment, in the event the Sale Transaction is not a Credit Bid Transaction, after payment in full in Cash of all Administrative and Priority Claims and Other Priority Claims and funding of the Wind-Down Budget, in full and final satisfaction, compromise, settlement, release, and discharge of its Claim (unless the applicable Holder agrees to less favorable treatment), Holders of Prepetition First Lien Claims shall receive their Pro Rata share of the Distributable Proceeds, up to the Allowed amount of such Prepetition First Lien Claims; *provided* that the Prepetition First Lien Deficiency Claims shall be subordinated and junior to all Other General Unsecured Claims for purposes of distributions under the Plan; *provided*, *further* that such subordination shall be capped at $10 million (including Other Assets subsequently monetized pursuant to the terms and conditions of the Creditor Trust) distributed to Other GUC Claimants under the Plan, after which the Prepetition Secured Lenders shall receive their *pro rata* share of any distribution to Holders of Other General Unsecured Claims on account of such Deficiency Claims (except for any distribution on account of the PIK Notes) and shall constitute Other GUC Claimants on account of such Deficiency Claims. |
| | | Except to the extent that a Holder of a Prepetition First Lien Claim agrees to less favorable treatment, in the event the Sale Transaction is a Credit Bid Transaction, after payment in full in Cash of all Administrative and Priority Claims and Other Priority Claims and funding of the Wind-Down Budget, the Holders of Prepetition First Lien Claims shall be entitled to their Pro Rata share of the Distributable Proceeds, if any, up to the Allowed amount of such Prepetition First Lien Claims, less the Credit Bid Amount; *provided* that the Prepetition First Lien Deficiency Claims shall be subordinated and junior to all Other General Unsecured Claims for purposes of distributions under the Plan; *provided*, *further* that such subordination shall be capped at $10 million (including Other Assets subsequently monetized pursuant to the terms and conditions of the Creditor Trust) distributed to Other GUC Claimants under the Plan, after which the Prepetition Secured Lenders shall receive their *pro rata* share of any distribution to Holders |

| Class | Claim/Interest | Treatment of Claim/Equity Interest |
|---|---|---|
| | | of Other General Unsecured Claims on account of such Deficiency Claims (except for any distribution on account of the PIK Notes) and shall constitute Other GUC Claimants on account of such Deficiency Claims. |
| Class 5 | Prepetition Second Lien Claims | Except to the extent that a Holder of a Prepetition Second Lien Claim agrees to less favorable treatment, in the event the Sale Transaction is not a Credit Bid Transaction, after payment in full in Cash of all Administrative and Priority Claims, Other Priority Claims, Prepetition First Lien Claims, and funding of the Wind-Down Budget, in full and final satisfaction, compromise, settlement, release, and discharge of its Claim, Holders of Prepetition Second Lien Claims shall receive their Pro Rata share of the Distributable Proceeds, up to the Allowed amount of such Prepetition Second Lien Claims; *provided* that the Prepetition Second Lien Deficiency Claims shall be subordinated and junior to all Other General Unsecured Claims for purposes of distributions under the Plan; *provided, further* that such subordination shall be capped at $10 million (including Other Assets subsequently monetized pursuant to the terms and conditions of the Creditor Trust) distributed to Other GUC Claimants under the Plan, after which the Prepetition Secured Lenders shall receive their *pro rata* share of any distribution to Holders of Other General Unsecured Claims on account of such Deficiency Claims (except for any distribution on account of the PIK Notes) and shall constitute Other GUC Claimants on account of such Deficiency Claims. <br><br> Except to the extent that a Holder of a Prepetition Second Lien Claim agrees to less favorable treatment, in the event the Sale Transaction is a Credit Bid Transaction, after payment in full in Cash of all Administrative and Priority Claims, Other Priority Claims, and Prepetition First Lien Claims, and funding of the Wind-Down Budget, the Holders of Prepetition Second Lien Claims shall be entitled to their Pro Rata share of the Distributable Proceeds, if any, up to the Allowed amount of such Prepetition Second Lien Claims, less the Credit Bid Amount; *provided* that the Prepetition Second Lien Deficiency Claims shall be subordinated and junior to all Other General Unsecured Claims for purposes of distributions under the Plan; *provided, further* that such subordination shall be capped at $10 million (including Other Assets subsequently monetized pursuant to the terms and conditions of the Creditor Trust) distributed to Other GUC Claimants under the Plan, after which the Prepetition Secured Lenders shall receive their *pro rata* share of any distribution to Holders of Other General Unsecured Claims on account of such Deficiency Claims (except for any distribution on account of the PIK Notes) and shall constitute Other GUC Claimants on account of such Deficiency Claims. |
| Class 6A | Continuing Trade Claims | Except to the extent that a Holder of a Continuing Trade Claim agrees to less favorable treatment, on the Effective Date, in full and final satisfaction, compromise, settlement, |

| Class | Claim/Interest | Treatment of Claim/Equity Interest |
|---|---|---|
| | | and release of and in exchange for such Allowed Continuing Trade Claim, each Holder of an Allowed Continuing Trade Claim who has not otherwise been paid in full under the Critical Vendor Order shall be paid in Cash its Pro Rata share of (i) cash in the amount of $3.25 million; (ii) the unused Wind-Down Budget; and (iii) Unused Critical Vendor Cash. |
| Class 6B | Other General Unsecured Claims | Except to the extent that a Holder of an Other General Unsecured Claim agrees to less favorable treatment (including but not limited to the subordination of Deficiency Claims as set forth in herein), in full and final satisfaction, compromise, settlement, and release of and in exchange for such Other General Unsecured Claim, each Holder of an Allowed Other General Unsecured Claim shall receive its Pro Rata share of the beneficial interest in the Creditor Trust and as beneficiary of the Creditor Trust shall receive, on a distribution date, their pro rata share of net Cash derived from the Creditor Trust Assets available for distribution on each such distribution date as provided under the Plan and Creditor Trust Agreement, including:<br><br>(i) [a portion of $700,000 (as allocated by the Committee)];<br>(ii) the PIK Notes;<br>(iii) proceeds of Other Assets; and<br>(iv) the Excess Distributable Cash, if any. |
| Class 6C | Litigation Claims | Except to the extent that a Holder of a Litigation Claim agrees to less favorable treatment, in full and final satisfaction, compromise, settlement, and release of and in exchange for such Litigation Claim, each Holder of a Litigation Claim shall receive its Pro Rata share of up to $[●] of the GUC Litigation Claims Settlement Cash. |
| Class 6D | CFPB Claim | Except to the extent that the Holder of the CFPB Claim agrees to less favorable treatment, in full and final satisfaction, compromise, settlement, and release of and in exchange for such CFPB Claim, the Holder of the CFPB Claim shall receive $50,000 of the GUC Litigation Claims Settlement Cash. |
| Class 7 | Intercompany Claims | Allowed Intercompany Claims shall, at the election of the applicable Debtor, be (a) Reinstated, (b) converted to equity, (c) otherwise set off, settled, distributed, contributed, cancelled, or released, or (d) otherwise addressed at the option of the Wind Down Debtor without any distribution. |
| Class 8 | Intercompany Interests | Allowed Holders of Intercompany Interests are either Unimpaired, and such Holders of Intercompany Claims are conclusively presumed to have accepted the Plan under section 1126(f) of the Bankruptcy Code, or Impaired, and such Holders of Intercompany Interests are deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code. Holders of Intercompany Interests are not entitled to vote to accept or reject the Plan. |

| Class | Claim/Interest | Treatment of Claim/Equity Interest |
|-------|----------------|-------------------------------------|
| Class 9 | Interests in PGX | Interests in PGX shall be discharged, canceled, released, and extinguished as of the Effective Date, and will be of no further force or effect, and Holders of Interests in PGX will not receive any distribution on account of such Interests. |
| Class 10 | Interests in Lexington Law Firm | Interests in Lexington Law Firm shall be discharged, canceled, released, and extinguished as of the Effective Date, and will be of no further force or effect, and Holders of Interests in Lexington Law Firm will not receive any distribution on account of such Interests. |
| Class 11 | 510(b) Claims | Allowed Section 510(b) Claims, if any, shall be discharged, canceled, released, and extinguished as of the Effective Date, and will be of no further force or effect, and Holders of Allowed Section 510(b) Claims will not receive any distribution on account of such Allowed Section 510(b) Claims. |

19.     Based on the foregoing (and as discussed in greater detail herein), the Debtors are proposing to solicit votes to accept or reject the Plan from Holders of Claims in Class 4, Class 5, Class 6A, Class 6B, Class 6C, and Class 6D (each, a "Voting Class" and, collectively, the "Voting Classes").  The Debtors are not proposing to solicit votes from Holders of Claims or Interests in Classes 1, 2, 3, 7, 8, 9, 10, or 11 (each, a "Non-Voting Class" and, collectively, the "Non-Voting Classes").

## Basis for Relief

## I.     The Court Should Approve the Disclosure Statement on an Interim and Final Basis.

20.     The Debtors submit that the Disclosure Statement contains adequate information as defined in section 1125 of the Bankruptcy Code.  Accordingly, the Debtors request that the Court approve the Disclosure Statement (a) on an interim basis to permit the Debtors to use it in the solicitation process as described herein and (b) on a final basis at the Combined Hearing as part of the order confirming the Plan.

### A.     The Standard for Approval of the Disclosure Statement Has Been Satisfied.

21.     Pursuant to section 1125 of the Bankruptcy Code, the proponent of a proposed chapter 11 plan must provide "adequate information" regarding that plan to holders of impaired

claims and interests entitled to vote on the plan.  Specifically, section 1125(a)(1) of the Bankruptcy

Code provides, in relevant part, as follows:

> "[A]dequate information" means information of a kind, and in
> sufficient detail, as far as is reasonably practicable in light of the
> nature and history of the debtor and the condition of the debtor's
> books and records, including a discussion of the potential material
> Federal tax consequences of the plan to the debtor, any successor to
> the debtor, and a hypothetical investor typical of the holders of
> claims or interests in the case, that would enable such a hypothetical
> investor of the relevant class to make an informed judgment about
> the plan.

22.     The primary purpose of a disclosure statement is to provide all material information

that creditors and interest holders affected by a proposed plan need to make an informed decision

regarding whether or not to vote for the plan.  *See, e.g.*, *Century Glove, Inc. v. First Am. Bank of*

*N.Y.*, 860 F.2d 94, 100 (3d Cir. 1988) ("[Section] 1125 seeks to guarantee a minimum amount of

information to the creditor asked for its vote."); *In re Monnier Bros.*, 755 F.2d 1336, 1342 (8th

Cir. 1985) ("The primary purpose of a disclosure statement is to give the creditors the information

they need to decide whether to accept the plan."); *In re Phoenix Petrol. Co.*, 278 B.R. 385, 392

(Bankr. E.D. Pa. 2001) ("[T]he general purpose of the disclosure statement is to provide 'adequate

information' to enable 'impaired' classes of creditors and interest holders to make an informed

judgment about the proposed plan and determine whether to vote in favor of or against that plan.");

*In re Unichem Corp.*, 72 B.R. 95, 97 (Bankr. N.D. Ill. 1987) ("The primary purpose of a disclosure

statement is to provide all material information which creditors and equity security holders affected

by the plan need in order to make an intelligent decision whether to vote for or against the plan.").

Congress intended that such informed judgments would be needed to both negotiate the terms of,

and vote on, a plan of reorganization. *See Century Glove, Inc.*, 860 F.2d at 100.

23.     "Adequate information" is a flexible standard, based on the facts and circumstances

of each case. 11 U.S.C. § 1125(a)(1) (stating that "'adequate information' means information of a

kind, and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the debtor and the condition of the debtor's books and records"); *see also Oneida Motor Freight, Inc. v. United Jersey Bank*, 848 F.2d 414, 417 (3d Cir. 1988) ("From the legislative history of § 1125 we discern that adequate information will be determined by the facts and circumstances of each case."); *First Am. Bank of N.Y. v. Century Glove, Inc.*, 81 B.R. 274, 279 (D. Del. 1988) (noting that adequacy of disclosure for a particular debtor will be determined based on how much information is available from outside sources); S. Rep. No. 95-989, at 121 (1978), *as reprinted in* 1978 U.S.C.C.A.N. 5787, 5907 (stating that "the information required will necessarily be governed by the circumstances of the case").

24.    Courts in the Third Circuit acknowledge that determining what constitutes "adequate information" for the purpose of satisfying section 1125 of the Bankruptcy Code resides within the broad discretion of the court.  *See, e.g.*, *In re River Village Assoc.*, 181 B.R. 795, 804 (E.D. Pa. 1995) ("[T]he Bankruptcy Court is thus given substantial discretion in considering the adequacy of a disclosure statement."); *In re Phoenix Petrol., Co.*, 278 B.R. at 393 (same). Accordingly, the determination of whether a disclosure statement contains adequate information must be made on a case-by-case basis, focusing on the unique facts and circumstances of each case. *See In re Phoenix Petrol. Co.*, 278 B.R. at 393; *In re PC Liquidation Corp.*, 383 B.R. 856, 865 (E.D.N.Y. 2008) ("The standard for disclosure is, thus, flexible and what constitutes 'adequate disclosure' in any particular situation is determined on a case-by-case basis, with the determination being largely within the discretion of the bankruptcy court." (internal citations omitted)); *In re Lisanti Foods, Inc.*, 329 B.R. 491, 507 (Bankr. D. N.J. 2005) (stating that "[t]he information required will necessarily be governed by the circumstances of the case.").

25.    In making a determination as to whether a disclosure statement contains adequate information as required by section 1125 of the Bankruptcy Code, courts typically look for disclosures related to topics such as:

    a.    the events that led to the filing of a bankruptcy petition;

    b.    the relationship of the debtor with its affiliates;

    c.    a description of the available assets and their value;

    d.    the debtor's anticipated future performance;

    e.    the source of information stated in the disclosure statement;

    f.    the debtor's condition while in chapter 11;

    g.    claims asserted against the debtor;

    h.    the estimated return to creditors under a chapter 7 liquidation of the debtor;

    i.    the future management of the debtor;

    j.    the chapter 11 plan or a summary thereof;

    k.    financial information, valuations, and projections relevant to a creditor's decision to accept or reject the chapter 11 plan;

    l.    information relevant to the risks posed to creditors under the plan;

    m.    the actual or projected realizable value from recovery of preferential or otherwise avoidable transfers;

    n.    litigation likely to arise in a nonbankruptcy context; and

    o.    tax attributes of the debtor.

*See In re U.S. Brass Corp.*, 194 B.R. 420, 424–25 (Bankr. E.D. Tex. 1996); *see also In re Scioto Valley Mortg. Co.*, 88 B.R. 168, 170–71 (Bankr. S.D. Ohio 1988) (listing the factors courts have considered in determining the adequacy of information provided in a disclosure statement); *In re Metrocraft Pub. Serv., Inc.*, 39 B.R. 567, 568 (Bankr. N.D. Ga. 1984) (same). Disclosure regarding all topics is not necessary in every case. *See In re U.S. Brass Corp.*, 194 B.R. at 424;

*see also In re Phoenix Petrol.*, 278 B.R. at 393 ("[C]ertain categories of information which may be necessary in one case may be omitted in another; no one list of categories will apply in every case.").

26.    The Disclosure Statement provides "adequate information" to allow Holders of Claims in the Voting Classes to make informed decisions about whether to vote to accept or reject the Plan.  Specifically, the Disclosure Statement contains a number of categories of information that courts consider "adequate information," including:

| Category | Description | Location in Disclosure Statement |
|---|---|---|
| Debtors' Corporate History, Structure, and Business Overview | An overview of the Debtors' corporate history, business operations, organizational structure, and capital structure. | Article V |
| Events Leading to the Chapter 11 Filings | An overview of the Debtors' out-of-court restructuring efforts in response to liquidity constraints. | Article VI |
| Material Developments and Anticipated Events of the Chapter 11 Cases | A summary of the course of events in these chapter 11 cases, including the sale process. | Article VII |
| Confirmation of the Plan | Confirmation procedures and statutory requirements for Confirmation and Consummation of the Plan. | Article X |
| Liquidation Analysis | An analysis of the liquidation value of the Debtors. | Article X.B |
| Solicitation and Voting Procedures | A description of the procedures for soliciting votes to accept or reject the Plan and voting on the Plan. | Article IX |
| Risk Factors | Certain risks associated with the Debtors' businesses, as well as certain risks associated with forward-looking statements and an overall disclaimer as to the information provided by and set forth in the Disclosure Statement. | Article VIII |
| Material United States Federal Income Tax Consequences of the Plan | A description of certain U.S. federal income tax law consequences of the Plan. | Article XI |
| Recommendation | A recommendation by the Debtors that Holders of Claims in the Voting Classes should vote to accept the Plan. | Article XII |

27.    Based on the foregoing, the Debtors respectfully submit that the Disclosure Statement complies with all aspects of section 1125 of the Bankruptcy Code and addresses the

information set forth above in a manner that provides adequate information to Holders of Claims entitled to vote to accept or reject the Plan.  Accordingly, the Debtors submit that the Disclosure Statement contains "adequate information" and, therefore, should be approved on an interim basis immediately and on a final basis at the Combined Hearing.

28.    Courts in this district and others have approved the adequacy of the Disclosure Statement on an interim basis.  *See*, *e.g.*, *In re Town Sports Int'l, LLC*, Case No. 20-12168 (CSS) (Bankr. D. Del. Nov. 3, 2020) (approving disclosure statement on an interim basis); *In re Bluestem Brands, Inc.*, Case No. 2010566 (MFW) (Bankr. D. Del. July 16, 2020) (same); *In re Sportco Holdings, Inc.*, Case No. 19-11299 (LSS) (Bankr. D. Del. Sept. 17, 2019) (same); *In re RMBR Liquidation, Inc.*, No. 19-10234 (KG) (Bankr. D. Del. May 7, 2019) (same); *In re GST Autoleather, Inc.*, Case No. 17-12100 (LSS) (Bankr. D. Del. Mar. 12, 2018) (same).

**B.    The Disclosure Statement Provides Sufficient Notice of Injunction, Release, and Exculpation Provisions in the Plan.**

29.    Bankruptcy Rule 3016(c) requires that, if a plan provides for an injunction against conduct not otherwise enjoined under the Bankruptcy Code, the plan and disclosure statement must describe, in specific and conspicuous language, the acts to be enjoined and the entities subject to the injunction.

30.    Additionally, Local Rule 3017-2(c)(ii) requires a debtor to "(A) recite whether the proposed form of order and/or plan of liquidation contains any provisions of the type indicated below and (B) identify the location of any such provision in the proposed form of order and/or plan of liquidation."  In satisfaction of Local Rule 3017-2(c)(ii), the Debtors state as follows:

31.    <u>Article IV.O</u> of the Plan provides for an exemption under the Bankruptcy Code from certain taxes and fees under section 1146 of the Bankruptcy Code.

32.    In addition, Article VIII of the Plan and Article IV.A.5 of the Disclosure Statement describe in detail the entities subject to an injunction under the Plan and the acts that they are enjoined from pursuing.  Further, the operative language in Article VIII of the Plan and Article IV.A.5(e) of the Disclosure Statement is in bold font, making it conspicuous to anyone who reads it.  Moreover, Article VIII of the Plan and Article IV.A.5(b) and Article IV.A.5(c) of the Disclosure Statement describe in detail the entities subject to or providing a release under the Plan and the Claims and Causes of Action so released. Article VIII of the Plan and Article IV.A.5(d) of the Disclosure Statement also describe in detail the entities entitled to exculpation under the Plan. Each of the foregoing sections is set forth conspicuously in bold font.  Accordingly, the Debtors respectfully submit that the Disclosure Statement complies with Bankruptcy Rule 3016(c) and Local Rule 3017-2(c)(ii) by conspicuously describing the conduct and parties enjoined, released, or exculpated by the Plan.

## II.    The Court Should Enter an Order Scheduling the Combined Hearing.

33.    Section 1128 of the Bankruptcy Code provides that "[a]fter notice, the court shall hold a hearing on confirmation of a plan" and that "[a] party in interest may object to confirmation of a plan." 11 U.S.C. § 1128; *see also* Fed. R. Bankr. P. 3017(c).[6]

34.    Local Rule 3017-2 permits a combined hearing to consider approval of a disclosure statement and confirmation of a chapter 11 plan.  This Local Rule sets forth the following, non-exhaustive situations where a debtor may appropriately seek to have a combined hearing:

> (i)    The plan proposes to treat as unimpaired (x) all classes of unsecured claims, and (y) all classes of interest in any debtor that is a public company;
>
> (ii)    The debtor(s), in the aggregate, have less than fifty general unsecured creditors;  the  proposed  plan  does  not  seek  non-consensual

---

[6]    Bankruptcy Rule 3017(c) provides that "[o]n or before approval of the disclosure statement, the court . . . may fix a date for the hearing on confirmation." Fed R. Bankr. P. 3017(c).

releases/injunctions with respect to the claims creditors may hold against non-debtor parties; none of the debtor(s) are public companies, or the classes of interest in any debtor that is a public company public are unimpaired;

(iii)    The proposed plan is a liquidating plan; general unsecured creditors are not entitled to vote on the plan because they are deemed to reject it; the plan does not seek any form of release or injunction in favor of non-debtor parties from creditors or interest holders in classes that are deemed to reject the plan;

(iv)    The proposed plan is a liquidating plan in which all or substantially all of the assets of the debtor(s) were or will be liquidated pursuant to a sale under 11 U.S.C. § 363; the plan does not seek non-consensual releases/injunctions with respect to claims creditors may hold against non-debtor parties; and the debtor(s)'s combined assets to be distributed pursuant to the proposed plan are estimated, in good faith, to be worth less than $25 million (excluding causes of action).

35.    The Debtors submit that approval of the Combined Hearing is appropriate in this case under Local Rule 3017-2(a)(iv) because, (i) substantially all of the Debtors' assets will be sold pursuant to a sale under section 363 of the Bankruptcy Code and any remaining assets will be administered or liquidated under the Plan, (ii) the Plan does not seek nonconsensual releases or injunctions with respect to claims creditors may hold against non-Debtor parties, and (iii) the Debtors' combined assets to be distributed pursuant to the proposed Plan, after the section 363 sale, are estimated, in good faith, to be worth less than $25 million (excluding causes of action). *See* Disclosure Statement, Art. IV(B)(1).

36.    Nevertheless, in the event that the Court determines that the Combined Hearing does not qualify under Local Rule 3017-2, the Debtors respectfully request that the Court grant the relief requested by this motion pursuant to section 105 of the Bankruptcy Code.  Section 105 of the Bankruptcy Code expressly authorizes the Court to "issue an order . . . that . . . provides that the hearing on approval of the disclosure statement may be combined with the hearing on confirmation of the plan" where the court deems a combined hearing to be "appropriate to ensure

the case is handled expeditiously and economically." *See* 11 U.S.C. § 105(d)(2)(B)(vi); *see also In re Gulf Coast Oil Corp.*, 404 B.R. 407, 425 (Bankr. S.D. Tex. 2009) ("Section 1125(f) authorizes combined plans and disclosure statements in small business cases and § 105(d) authorizes the court to combine them in other cases."); *In re Luminent Mortg. Cap. Inc.*, Case No. 08-21389 (Bankr. D. Md. May 15, 2009).  Pursuant to this authority, Courts in this District have combined hearings on approval of disclosure statements and confirmation of plans in chapter 11 cases.  *See, e.g.*, *In re Town Sports Int'l, LLC*, Case No. 20-12168 (CSS) (Bankr. D. Del. Nov. 3, 2020) (scheduling combined hearing on approval of disclosure statement and confirmation of plan); *In re Bluestem Brands, Inc.*, Case No. 20-10566 (MFW) (Bankr. D. Del. July 16, 2020) (same); *In re Sportco Holdings, Inc.*, Case No. 19-11299 (LSS) (Bankr. D. Del. Sept. 17, 2019) (same); *In re RMBR Liquidation, Inc.*, No. 19-10234 (KG) (Bankr. D. Del. May 7, 2019) (same); *In re GST Autoleather, Inc.*, Case No. 17-12100 (LSS) (Bankr. D. Del. Mar. 12, 2018) (same).

37.    Consistent with the foregoing authority, the Debtors respectfully request that the Court consolidate its approval of the Disclosure Statement and Confirmation of the Plan at the single Combined Hearing and enter an order scheduling the Combined Hearing for October 27, 2023.

**III.    The Court Should Approve the Procedures for Confirming the Plan.**

**A.    Scheduling the Combined Hearing, the Objection Deadline, and Shortening Certain Notice Requirements Related Thereto Is Reasonable and Appropriate.**

38.    Bankruptcy Rule 3017(a) provides that "the court shall hold a hearing on at least 28 days' notice to the debtor, creditors, equity security holders and other parties in interest . . . to consider the disclosure statement and any objections or modifications thereto." Local Rule 9006-1(c)(i) provides that "voting procedures motions filed pursuant to Local Rule 3017-1(b) must be

filed at least twenty-one (21) days prior to the hearing date." Section 1128(a) of the Bankruptcy Code provides that "[a]fter notice, the court shall hold a hearing on confirmation of a plan." Also, the Court may combine the hearing on the adequacy of the Disclosure Statement and the hearing to confirm the Plan. *See* 11 U.S.C. § 105(d)(2)(B)(vi).

39.     Similarly, Bankruptcy Rule 2002(b) provides that notice shall be given to "the debtor, the trustee, all creditors and indenture trustees [of] not less than 28 days . . . by mail of the time fixed for filing objections and the hearing to consider approval of a disclosure statement . . ."

40.     A court may, however, shorten such notice periods pursuant to Bankruptcy Rule 9006(c) for cause shown. Specifically, Bankruptcy Rule 9006(c)(1) provides that "when an act is required or allowed to be done at or within a specified time by these rules or by a notice given thereunder or by order of the court, the court for cause shown may in its discretion with or without motion or notice order the period reduced."

41.     The Debtors request that the Court schedule a hearing to consider interim approval of the Disclosure Statement on September 14, 2023, schedule the Solicitation Launch for September 22, 2023, fix the Objection Deadline at 4:00 p.m., prevailing Eastern Time, on October 20, 2023, and schedule a hearing to consider final approval of the Disclosure Statement and Confirmation of the Plan on October 27, 2023 in compliance with the requirements of Bankruptcy Rules 2002(b) and 3017(a). The Debtors also request that the Court require that objections to the Disclosure Statement or Confirmation of the Plan must: (a) be in writing; (b) comply with the Bankruptcy Rules and the Local Rules; (c) state the name and address of the objecting party and the amount and nature of the claim or interest beneficially owned by such entity; (d) state with particularity the legal and factual basis for such objections, and, if practicable, a proposed modification to the Plan that would resolve such objections; and (e) be filed with the

Court with proof of service thereof and served upon the applicable notice parties so as to be actually received by the Objection Deadline.

42.    Courts in this district have held combined hearings on approval of disclosure statements and confirmation of plans in chapter 11 cases that were neither small business cases nor prepackaged cases but otherwise complied with Local Rule 3017-2.  *See*, *e.g.*, *In re Town Sports Int'l, LLC*, Case No. 20-12168 (CSS); *In re Bluestem Brands, Inc.*, Case No. 20-10566 (MFW) (Bankr. D. Del. July 16, 2020); *In re Sportco Holdings, Inc.*, Case No. 19-11299 (LSS) (Bankr. D. Del. Sept. 17, 2019); *In re RMBR Liquidation, Inc.*, No. 19-10234 (KG) (Bankr. D. Del. May 7, 2019).

43.    The Debtors submit that a combined hearing will streamline and expedite the Confirmation process, which will inure directly to the benefit of the Debtors' estates and their creditors by hastening the implementation of the Plan and limiting the amount of time the Debtors remain in chapter 11.  Exiting chapter 11 as expeditiously and efficiently as possible is paramount to the Debtors' success.  Any adverse effects of the chapter 11 filings upon the Debtors' businesses and going-concern value will be minimized, and the benefit to creditors maximized, through prompt distributions and the reduction of administrative expenses of the estate.  Furthermore, a combined hearing will spare the Debtors from additional administrative expenses associated with a two-stage process and promote judicial efficiency and economy.  Therefore, the Debtors hereby respectfully request entry of the Order, pursuant to section 105(d)(2)(B)(vi) of the Bankruptcy Code, setting a date for the Combined Hearing at which the Bankruptcy Court will consider the adequacy of the Disclosure Statement and Confirmation of the Plan.

**B.    The Court Should Approve the Procedures for Filing Objections to the Plan.**

44.    The Debtors request that the Court direct the manner in which parties in interest may object to Confirmation of the Plan.  Pursuant to Bankruptcy Rule 3020(b)(1), objections to

confirmation of a plan must be filed and served "within a time fixed by the court." Pursuant to

Local Rule 3017-2(f), the objection deadline for a combined confirmation hearing under the Local

Rules typically must be at least thirty-eight (38) days from the date of entry of the order approving

a disclosure statement on an interim basis and establishing voting procedures. *See* Del. Bankr.

L.R. 3017-2(f).

45.     The Debtors request that the Court establish October 20, 2023, at 4:00 p.m.

(prevailing Eastern Time) as the Objection Deadline by which objections to the Disclosure

Statement or the Plan, if any, must be filed and served. Such date is reasonable, as the Plan will

have been on file since August 24, 2023, providing creditors and parties in interest with 57 days

to review and analyze the Plan prior to the Objection Deadline. Moreover, the proposed Objection

Deadline is seven days after the proposed deadline to file the Plan Supplement and seven days

before the proposed Combined Hearing.

46.     The Debtors further request that objections to Confirmation of the Plan or requests

for modifications to the Plan, if any, must:

      a.      be in writing;

      b.      conform to the Bankruptcy Rules, the Local Rules, and any orders of the Court;

      c.      state, with particularity, the legal and factual basis for the objection and, if practicable, a proposed modification to the Plan (or related materials) that would resolve such objection; and

      d.      be filed with the Court (contemporaneously with a proof of service) upon the applicable notice parties so to be actually received on or before the Objection Deadline of October 20, 2023, at 4:00 p.m., prevailing Eastern Time.

47.     The Debtors believe that the proposed process will afford the Court, the Debtors,

and other parties in interest reasonable time to consider any objections and proposed modifications

prior to the Combined Hearing.

IV.    **The Court Should Approve the Solicitation and Voting Procedures, Including the Voting and Tabulation Procedures, the Solicitation Package, and the Timeline for Soliciting Votes on the Plan.**

A.    **The Standard for Approval of Voting and Tabulation Procedures.**

48.    Section 1126(c) of the Bankruptcy Code provides that:

> A class of claims has accepted a plan if such plan has been accepted by creditors, other than any entity designated under section (e) of this section, that hold at least two-thirds in amount and more than one-half in number of the allowed claims of such class held by creditors, other than any entity designed under subsection (e) of this section, that have accepted or rejected the plan.

Additionally, Bankruptcy Rule 3018(c) provides, in part, that "[a]n acceptance or rejection [of a plan] shall be in writing, identify the plan or plans accepted or rejected, be signed by the creditor or equity security holder or an authorized agent and conform to the appropriate Official Form." Consistent with these requirements, the Debtors propose to use the Solicitation and Voting Procedures, which procedures include specific voting and tabulation requirements and processes (the "Voting and Tabulation Procedures"), as follows.

B.    **Completion of Ballots.**

49.    To facilitate the process of tabulating all votes received, the Debtors propose that a Ballot be counted in determining the acceptance or rejection of the Plan only if it satisfies certain criteria. Specifically, the Voting and Tabulation Procedures provide that the Debtors not count a Ballot if, among other things: (1) it is illegible or contains insufficient information to permit the identification of the Holder of the Claim or Interest; (2) it was transmitted by means other than as specifically set forth in the ballots; (3) it was cast by an entity that is not entitled to vote on the Plan; (4) it was cast for a Claim listed in the Debtors' schedules as contingent, unliquidated, or disputed for which the applicable bar date has passed and no proof of claim was filed; (5) it was cast for a Claim that is subject to an objection pending as of the Voting Record Date (unless

temporarily allowed in accordance with the Order); (6) it was sent to the Debtors, the Debtors'

agents/representatives (other than the Notice and Claims Agent), or the Debtors' financial or legal

advisors instead of the Notice and Claims Agent; (7) it is unsigned; or (8) it is not clearly marked

to either accept or reject the Plan or it is marked both to accept and reject the Plan.  Further, the

Debtors, subject to a contrary order of the Court, may waive any defects or irregularities as to any

particular Ballot at any time, either before or after the close of voting, and any such waivers shall

be documented in the Voting Report.

### C.      General Ballot Tabulation and Voting Procedures.

50.     The proposed Voting and Tabulation Procedures set forth specific criteria with

respect to the general tabulation of Ballots, and voting procedures applicable to Holders of Claims

and Interests.  The Debtors believe that the proposed Voting and Tabulation Procedures will

facilitate the Plan Confirmation process.  Specifically, the procedures will clarify any obligations

of Holders of Claims and Interests entitled to vote to accept or reject the Plan and will create a

straightforward process by which the Debtors can determine whether they have satisfied the

numerosity requirements of section 1126(c) of the Bankruptcy Code.  Accordingly, the Debtors

submit that the Voting and Tabulation Procedures are in the best interests of their estates, Holders

of Claims and Interests, and other parties in interest, and that good cause supports the relief

requested herein.

### D.      The Court Should Approve the Forms of the Ballots.

51.     In accordance with Bankruptcy Rule 3018(c), the Debtors have prepared and

customized the Ballots.  Although based on Official Form No. 314, the Ballots have been modified

to (a) address the particular circumstances of these chapter 11 cases, and (b) include certain

additional information that is relevant and appropriate for Claims in the Voting Classes.  The

proposed Ballots for the Voting Classes are annexed as Exhibits 3A, 3B, 3C, 3D, 3E, and 3F to

the Order.  The Debtors respectfully submit that the forms of the Ballots comply with Bankruptcy Rule 3018(c) and, therefore, should be approved.

> **E.    The Court Should Approve the Form and Distribution of the Solicitation Packages and Cover Letter to Parties Entitled to Vote on the Plan.**

52.    Bankruptcy Rule 3017(d) specifies the materials to be distributed to holders of allowed claims or equity interests upon approval of a disclosure statement, including the plan or a court-approved summary of the plan, the disclosure statement approved by the court, and notice of the time within which acceptances and rejections of the plan may be filed.

53.    In accordance with this requirement, the Debtors propose to send the Solicitation Packages to provide Holders of Claims in the Voting Classes with the information they need to be able to make informed decisions with respect to how to vote on the Plan.  Specifically, on or before the Solicitation Deadline, the Debtors will cause the Solicitation Packages to be distributed by email, where available, and otherwise by first-class U.S. mail, to those Holders of Claims in the Voting Classes.  Each Solicitation Package will include the following materials:

   a.    the Order (without exhibits, except the Solicitation and Voting Procedures);

   b.    a Ballot, together with detailed voting instructions and, for those Ballots distributed by first-class mail, a pre-addressed, postage prepaid return envelope;

   c.    the Cover Letter, including instructions to obtain access, free of charge, to the Plan and Disclosure Statement via https://kccllc.net/PGX;

   d.    the Combined Hearing Notice; and

   e.    any other materials as the Court may direct.

54.    Distributing Solicitation Packages by email where available is the most expeditious and cost-effective method of service here.  The Debtors have reliable and active email addresses

for these individuals and ordinarily correspond with them through email in the ordinary course.[7] Email service is not only the most efficient and cost-effective manner by which to service such Holders of Claims, but is also consistent with how the Debtors' have sought to serve their creditors in these chapter 11 cases.[8]  Accordingly, the Debtors submit that service via email, where possible, is justified under the circumstances of these chapter 11 cases.

55.    Due to the voluminous nature of certain documents, the Debtors request authorization to distribute the Plan and Disclosure Statement to Holders of Claims entitled to vote on the Plan by providing instructions as part of the Solicitation Package for accessing these documents through the Debtors' restructuring website (https://kccllc.net/PGX), and, if a Holder requests a hard copy or flash drive from the Notice and Claims Agent, a hard copy or flash drive within three (3) business days of receipt of such request.  Given the length of the Plan and the Disclosure Statement, distribution in this manner will allow the Solicitation Packages to be sent on the earliest possible date.

56.    Additionally, the Debtors will provide (a) complete Solicitation Packages (excluding the Ballots) to the U.S. Trustee, and (b) the Order (in electronic format) and the Combined Hearing Notice to all parties required to be notified under Bankruptcy Rule 2002 and Local Rule 2002-1 (the "2002 List") as of the Voting Record Date.

---

[7]    *See, e.g.*, First Day Declaration, ¶ 20 (outlining the Debtors' "CreditRepair.com" and "Credit.com" brands, which offered online, direct-to-consumer credit report repair, information, and education services).

[8]    *See Motion of Debtors for Entry of Interim and Final Orders (I) Authorizing the Debtors to (A) File a Consolidated List of Creditors in Lieu of Submitting a Separate Mailing Matrix for Each Debtor, (B) File a Consolidated List of the Debtors' Thirty Largest Unsecured Creditors, (C) Service Certain Parties in Interest by Email, (D) Approve the Form and Manner of Service of the Notice of Commencement, (E) Redact or Withhold Certain Confidential Information, and (F) Redact Certain Personally Identifiable Information and (II) Granting Related Relief* [Docket No. 14].

57.     Any party that would prefer to receive materials in paper format may contact the Notice and Claims Agent and request paper copies of the materials (to be provided at the Debtors' expense) by (a) visiting the Debtors' restructuring website at https://kccllc.net/PGX, (b) writing to: Kurtzman Carson Consultants LLC, Re: PGX Holdings, Inc., et al., 222 N. Pacific Coast Highway, Suite 300, El Segunda, CA 90245, (c) emailing PGXHoldingsInfo@kccllc.com, or (d) calling the Debtors' Notice and Claims Agent at (888) 249-2721 (Domestic) or +1 (310) 751-2604 (International). Parties in interest can also obtain these documents and any other pleadings filed in these chapter 11 cases (for a fee) via PACER at https://ecf.deb.uscourts.gov.  The Debtors will not distribute Solicitation Packages or other solicitation materials to Holders of Claims and Interests that have already been paid in full during these chapter 11 cases or that are expected to be paid in full in the ordinary course of business pursuant to an order previously entered by the Court in these chapter 11 cases.

58.     The Debtors respectfully request that the Notice and Claims Agent be authorized (to the extent not authorized by another order of the Court) to assist the Debtors in (a) distributing the Solicitation Packages, (b) receiving, tabulating, and reporting on Ballots cast to accept or reject the Plan by Holders of Claims against the Debtors, (c) responding to inquiries from Holders of Claims and other parties in interest relating to the Disclosure Statement, the Plan, the Ballots, the Solicitation Packages, and all other related documents and matters related thereto, including the procedures and requirements for voting to accept or reject the Plan and for objecting to the Plan, (d) soliciting votes on the Plan, and (e) if necessary, contacting creditors regarding the Plan.

59.     In addition to accepting hard copy Ballots via first class mail, overnight courier, and hand delivery, the Debtors request authorization to accept Ballots via electronic, online transmissions, solely through a customized online balloting portal maintained by the Notice and

Claims Agent on the Debtors' case website (the "E-Ballot").  Parties entitled to vote may cast an electronic Ballot and electronically sign and submit a Ballot instantly by utilizing the E-Ballot (which allows a Holder to submit an electronic signature).  Instructions for electronic, online transmission of Ballots through E-Ballot are set forth on the forms of Ballots.  The encrypted ballot data and audit trail created by such electronic submission shall become part of the record of any Ballot submitted in this manner and the creditor's electronic signature will be deemed to be immediately legally valid and effective.  For the avoidance of doubt, Ballots submitted via E-Ballot shall be deemed to contain an original signature.  E-Ballots shall be the sole method by which a creditor may submit a Ballot electronically.  Ballots submitted by email, facsimile, or other electronic means shall be deemed invalid.

60.     All votes to accept or reject the Plan must be cast by using the appropriate Ballot. All Ballots must be properly executed, completed, and delivered according to their applicable voting instructions by: (a) first class mail; (b) overnight courier; (c) personal delivery; or (d) via E-Ballot Portal, so that the Ballots are actually received by the Notice and Claims Agent no later than the Voting Deadline at the return address set forth in the applicable Ballot.

**F.      The Court Should Approve the Combined Hearing Notice.**

61.     The Debtors request that the Court approve the Combined Hearing Notice, substantially in the form attached hereto as Exhibit 8 to the Order.  In accordance with Bankruptcy Rules 2002 and 3017(d), the Combined Hearing Notice provides (a) instructions as to how to view or obtain copies of the Disclosure Statement (including the Plan and the other exhibits attached thereto), the Order, and all other materials in the Solicitation Package (excluding Ballots) from the Notice and Claims Agent or the Court's website via PACER; (b) notice of the Voting Deadline; (c) notice of the date by which the Debtors will file the Plan Supplement; (d) notice of the

32

Confirmation Objection Deadline; and (e) notice of the Combined Hearing and information related thereto.

62.     The Combined Hearing Notice will be made available on the Debtors' chapter 11 website at: https://kccllc.net/PGX.   In addition, the Debtors propose to serve the Combined Hearing Notice, within one business day following entry of the Order, upon the Debtors' entire creditor matrix and all interest holders of record; *provided, however*, that in lieu of mailing a Combined Hearing Notice to their current members and individuals who were formerly members within the 12 months prior to the Petition Date for whom the Debtors maintain active electronic mail addresses on record (meaning that such electronic mails do not respond that the message is undeliverable), the Debtors will cause the Combined Hearing Notice to be sent by electronic mail to such members.   Given that the universe of such parties would exceed 3.2 million separate mailings, costing the Debtors approximately $7.5 million in mailing expenses alone, the Debtors submit that service via active electronic mail addresses, which is the means by which the Debtors ordinarily correspond with their members, is justified under the circumstances.

63.     Bankruptcy Rule 2002(l) permits the court to "order notice by publication if it finds that notice by mail is impracticable or that it is desirable to supplement the notice."   Therefore, in addition to the foregoing distribution of the Combined Hearing Notice, the Debtors will publish the Combined Hearing Notice in a format modified for publication (the "Publication Notice"), as soon as reasonably practicable after entry of the Order, on one occasion in *USA TODAY* or another similar nationally circulated news publication.   The Debtors believe that the Publication Notice will provide sufficient notice of, among other things, the entry of the Order, the Voting Deadline, the Objection Deadline, and the Combined Hearing to parties who did not otherwise receive notice

thereof. Accordingly, service and publication of the Combined Hearing Notice comports with the requirements of Bankruptcy Rule 2002 and should be approved.

**G.      The Court Should Approve the Plan Supplement Notice.**

64.      The Plan defines "Plan Supplement" to mean the compilation of documents and forms of documents, schedules, and exhibits to the Plan that the Debtors will file at least seven days prior to the Voting Deadline and post to the Debtors' restructuring website at: https://kccllc.net/PGX.  *See* Plan at Article I.A.121.  The Plan Supplement will include, among other materials, the following materials in connection with Confirmation:  (a) Rejected Executory Contracts and Unexpired Leases Schedule, (b) Assumed Executory Contracts and Unexpired Leases Schedule, (c) Schedule of Retained Causes of Action, (d) any necessary documentation related to the Sale Transactions, (e)(i) the identity of the Creditor Trustee and (ii) the terms of the governing agreement of the Creditor Trust, (f) the Litigation Portion of the GUC Litigation Claims Settlement Cash, and (g) the PIK Notes. *provided* that, through the Effective Date, the Plan Supplement and the exhibits thereto may be amended or modified in accordance with the Plan.

65.      To ensure that all Holders of Claims and Interests receive notice of the Debtors' filing of the Plan Supplement, the Debtors respectfully submit that the Plan Supplement Notice should be approved.

**H.      The Court Should Approve the Form of Notices to Non-Voting Classes.**

66.      As discussed above, the Non-Voting Classes are not entitled to vote on the Plan. As a result, they will not receive Solicitation Packages, and instead, the Debtors propose that such parties receive a Non-Voting Status Notice.  Specifically, in lieu of solicitation materials, the Debtors propose to provide the following to Holders of Claims and Interests in Non-Voting Classes:

| Class | Status | Treatment |
|-------|--------|-----------|
| Classes 1, 2, and 3 | Unimpaired—Conclusively Presumed to Accept | Will receive a Non-Voting Status Notice, substantially in the form attached to the Order as <u>Exhibit 4</u> in lieu of a Solicitation Package. |
| Classes 9, 10, and 11 | Impaired—Deemed to Reject | Will receive a Non-Voting Status Notice, substantially in the forms attached to the Order as <u>Exhibit 5</u> in lieu of a Solicitation Package. |
| N/A | Disputed Claims | Holders of Claims and Interests that are subject to a pending objection by the Debtors are not entitled to vote the disputed portion of their Claim. As such, Holders of such Claims will receive a notice, substantially in the forms attached to the Order as <u>Exhibit 6</u> (which notice shall be served together with such objection). |

67.    Each of the Non-Voting Status Notices will include, among other things: (a) instructions as to how to view or obtain copies of the Disclosure Statement (including the Plan and the other exhibits thereto), the Order, and all other materials in the Solicitation Package (excluding Ballots) from the Notice and Claims Agent free of charge or the Court's website via PACER; (b) a disclosure regarding the settlement, release, exculpation, and injunction language set forth in <u>Article VIII</u> of the Plan; (c) notice of the Objection Deadline; (d) notice of the Combined Hearing; and (e) information related thereto.

68.    The Debtors believe that the distribution of Non-Voting Status Notices in lieu of Solicitation Packages satisfies the requirements of Bankruptcy Rule 3017(d).  Accordingly, unless the Court orders otherwise, the Debtors do not intend to distribute Solicitation Packages to Holders of Claims in the Non-Voting Classes.

69.    The Debtors further request that they not be required to distribute Solicitation Packages or other solicitation materials to the following: (a) Holders of Claims that have already been paid in full during these chapter 11 cases or that are authorized to be paid in full in the ordinary course of business pursuant to an order previously entered by this Court; (b) any party to

whom a notice of the hearing regarding the Court's approval of the Disclosure Statement was sent, but was subsequently returned as undeliverable; or (c) Holders of Class 7 Intercompany Claims and Class 8 Intercompany Interests.

I.      **The Court Should Approve the Notices to Contract and Lease Counterparties.**

70.     <u>Article V.A</u> of the Plan provides that, except as otherwise provided in the Plan or otherwise agreed to by the Debtors and the counterparty to an Executory Contract or Unexpired Lease, each of the Debtors' Executory Contracts and Unexpired Leases will be deemed automatically rejected pursuant to sections 365 and 1123 of the Bankruptcy Code as of the Plan Effective Date, unless such Executory Contract or Unexpired Lease: (a) is identified on the Schedule of Assumed Executory Contracts and Unexpired Leases; (b) previously assumed or rejected by a Final Order; (c) is the subject of a motion to assume or reject Executory Contracts or Unexpired Leases that is pending on the Confirmation Date; or (d) is subject to a motion to assume or reject an Executory Contract or Unexpired Lease pursuant to which the requested effective date of such rejection is after the Effective Date.

71.     To ensure that counterparties to Executory Contracts and Unexpired Leases receive notice of assumption or rejection of their Executory Contract or Unexpired Lease (and any corresponding Cure Costs) pursuant to the Plan, the Debtors will distribute by email, where available, and otherwise by first-class U.S. mail, an Assumption Notice or a Rejection Notice, as appropriate, within the time periods specified in the Plan.  If certain, but not all, of a contract counterparty's Executory Contracts and Unexpired Leases are assumed pursuant to the Plan, the Confirmation Order will be a determination that such counterparty's Executory Contracts and Unexpired Leases that are being rejected pursuant to the Plan are severable agreements that are not integrated with those Executory Contracts and Unexpired Leases that are being assumed pursuant to the Plan.  Parties seeking to contest this finding with respect to their Executory

Contracts or Unexpired Leases must file a timely objection by the Confirmation Objection Deadline on the grounds that their agreements are integrated and not severable.

**V.      The Court Should Approve the Voting Record Date, Solicitation Deadline, and Voting Deadline.**

72.     Bankruptcy Rule 3017(d) provides that, for the purposes of soliciting votes in connection with the confirmation of a plan, "creditors and equity security holders shall include holders of stocks, bonds, debentures, notes, and other securities of record on the date the order approving the disclosure statement is entered or another date fixed by the court, for cause, after notice and a hearing." Bankruptcy Rule 3018(a) contains a similar provision regarding determination of the record date for voting purposes.

73.     The Debtors request that the Court exercise its authority under Bankruptcy Rules 3017(d) and 3018(a) to establish September 15, 2023, as the Voting Record Date. Moreover, the Debtors propose that, with respect to any transferred Claim, the transferee shall be entitled to receive a Solicitation Package and, if the Holder of such Claim is entitled to vote with respect to the Plan, cast a Ballot on account of such Claim only if: (a) all actions necessary to effectuate the transfer of the Claim pursuant to Bankruptcy Rule 3001(e) have been completed by the Voting Record Date, or (b) the transferee files by the Voting Record Date (i) the documentation required by Bankruptcy Rule 3001(e) to evidence the transfer and (ii) a sworn statement of the transferor supporting the validity of the transfer. In the event a Claim is transferred after the Voting Record Date, the transferee of such Claim shall be bound by any vote on the Plan made by the Holder of such Claim as of the Voting Record Date.

74.     With respect to parties seeking to file a motion under Bankruptcy Rule 3018(a) to temporarily allow a Claim or Interest solely for purposes of voting to accept or reject the Plan, the Debtors request that the Court establish as the deadline by which a party must file such a motion

the date that is 10 days from the later of (a) the distribution of the Combined Hearing Notice and (b) the filing of an objection to such Claim or Interest.  The Debtors further request that the Debtors and other parties in interest shall have until October 10, 2023 to file objections to any motions filed under Bankruptcy Rule 3018(a).

75.     The Debtors request that, after the Debtors distribute Solicitation Packages to Holders of Claims and Interests entitled to vote on the Plan by the Solicitation Deadline, the Court require that all Holders of Claims and Interests entitled to vote on the Plan complete, execute, and return their customized Ballots (in accordance with the instructions on the Ballots) so that they are actually received by the Notice and Claims Agent on or before the Voting Deadline.

76.     The foregoing timing and materials will afford Holders of Claims and Interests entitled to vote on the Plan 57 days within which to review and analyze such materials and subsequently make an informed decision as to whether to vote to accept or reject the Plan before the Voting Deadline consistent with the requirements of the applicable Bankruptcy Rules and Local Rules.  *See* Fed. R. Bankr. P. 3017(d) (after approval of a disclosure statement, the debtor must transmit the plan, the approved disclosure statement, a notice of the time within which acceptances and rejections of such plan may be filed, and any other information that the court may direct to certain holders of claims); *see also* Del. Bankr. L.R. 3017-1(a) (following the filing of a disclosure statement, the plan proponent must provide notice of hearing and objection dates in accordance with Bankruptcy Rule 3017).  Accordingly, the Debtors request that the Court approve the form of and the Debtors' proposed procedures for distributing the Solicitation Packages to the Holders of Claims in the Voting Classes.

## Non-Substantive Modifications

77.     The Debtors request authorization to make non-substantive changes to the Disclosure Statement, Disclosure Statement Hearing Notice, Plan, Combined Hearing Notice,

Solicitation Packages, Non-Voting Status Notices, Ballots, Publication Notice, Cover Letter, Solicitation and Voting Procedures, Plan Supplement Notice, Assumption Notice, Rejection Notice, Voting and Tabulation Procedures, and related documents after the Order is entered without further order of the Court, including changes to correct typographical and grammatical errors, if any, and to make conforming changes to the Disclosure Statement, the Plan, and any other materials in the Solicitation Packages before distribution.

## **Reservation of Rights**

78.     Nothing contained in this motion or any order granting the relief requested in this motion, and no action taken by the Debtors pursuant to the relief requested or granted (including any payment made in accordance with any such order), is intended as or shall be construed or deemed to be:  (a) an admission as to the amount of, basis for, priority, or validity of any claim against the Debtors under the Bankruptcy Code or other applicable nonbankruptcy law; (b) a waiver of the Debtors' or any other party in interest's rights to dispute any claim on any grounds; (c) a promise or requirement to pay any particular claim; (d) an implication, admission or finding that any particular claim is an administrative expense claim, other priority claim or otherwise of a type specified or defined in this motion or any order granting the relief requested by this motion; (e) a request or authorization to assume, adopt, or reject any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; (f) an admission as to the validity, priority, enforceability or perfection of any lien on, security interest in, or other encumbrance on property of the Debtors' estates; or (g) a waiver or limitation of any claims, causes of action or other rights of the Debtors or any other party in interest against any person or entity under the Bankruptcy Code or any other applicable law.

## **Notice**

79.     The Debtors will provide notice of this motion to:  (a) the U.S. Trustee; (b) counsel to the Committee; (c) the office of the attorney general for each of the states in which the Debtors operate; (d) the Consumer Financial Protection Bureau; (e) the United States Attorney's Office for the District of Delaware; (f) the Internal Revenue Service; (g) the United States Securities and Exchange Commission; (h) the United States Department of Justice; (i) the DIP Agent and counsel thereto; (j) First Lien Credit Agreement Agent and counsel thereto; (k) the Second Lien Credit Agreement Agent and counsel thereto; and (l) any party that has requested notice pursuant to Bankruptcy Rule 2002 (the "Notice Parties").  The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

## **No Prior Request**

80.     No prior request for the relief sought in this motion has been made to this or any other court.

[*Remainder of page intentionally left blank.*]

WHEREFORE, the Debtors request entry of the Order, substantially in the form attached hereto as **Exhibit A**, (a) granting the relief requested herein and (b) granting such other relief as the Court deems appropriate under the circumstances.

Dated:  August 24, 2023
Wilmington, Delaware

| | |
|---|---|
| */s/ Domenic E. Pacitti* | |
| **KLEHR HARRISON HARVEY BRANZBURG LLP** | **KIRKLAND & ELLIS LLP**<br>**KIRKLAND & ELLIS INTERNATIONAL LLP** |
| Domenic E. Pacitti (DE Bar No. 3989)<br>Michael W. Yurkewicz (DE Bar No. 4165)<br>919 North Market Street, Suite 1000<br>Wilmington, Delaware 19801<br>Telephone:    (302) 426-1189<br>Facsimile:    (302) 426-9193<br>Email:    dpacitti@klehr.com<br>    myurkewicz@klehr.com | Joshua A. Sussberg, P.C. (admitted *pro hac vice*)<br>601 Lexington Ave<br>New York, New York 10022<br>Telephone:    (212) 446-4800<br>Facsimile:    (212) 446-4900<br>Email:    joshua.sussberg@kirkland.com |
| - and - | - and - |
| Morton R. Branzburg (*pro hac vice* pending)<br>1835 Market Street, Suite 1400<br>Philadelphia, Pennsylvania 19103<br>Telephone:    (215) 569-3007<br>Facsimile:    (215) 568-6603<br>Email:    mbranzburg@klehr.com | Spencer A. Winters (admitted *pro hac vice*)<br>Whitney C. Fogelberg (admitted *pro hac vice*)<br>Alison J. Wirtz (admitted *pro hac vice*)<br>300 North LaSalle<br>Chicago, Illinois 60654<br>Telephone:    (312) 862-2000<br>Facsimile:    (312) 862-2200<br>Email:    spencer.winters@kirkland.com<br>    whitney.fogelberg@kirkland.com<br>    alison.wirtz@kirkland.com |
| *Co-Counsel to the Debtors and Debtors in Possession* | *Co-Counsel to the Debtors and Debtors in Possession* |