# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | ) | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| PGX HOLDINGS, INC., *et al.*,[1] | ) | Case No. 23-10718 (CTG) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

**DECLARATION OF MATTHEW HENRY, MANAGING DIRECTOR AT ALVAREZ & MARSAL NORTH AMERICA, LLC, IN SUPPORT OF CONFIRMATION OF THE SECOND AMENDED JOINT CHAPTER 11 PLAN OF PGX HOLDINGS, INC. AND ITS DEBTOR AFFILIATES PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE**

I, Matthew Henry, hereby declare under penalty of perjury:

**Background and Qualifications**

1. I am a Managing Director with Alvarez & Marsal North America, LLC ("A&M"), a global restructuring advisory services firm and a restructuring advisor to the above-captioned debtors and debtors in possession (the "Debtors").

2. I submit this declaration (this "Declaration") in support of confirmation of the *Second Amended Joint Chapter 11 Plan of PGX Holdings, Inc. and Its Debtor Affiliates* [Docket No. 570] filed contemporaneously herewith (as modified, amended, or supplemented from time to time, the "Plan").[2] Except where specifically noted, the statements in this Declaration are based upon: (a) my personal knowledge of the Debtors' operations, business affairs, financial

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: PGX Holdings, Inc. (2510); Credit Repair UK, Inc. (4798); Credit.com, Inc. (1580); Creditrepair.com Holdings, Inc. (7536); Creditrepair.com, Inc. (7680); eFolks Holdings, Inc. (5213); eFolks, LLC (5256); John C. Heath, Attorney At Law PC (8362); Progrexion ASG, Inc. (5153); Progrexion Holdings, Inc. (7123); Progrexion IP, Inc. (5179); Progrexion Marketing, Inc. (5073); and Progrexion Teleservices, Inc. (5110). The location of the Debtors' service address for purposes of these chapter 11 cases is: 257 East 200 South, Suite 1200, Salt Lake City, Utah 84111.

[2] Capitalized terms used but not defined herein have the meanings ascribed to them in the Plan, the *First Amended Disclosure Statement for the First Amended Joint Chapter 11 Plan of PGX Holdings, Inc. and Its Debtor Affiliates* [Docket No. 488] (the "Disclosure Statement") or the Plan, as applicable.

performance, and restructuring efforts; (b) information learned from my review of relevant documents; or (c) information I have received from other members of the Debtors' management or the Debtors' advisors.

3. I specialize in developing financial, operational, and strategic solutions for troubled companies, lenders, and equity sponsors in distressed and non-distressed situations, including developing strategic business and turnaround plans, implementing cash flow forecasting and cash preservation programs, evaluating operational performance and improvement opportunities, and assessing debt capacity and recapitalization alternatives.

4. I have nearly 20 years of distressed company and transaction advisory experience. I have been employed by A&M for over 15 years.  A&M is a preeminent restructuring consulting firm with extensive experience providing high-quality, specialized management and restructuring advisory services to debtors and distressed companies.  Specifically, A&M's core services include turnaround advisory services, interim and crisis management, revenue enhancement, claims management, and creditor and risk management advisory services.  A&M provides a wide range of debtor advisory services targeted at stabilizing and improving a company's financial position, including:  developing or validating forecasts, business plans, and related assessments of strategic position; monitoring and managing cash, cash flow, and supplier relationships; assessing and recommending cost reduction strategies; and designing and negotiating financial restructuring packages.

5. Additionally, A&M provides advice on specific aspects of the turnaround process and helps manage complex constituency relations and communications.  A&M is known for its ability to work alongside company management and key constituents during both in court chapter 11 and out-of-court restructurings to develop a feasible and executable plan of reorganization.

Some notable, publicly disclosed restructuring assignments that I have personally advised on include: *In re iHeartMedia, Inc.*, No. 18-31274 (MI) (Bankr. S.D. Tex. Mar. 14, 2018); *In re Seadrill Ltd.*, No. 21-30427 (Bankr. S.D. Tex. Feb. 21, 2021); *In re Furniture Brands Int'l Inc.*, No. 13-12329 (CSS) (Bankr. D. Del. Sept. 9, 2013); *In re Coldwater Creek Inc.* No. 14-10867 (BLS) (Bankr. D. Del. Apr. 11, 2014); and *In re William Lyon Homes*, No. 11-14019 (CSS) (Bankr. D. Del. Dec. 19, 2011), among others.

6. I am generally familiar with the Debtors' day-to-day operations, business and financial affairs, and books and records.

7. Since A&M's initial engagement by the Debtors on April 4, 2023 (and Debtor John C. Health, Attorney At Law was added to such engagement on May 11, 2023), I and other A&M personnel have worked closely with the Debtors' management and other professionals in assisting with the myriad requirements of these chapter 11 cases.[3] The statements in this Declaration, except where specifically noted, are based on my personal knowledge or opinion, on information that I have received from the Debtors' employees or advisors, employees of A&M working directly with me or under my supervision, direction, or control, or from the Debtors' books and records maintained in the ordinary course of their business. Neither A&M nor I am being specifically compensated for this testimony, other than compensation to A&M as a professional services firm employed by the Debtors. If I were called upon to testify, I could and would competently testify to the facts set forth herein on that basis.

---

[3] On July 19, 2023, the Court entered the *Order Authorizing Debtors to Employ and Retain Alvarez & Marsal North America, LLC as Financial Advisors to the Debtors and Debtors in Possession, Effective as of the Petition Date, Pursuant to Sections 327(a) and 328 of the Bankruptcy Code* [Docket No. 214].

3

**<u>Liquidation Analysis</u>**

8.      I have reviewed the classification of Claims and Interests under the Plan and the proposed distributions to each class of Claims or Interests. My testimony below that the Plan should be confirmed is informed by this knowledge. Specifically, I believe that the Plan satisfies the requirements under chapter 11 of title 11 of the United States Code (the "<u>Bankruptcy Code</u>") regarding the "best interests of creditors" test.

9.      It is my understanding that section 1129(a)(7) of the Bankruptcy Code requires that each holder of an impaired Claim or Interest either (a) accepts the Plan or (b) receives or retains property having a value, as of the Effective Date, that is not less than the value such holder would receive if the Debtors were liquidated under chapter 7 of the Bankruptcy Code under the Plan. This requirement is known as the "best interests" test. The best interests test applies to each non-consenting member of an impaired class and is generally satisfied through a comparison of the estimated recoveries for a debtor's stakeholders in a hypothetical chapter 7 liquidation of that debtor's estate against the estimated recoveries under that debtor's plan of reorganization.

10.      To determine whether the Plan satisfies the best interests test, the Debtors, with the assistance of A&M, prepared a liquidation analysis, which is attached to the Disclosure Statement, as <u>Exhibit B</u> (the "<u>Liquidation Analysis</u>"). I personally oversaw the preparation of the Liquidation Analysis and worked closely with a team of A&M advisors in its development. The Liquidation Analysis was completed after due diligence by the Debtors and A&M and was based on a variety of assumptions (as explained below), which I believe are reasonable under the circumstances.

11.      The Liquidation Analysis outlines (a) the estimated cash proceeds that a chapter 7 trustee would generate if the Debtors' chapter 11 cases were converted to a chapter 7 case on October 27, 2023 (the "<u>Conversion Date</u>"), which, for the avoidance of doubt, is after both Sale

Transactions closed on September 28, 2023, and the assets of the Debtors' estates were liquidated in a forced sale scenario and (b) the estimated distribution that each class of claims or interests would receive from the liquidation proceeds under the priority scheme dictated by the Bankruptcy Code. The Liquidation Analysis is based on the Debtors' remaining cash balance and assets as of the Conversion Date and the net costs to execute the administration of the wind down of the Estates.

12. The Liquidation Analysis estimates chapter 7 liquidation proceeds based on these asset value assumptions, less the costs incurred during liquidation, including administrative claims, wind down costs, and the fees and expenses of the chapter 7 trustee. The assumptions contained within the Liquidation Analysis are subject to potential material changes, including with respect to economic and business conditions, as well as legal rulings. The Liquidation Analysis, however, does not materially change if a slightly later conversion date is assumed.

13. A comparison of the range of estimated liquidation recoveries to the estimated Plan recoveries indicates that each holder of an Impaired Claim or Interest will receive or retain under the Plan property of a value, as of the Effective Date, that is not less than the value such holder would receive if the Debtors were liquidated under chapter 7 of the Bankruptcy Code. Specifically, the projected recoveries under the Plan and the results of the Liquidation Analysis for all Holders of Claims and Interests are as follows:

| Class | Claims or Interests | Estimated Plan Recovery | Estimated Liquidation Recovery |
|---|---|---|---|
| 1 | Secured Tax Claims | 100% | 0% |
| 2 | Other Secured Claims | 100% or N/A | 0% |
| 3 | Other Priority Claims | 100% | 0% |
| 4 | Prepetition First Lien Claims | 88.6% | 0% |
| 5 | Prepetition Second Lien Claims | 0% | 0% |
| 6A | Continuing Trade Claims | 51% – 100% | 0% |
| 6B | Other General Unsecured Claims | <1% – 11% | 0% |
| 6C | Litigation Claims | 1% – 4% | 0% |

5

| 6D | CFPB Claim | <1% | 0% |
|---|---|---|---|
| 7 | Intercompany Claims | 0% or 100% | 0% |
| 8 | Intercompany Interests | 0% or 100% | 0% |
| 9 | Interests in PGX | 0% | 0% |
| 10 | Interests in Lexington Law Firm | 0% | 0% |
| 11 | Section 510(b) Claims | 0% | 0% |

14. Importantly, in a hypothetical chapter 7 liquidation, all creditors, including those holding Continuing Trade Claims, Other General Unsecured Claims, and the CFPB Claim—which will receive a partial recovery under the Plan—would receive zero recovery. Accordingly, I believe that the Plan satisfies the requirements of section 1129(a)(7) of the Bankruptcy Code.

**<u>Feasibility</u>**

15. It is my understanding that section 1129(a)(11) of the Bankruptcy Code requires that confirmation of a plan is not likely to be followed by the liquidation or further reorganization of the debtor or any successor thereto unless such liquidation or reorganization is proposed in the plan. Simply put, section 1129(a)(11) of the Bankruptcy Code requires a plan to be "feasible." Upon the Effective Date, based on current estimates, analysis, and calculations supervised by me, the Debtors will have sufficient funds to make all distributions contemplated by the Plan and have reserved or earmarked sufficient funds to satisfy their obligations under the Plan.

16. I understand that the Plan's required distributions and obligations have been fully accounted for. The Debtors have appropriately reserved, from their Available Cash from the Wind-Down Budget attached hereto as **Exhibit A**, cash to fund their obligations under the Plan. I understand the Debtors sized the Wind-Down Budget with approximately $2.625 million to fund wind-down costs including the payment of certain claims, taxes, and statutory fees.

17. The Debtors have appropriately reserved for their obligations under the Plan to the Creditor Trust in the amount of $100,000, to make available the GUC Trade Settlement Cash in

the amount of $3.25 million, and to make available the GUC Litigation Claims Settlement Cash in the amount of $750,000.[4]

18. Further, in accordance with the Sale Orders, the Debtors established an escrow account, which will constitute the Professional Fee Escrow Account under the Plan, and that will be used to satisfy the Allowed Professional Fee Claims arising through the Confirmation Date. The Professional Fee Escrow Account was funded in an amount equal to approximately $17.3 million in accordance upon the closing of the Sales.

[*Remainder of Page Intentionally Left Blank*]

---

[4] I understand that the DIP Claims have been satisfied in full upon the closing of each Sale Transaction. Further, I understand the PIK Notes, an initial form of which was filed with the Plan Supplement, will be issued to the Creditor Trust by the Progrexion Purchaser in accordance with the terms of the Plan.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Dated: October 24, 2023   /s/ *Matthew Henry*
Matthew Henry
Managing Director
Alvarez & Marsal North America, LLC

# Exhibit A

**Wind-Down Budget**

**Wind Down Budget**

| Fiscal Month<br>Forecast | Nov-23<br>Forecast | Dec-23<br>Forecast | Jan-24<br>Forecast | Feb-24<br>Forecast | Mar-24<br>Forecast | Apr-24<br>Forecast | May-24<br>Forecast | Jun-24<br>Forecast | Jul-24<br>Forecast | Aug-24<br>Forecast | Sep-24<br>Forecast | Oct-24<br>Forecast | Wind Down<br>Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Net Cash Flow** | | | | | | | | | | | | | |
| **Disbursements:** | | | | | | | | | | | | | |
| Plan Administrator | $ 75 | $ 75 | $ 75 | $ 75 | $ 75 | $ 75 | $ 75 | $ 75 | $ 75 | $ 75 | $ 75 | $ 75 | $ 902 |
| Property Tax Reserve | - | 20 | - | - | - | - | - | - | - | - | - | - | 20 |
| Claim Reconciliation | 125 | 82 | 52 | 44 | 74 | 68 | 49 | 44 | 44 | 44 | 94 | 94 | 814 |
| Legal Counsel | 135 | 135 | 65 | 65 | 10 | 10 | 10 | 10 | 10 | 10 | 83 | 83 | 625 |
| Tax Advisor | 17 | 17 | 17 | 17 | 17 | 17 | 17 | 17 | 17 | 17 | 17 | 17 | 200 |
| U.S. Trustee Fees | - | - | - | 13 | - | - | 13 | - | - | 12 | - | 5 | 43 |
| **Total Disbursements** | $ 351 | $ 328 | $ 209 | $ 214 | $ 176 | $ 169 | $ 163 | $ 146 | $ 146 | $ 158 | $ 269 | $ 274 | $ 2,603 |
| **Total Net Cash Flow** | $ (351) | $ (328) | $ (209) | $ (214) | $ (176) | $ (169) | $ (163) | $ (146) | $ (146) | $ (158) | $ (269) | $ (274) | $ (2,603) |
| **Liquidity Summary** | | | | | | | | | | | | | |
| **Book Cash** | | | | | | | | | | | | | |
| Beginning Cash Balance | $ 2,625 | $ 2,274 | $ 1,945 | $ 1,736 | $ 1,523 | $ 1,347 | $ 1,178 | $ 1,015 | $ 869 | $ 723 | $ 564 | $ 296 | $ 2,625 |
| Net Cash Flow | (351) | (328) | (209) | (214) | (176) | (169) | (163) | (146) | (146) | (158) | (269) | (274) | (2,603) |
| **Ending Cash Balance** | $ 2,274 | $ 1,945 | $ 1,736 | $ 1,523 | $ 1,347 | $ 1,178 | $ 1,015 | $ 869 | $ 723 | $ 564 | $ 296 | $ 22 | $ 22 |