**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| PGX HOLDINGS, INC, *et al.*,[1] | ) | Case No. 23-10718 (CTG) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |
| | ) | **Related to Docket Nos. 488 and 570** |

**NOTICE OF PROPOSED FINDINGS OF FACT, CONCLUSIONS OF LAW
AND ORDER CONFIRMING THE SECOND AMENDED JOINT CHAPTER 11
PLAN OF PGX HOLDINGS, INC. AND ITS DEBTOR AFFILIATES
PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE**

**PLEASE TAKE NOTICE** that on September 16, 2023, the Court entered the *Order (I) Approving the Adequacy of the Disclosure Statement on an Interim Basis, (II) Scheduling a Combined Disclosure Statement Approval and Plan Confirmation Hearing, (III) Approving the Solicitation and Notice Procedures, (IV) Approving the Combined Hearing Notice, and (V) Granting Related Relief* [Docket No. 478] (the "Disclosure Statement Approval Order").

**PLEASE TAKE FURTHER NOTICE** that on September 19, 2023, the Debtors filed and served the *Notice of Hearing to Consider (I) The Adequacy of the Disclosure Statement and (II) Confirmation of the First Amended Joint Chapter 11 Plan Filed by the Debtors* [Docket No. 483] setting, among other things, a hearing date of at 10:00 a.m. on October 27, 2023 (the "Confirmation Hearing") for the confirmation of the *First Amended Joint Chapter 11 Plan of PGX Holdings, Inc. and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 486] and final approval of the *First Amended Disclosure Statement for the First Amended Joint Chapter 11 Plan of*

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are:  PGX Holdings, Inc. (2510); Credit Repair UK, Inc. (4798); Credit.com, Inc. (1580); Creditrepair.com Holdings, Inc. (7536); Creditrepair.com, Inc. (7680); eFolks Holdings, Inc. (5213); eFolks, LLC (5256); John C. Heath, Attorney At Law PC (8362); Progrexion ASG, Inc. (5153); Progrexion Holdings, Inc. (7123); Progrexion IP, Inc. (5179); Progrexion Marketing, Inc. (5073); and Progrexion Teleservices, Inc. (5110).  The location of the Debtors' service address for purposes of these chapter 11 cases is:  257 East 200 South, Suite 1200, Salt Lake City, Utah 84111.

*PGX Holdings, Inc. and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 488] (the "<u>Disclosure Statement</u>"*).

**PLEASE TAKE FURTHER NOTICE** that on October 24, 2023, `the Debtors filed` the *Second Amended Joint Chapter 11 Plan of PGX Holdings, Inc. and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* `[Docket No. 570]` (as may be supplemented, modified, or amended, the "<u>Plan</u>").

**PLEASE TAKE FURTHER NOTICE** that attached hereto as <u>Exhibit A</u> is the *Proposed Findings of Fact, Conclusions of Law, and Order Approving the Debtors' Disclosure Statement for, and Confirming the Second Amended Joint Plan of PGX Holdings, Inc. and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* which will be presented at the Confirmation Hearing with respect to the confirmation of the Plan and final approval of the Disclosure Statement.

[Remainder of Page Intentionally Left Blank]

Dated: October 25, 2023
Wilmington, Delaware

/s/ Michael W. Yurkewicz

KLEHR HARRISON HARVEY
BRANZBURG LLP
Domenic E. Pacitti (DE Bar No. 3989)
Michael W. Yurkewicz (DE Bar No. 4165)
919 North Market Street, Suite 1000
Wilmington, Delaware 19801
Telephone:    (302) 426-1189
Facsimile:    (302) 426-9193
Email:   dpacitti@klehr.com
              myurkewicz@klehr.com

-and-

Morton R. Branzburg (*pro hac vice* pending)
1835 Market Street, Suite 1400
Philadelphia, Pennsylvania 19103
Telephone:    (215) 569-3007
Facsimile:    (215) 568-6603
Email:   mbranzburg@klehr.com


*Co-Counsel to the Debtors and Debtors in
Possession*

KIRKLAND & ELLIS LLP
KIRKLAND & ELLIS INTERNATIONAL LLP
Joshua A. Sussberg, P.C. (admitted *pro hac vice*)
601 Lexington Ave
New York, New York 10022
Telephone:    (212) 446-4800
Facsimile:    (212) 446-4900
Email:  joshua.sussberg@kirkland.com

- and -

Spencer Winters (admitted *pro hac vice*)
Whitney C. Fogelberg (admitted *pro hac vice*)
Alison J. Wirtz (admitted *pro hac vice*)
300 North LaSalle
Chicago, Illinois 60654
Telephone:    (312) 862-2000
Facsimile:    (312) 862-2200
Email:  spencer.winters@kirkland.com
             whitney.fogelberg@kirkland.com
             alison.wirtz@kirkland.com


*Co-Counsel to the Debtors and Debtors in
Possession*

## EXHIBIT A

**Proposed Confirmation Order**

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| PGX HOLDINGS, INC., *et al.*,[1] | ) | Case No. 23-10718 (CTG) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |
| | ) | **Related to Docket Nos. 468 and 570** |

## FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER APPROVING THE DEBTORS' DISCLOSURE STATEMENT FOR, AND CONFIRMING THE SECOND AMENDED JOINT CHAPTER 11 PLAN OF PGX HOLDINGS, INC. AND ITS DEBTOR AFFILIATES PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE

The above-captioned debtors and debtors in possession (collectively, the "Debtors"),

having:[2]

a. commenced, on June 4, 2023 (the "Petition Date"), these chapter 11 cases (the "Chapter 11 Cases") by filing voluntary petitions in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code");

b. continued to operate and manage their businesses and properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code;

c. obtained, on August 4, 2023, entry of the *Final Order (I) Authorizing the Debtors to (A) Obtain Postpetition Financing and (B) Utilize Cash Collateral, (II) Granting Liens and Superpriority*

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: PGX Holdings, Inc. (2510); Credit Repair UK, Inc. (4798); Credit.com, Inc. (1580); Creditrepair.com Holdings, Inc. (7536); Creditrepair.com, Inc. (7680); eFolks Holdings, Inc. (5213); eFolks, LLC (5256); John C. Heath, Attorney At Law PC (8362); Progrexion ASG, Inc. (5153); Progrexion Holdings, Inc. (7123); Progrexion IP, Inc. (5179); Progrexion Marketing, Inc. (5073); and Progrexion Teleservices, Inc. (5110). The location of the Debtors' service address for purposes of these chapter 11 cases is: 257 East 200 South, Suite 1200, Salt Lake City, Utah 84111.

[2] All capitalized terms used but otherwise not defined in these findings of fact, conclusions of law, and order (collectively, this "Confirmation Order") have the meanings given to them in the *Second Amended Joint Chapter 11 Plan of Reorganization of PGX Holdings, Inc. and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code*, attached hereto as **Exhibit A**. The rules of interpretation set forth in Article I of the Plan shall apply to this Confirmation Order. This Confirmation Order remains subject to ongoing review and material revision by all parties in interest including, for the avoidance of doubt, the Debtors, the Committee, the U.S. Trustee, the DIP Agent, the Purchaser, and all parties that objected (formally or informally) to confirmation of the Plan.

*Administrative Expense Claims, (III) Granting Adequate Protection, (IV) Modifying the Automatic Stay, and (V) Granting Related Relief* [Docket No. 332] (the "Final DIP Order"), which included as Exhibit C the Global Settlement Term Sheet, and the *Order (I)(A) Approving the Bidding Procedures for the Sale of Substantially All of the Debtors' Assets; (B) Authorizing the Debtors to Enter into One or More Stalking Horse Agreements and to Provide Bidding Protections Thereunder; (C) Scheduling an Auction and Approving the Form and Manner of Notice Thereof; (D) Approving Assumption and Assignment Procedures; and (E) Scheduling a Sale Hearing and Approving the Form and Manner of Notice Thereof; (II)(A) Approving the Sale of the Debtors' Assets Free and Clear of Liens, Claims, Interests, and Encumbrances and (B) Approving the Assumption and Assignment of Executory Contracts and Unexpired Leases; and (III) Granting Related Relief* [Docket No. 331] (the "Bidding Procedures Order");

d.  filed, on August 24, 2023, (a) the *Joint Chapter 11 Plan of PGX Holdings, Inc. and its Debtor Affiliate Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 410] (as amended, modified, supplemented from time to time, the "Plan"), and (b) the *Disclosure Statement for the Joint Chapter 11 Plan of PGX Holdings, Inc. and its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 412] (the "Disclosure Statement");

e.  filed, on August 25, 2023, the *Motion of Debtors for Entry of an Order (I) Approving the Adequacy of the Disclosure Statement on an Interim and Final Basis; (II) Scheduling a Combined Disclosure Statement Approval and Plan Confirmation Hearing; (III) Approving the Solicitation and Notice Procedures; (V) Approving the Combined Hearing Notice, and (VI) Granting Related Relief* [Docket No. 413] (the "Disclosure Statement Motion")

f.  obtained, on August 25, 2023, (a) the *Order (I) Approving Progrexion Stalking Horse Purchase Agreement and Authorizing the Sale of Certain Assets of the Debtors Outside the Ordinary Course of Business, (II) Authorizing the Sale of Assets Free and Clear of All Liens, Claims, Interests, and Encumbrances, (III) Authorizing the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases in Connection therewith, and (IV) Granting Related Relief* [Docket No. 422] (the "Progrexion Sale Order"), and (b) the *Order (I) Approving Lexington Law Stalking Horse Purchase Agreement and Authorizing the Sale of Certain Assets of the Debtors Outside the Ordinary Course of Business, (II) Authorizing the Sale of Assets Free and Clear of All Liens, Claims, Interests, and Encumbrances, (III) Authorizing the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases in Connection therewith, and (IV) Granting Related Relief* [Docket No. 423] (the "Lexington Law Sale Order" and together with the Progrexion Sale Order, the "Sale Orders");

g.  filed, on September 14, 2023, the *Motion of Debtors for Entry of an Order (I) Extending the Debtors' Exclusive Period to File a Chapter 11 Plan and Solicit Acceptances Thereof Pursuant to Section 1121 of the Bankruptcy Code and (II) Granting Related Relief* [Docket No. 460];

h.  filed, on September 15, 2023, (a) the *First Amended Joint Chapter 11 Plan of PGX Holdings, Inc. and its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 466], and (b) the *First Amended Disclosure Statement for the First Amended Joint Chapter 11 Plan of PGX Holdings, Inc. and its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 468];

i.  obtained, on September 16, 2023, entry of the *Order (I) Approving the Adequacy of the Disclosure Statement on an Interim Basis, (II) Scheduling a Combined Disclosure Statement Approval and Plan Confirmation Hearing, (III) Approving the Solicitation and Notice Procedures, (IV) Approving the Combined Hearing Notice, and (V) Granting Related Relief* [Docket No. 478] (the "Disclosure Statement Order"), which approved, among other things, solicitation procedures and related notices (the "Solicitation and Notice Procedures"), forms, Ballots, and Master Ballots (collectively, the "Solicitation Packages");

j.  filed, on September 19, 2023, the *Notice of Hearing to Consider (I) the Adequacy of the Disclosure Statement and (II) Confirmation of the First Amended Joint Chapter 11 Plan Filed by the Debtors* [Docket No. 483] (the "Combined Hearing Notice") and, as evidenced by the *Certificate of Service* [Docket No. 560], caused the Combined Hearing Notice to be published on the case website on September 22, 2023 and served as further detailed therein;

k.  filed, on September 20, 2023, the solicitation version of (a) the *First Amended Joint Chapter 11 Plan of PGX Holdings, Inc. and its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 486], and (b) the *First Amended Disclosure Statement for the First Amended Joint Chapter 11 Plan of PGX Holdings, Inc. and its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 487];

l.  caused the Solicitation Packages, the Non-Voting Status Notices (as defined in the Disclosure Statement Order), and the Combined Hearing Notice to be distributed on or before September 22, 2023, in accordance with the Bankruptcy Code, the Federal Rules of Bankruptcy Procedures (the "Bankruptcy Rules"), and the Disclosure Statement Order, as evidenced by, among other things, the *Certificate of Service* [Docket No. 560] (the "Solicitation Affidavit") and the Voting Report (as defined below);

m.  obtained, on September 25, 2023, the entry of the *Order (I) Extending the Debtors' Exclusive Periods to File a Chapter 11 Plan and Solicit Acceptances Thereof Pursuant to Section 1121 of the Bankruptcy Code and (II) Granting Related Relief* [Docket No. 494], extending the Debtors' exclusive period to file a plan and solicit acceptances thereof to January 2, 2024 and February 29, 2024, respectively;

n.  caused the Combined Hearing Notice to be published in the *USA Today* (National Edition) on September 25, 2023, as evidenced by, among other things, the *Affidavit Verification of Publication* [Docket No. 499] (the "Publication Affidavit" and together with the Solicitation Affidavit, the "Affidavits");

o.  filed and caused to be served, on October 13, 2023, the (a) initial *Plan Supplement* [Docket No. 546] (as amended, modified, or supplemented from time to time, the "Plan Supplement") and (b) *Notice of Filing of Plan Supplement* [Docket No. 547] (the "Notice of Plan Supplement"), as evidenced by the *Certificate of Service* [Docket No. 561];

p.  filed, on October [●], 2023, the *Second Plan Supplement* [Docket No. [●]], which included certain revisions to the forms of Creditor Trust Agreement, PIK Notes, and Plan Administrator Agreement;

q.  filed, on October 24, 2023, the *Second Amended Joint Chapter 11 Plan of PGX Holdings, Inc. and its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 570];

r.  filed, on October [24], 2023, the *Debtors' Memorandum of Law in Support of an Order (I) Approving the Debtors' Disclosure Statement on a Final Basis and (II) Confirming the Debtors' Second Amended Joint Plan of Reorganization Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. ●] (the "Confirmation Brief");

s.  filed, on October [24], 2023, the *Declaration of Chad Wallace in Support of Confirmation of the Second Amended Joint Plan of Reorganization of PGX Holdings, Inc. and its Affiliated Debtors Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. ●] (the "Wallace Declaration"); and

t.  caused to be filed, on October 24, 2023, the *Declaration of Sydney Reitzel Regarding the Solicitation and Tabulation of Votes on the First Amended Joint Chapter 11 Plan of PGX Holdings, Inc. and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 569] (as may be amended, modified, or supplemented, the "Voting Report").

This Bankruptcy Court having:

a.  entered, on September 16, 2023, the Disclosure Statement Order;

b.  set October 20, 2023, at 4:00 p.m., prevailing Eastern Time, as the deadline for filing objections to the Plan (the "Plan Objection Deadline");

c.  set October 20, 2023, at 4:00 p.m., prevailing Eastern Time, as the deadline for voting on the Plan (the "Voting Deadline");

d.  set October 20, 2023, at 4:00 p.m., prevailing Eastern Time, as the deadline for parties to opt out (or otherwise object) to the release provisions provided in the Plan;

e.  set October 27, 2023, at 10:00 a.m., prevailing Eastern Time, as the date and time for the Confirmation Hearing pursuant to Bankruptcy Rules 3017 and 3018 and sections 1126, 1128, and 1129 of the Bankruptcy Code;

f.  considered the Plan, the Plan Supplement, the Disclosure Statement, the Confirmation Brief, the Wallace Declaration, the Voting Report, the Combined Hearing Notice, the Affidavits, and all filed pleadings, exhibits, statements, and comments regarding Confirmation, including all objections, statements, and reservations of rights filed by parties in interest on the docket of these Chapter 11 Cases;

g.  held the Confirmation Hearing;

h.  heard the statements and arguments made by counsel in respect of approval of the Disclosure Statement and Confirmation of the Plan and the objections thereto;

4

i.   considered all oral representations, affidavits, testimony, documents, filings, and other evidence regarding approval of the Disclosure Statement and Confirmation of the Plan and having admitted the same into evidence at the Confirmation Hearing;

j.   overruled any and all objections to the approval of the Disclosure Statement and to Confirmation of the Plan and all statements and reservations of rights not consensually resolved or withdrawn unless otherwise indicated herein; and

k.   considered the pleadings and other documents filed and all evidence and arguments proffered or otherwise presented at or with respect to the Confirmation Hearing.

NOW, THEREFORE, the Bankruptcy Court having found that notice of the Confirmation Hearing and the opportunity for any party in interest to object to approval of the Disclosure Statement and Confirmation of the Plan have been adequate and appropriate as to all parties affected or to be affected by the Plan and the transactions contemplated thereby; and the Bankruptcy Court having found that the record of these Chapter 11 Cases and the legal and factual bases set forth in the documents filed in support of approval of the Disclosure Statement and Confirmation of the Plan and all evidence proffered or adduced by counsel at the Confirmation Hearing establish just cause for the relief granted herein; and after due deliberation thereon and good cause appearing therefor, the Bankruptcy Court hereby makes and issues the following findings of fact and conclusions of law, and orders:

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

IT IS HEREBY DETERMINED FOUND, ADJUDGED, DECREED, AND ORDERED THAT:

**A.    Findings of Fact and Conclusions of Law**

1.    The findings of fact and the conclusions of law set forth and incorporated in this Confirmation Order and on the record of the Confirmation Hearing (which are incorporated into this Confirmation Order by this reference) constitute the Bankruptcy Court's findings of fact and conclusions of law in accordance with Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.   Each finding of fact set forth or incorporated in this

Confirmation Order, to the extent it is or may be deemed a conclusion of law, shall also constitute a conclusion of law.  Each conclusion of law set forth or incorporated in this Confirmation Order, to the extent it is or may be deemed a finding of fact, shall also constitute a finding of fact.

**B.**      **Jurisdiction, Venue, Core Proceeding**

2.      The Bankruptcy Court has subject matter jurisdiction over this matter under sections 157 and 1334 of title 28 of the United States Code, 28 U.S.C. §§ 1–4881 (the "Judicial Code"), and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware*, dated February 29, 2012.  The Bankruptcy Court has exclusive jurisdiction to determine whether the Disclosure Statement and the Plan comply with the applicable provisions of the Bankruptcy Code and should be approved and confirmed, respectively.  Venue is proper before the Bankruptcy Court pursuant sections 1408 and 1409 of the Judicial Code.  Approval of the Disclosure Statement and Confirmation of the Plan are core proceedings within the meaning of section 157(b)(2) of the Judicial Code.

**C.**      **Eligibility for Relief**

3.      The Debtors were at all times during these Chapter 11 Cases and continue to be entities eligible for relief under section 109 of the Bankruptcy Code, and the Debtors are proper proponents of the Plan under section 1121(a) of the Bankruptcy Code.

**D.**      **Commencement and Joint Administration of these Chapter 11 Cases**

4.      On the Petition Date, the Debtors commenced these Chapter 11 Cases by filing voluntary petitions for relief under chapter 11 of the Bankruptcy Code.  On June 6, 2023, the Bankruptcy Court entered the *Order (I) Directing the Joint Administration of Chapter 11 Cases and (II) Granting Related Relief* [Docket No. 55] authorizing the joint administration and procedural consolidation of these Chapter 11 Cases in accordance with Bankruptcy Rule 1015(b). Since the Petition Date, the Debtors have operated their businesses as debtors in possession

pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No request for the appointment

of a trustee or examiner has been made in these Chapter 11 Cases.

**E.      Committee Appointment**

5.      On June 14, 2023, the United States Trustee appointed the Official Committee of

Unsecured Creditors (the "Committee") [Docket No. 90] pursuant to section 1102 of the

Bankruptcy Code, which Committee currently consists of (i) Hawthorne Direct, LLC., (ii) Site

Selection Group, LLC, and (iii) Argano, LLC.

**F.       Objections**

6.      This Bankruptcy Court takes judicial notice of the docket of these Chapter 11 Cases

maintained by the clerk of the Bankruptcy Court, including, without limitation, all pleadings and

other documents filed and orders entered thereon.  The Bankruptcy Court also takes judicial notice

of all evidence proffered or adduced and all arguments made at the hearings held before the

Bankruptcy Court during the pendency of the Chapter 11 Cases.  Any resolution of objections to

Confirmation explained on the record at the Confirmation Hearing is hereby incorporated by

reference.  All unresolved objections, statements, informal objections, and reservations of rights

(except with respect to unresolved cure amounts), if any, related to the Disclosure Statement or

Confirmation of the Plan are overruled on the merits.

**G.     Plan Supplement**

7.      The documents identified in the Plan Supplement were filed as required and notice

of such documents was appropriate and satisfactory based upon the circumstances of these Chapter

11 Cases and was in compliance with the provisions of the Plan, the Disclosure Statement Order,

the Bankruptcy Code, and the Bankruptcy Rules.  All parties required to be given notice of the

documents identified in the Plan Supplement have been provided due, proper, timely, and adequate

notice and have had an opportunity to appear and be heard with respect thereto.  The transmittal

and notice of the Plan Supplement (and all documents identified in the Plan Supplement) was appropriate and satisfactory based upon the circumstances of these Chapter 11 Cases and was conducted in good faith. No other or further notice with respect to the Plan Supplement (and all documents identified in the Plan Supplement) is necessary or shall be required. All documents included in the Plan Supplement are integral to, part of, and incorporated by reference into the Plan. Subject to the terms of the Plan (including the review and consent rights of certain parties as set forth in the Plan), the Debtors reserve the right to alter, amend, update, or modify the Plan Supplement in accordance with the terms of the Plan, this Confirmation Order, the Asset Purchase Agreements, the Bankruptcy Code, and the Bankruptcy Rules.

**H.    Interim Disclosure Statement Order**

8.    On September 16, 2023, the Bankruptcy Court entered the Interim Disclosure Statement Order, which, among other things, (a) approved, on an interim basis, the Disclosure Statement as containing adequate information within the meaning of section 1125 of the Bankruptcy Code and Bankruptcy Rule 3017, (b) approved the Solicitation and Notice Procedures, (c) approved the Solicitation Packages, (d) set October 20, 2023, at 4:00 p.m., prevailing Eastern Time, as the Plan Objection Deadline and the Voting Deadline, respectively, and (e) set October 27, 2023, at 10:00 a.m., prevailing Eastern Time, as the date and time for the Confirmation Hearing. The period during which the Debtors solicited acceptances to the Plan is a reasonable and adequate period of time for Holders of Claims or Interests in the Voting Classes to have made an informed decision to accept or reject the Plan.

**I.    Adequacy of the Disclosure Statement**

9.    The Disclosure Statement contains extensive material information regarding the Debtors so that parties entitled to vote on the Plan could make informed decisions regarding the Plan. The Disclosure Statement contains "adequate information" within the meaning of section

1125 of the Bankruptcy Code and complies with any additional applicable requirements of the Bankruptcy Code, the Bankruptcy Rules, and non-bankruptcy law.  The Debtors' solicitation of acceptances and rejections of the Plan via transmittal of the Disclosure Statement and the other materials in the Solicitation Packages was authorized by and complied with the Disclosure Statement Order and was appropriate under the circumstances.

**J.    Solicitation and Notice**

10.    The Plan was solicited in good faith and in compliance with applicable provisions of the Bankruptcy Code and Bankruptcy Rules.

11.    As described in the Voting Report, the Solicitation Packages were transmitted and served in compliance with the provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), and the Disclosure Statement Order.  The solicitation of votes on the Plan complied with the Solicitation and Notice Procedures, was appropriate and satisfactory based upon the circumstances of these Chapter 11 Cases, was conducted in "good faith" within the meaning of section 1125(e) of the Bankruptcy Code, and was in compliance with section 1125, section 1126, and all other applicable sections of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and all other applicable rules, laws, and regulations.

12.    As described in the Voting Report and the Affidavits, all parties required to be given notice of the Confirmation Hearing (including the deadline for filing and serving objections to Confirmation of the Plan) have been provided due, proper, timely, and adequate notice and have had an opportunity to appear and be heard with respect thereto.  Such notice was adequate and sufficient pursuant to section 1128 of the Bankruptcy Code, Bankruptcy Rules 2002, 3017, and 3020, and other applicable law and rules, and no other or further notice is or shall be required.

**K.      Voting Report**

13.      Prior to the Confirmation Hearing, the Debtors filed the Voting Report.  As set forth in the Voting Report, the procedures used to tabulate the Ballots were fair, in good faith, and conducted in accordance with the Disclosure Statement Order, the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and all other applicable rules, laws, and regulations.

14.      As set forth in the Plan, Holders of Claims in Classes 4, 5, 6A, 6B, 6C, and  6D (collectively, the "Voting Classes") for each of the Debtors were eligible to vote on the Plan pursuant to the Solicitation and Notice Procedures.  In addition, Holders of Claims in Classes 1, 2, and 3 are Unimpaired and conclusively presumed to accept the Plan and, therefore, are not entitled to vote to accept or reject the Plan.  Depending on their ultimate treatment by the Debtors, Holders of Claims and Interests in Classes 7 and 8 are either Unimpaired or Impaired and will be either conclusively deemed to accept or conclusively deemed to reject the Plan, and in either scenario are not entitled to vote on the Plan.  Holders of Claims and Interests in Classes 9, 10, and 11 are Impaired under the Plan and are conclusively deemed to have rejected the Plan.

15.      As evidenced by the Voting Report, each of Classes 4, 5, 6A, and 6B voted to accept the Plan, Class 6C voted to reject the Plan, and Class 6D did not cast a vote.

**L.      Bankruptcy Rule 3016**

16.      The Plan is dated and identifies the Entities submitting it, thereby satisfying Bankruptcy Rule 3016(a).  The Debtors appropriately filed the Disclosure Statement and the Plan with the Bankruptcy Court, thereby satisfying Bankruptcy Rule 3016(b).

**M.      Burden of Proof**

17.      The Debtors, as proponents of the Plan, have met their burden of proving the applicable elements of sections 1129(a) and 1129(b) of the Bankruptcy Code by a preponderance of the evidence, which is the applicable evidentiary standard for Confirmation of the Plan.  Further,

the Debtors have proven the elements of sections 1129(a) and 1129(b) of the Bankruptcy Code by clear and convincing evidence.

**N.    Plan Modifications**

18.    Subsequent to filing the first amended version of the Plan (solicitation version) on September 20, 2023, the Debtors made certain technical amendments and modifications to the Plan (the "Plan Modifications"), which are reflected in the version of the Plan attached hereto as **Exhibit A**.  The Plan Modifications were made to address [objections and] informal comments received from various parties in interest, including the Office of the United States Trustee and counsel to certain surety bonds.  The Plan Modifications neither materially adversely affect the treatment of any Claim against or Interest in any of the Debtors under the Plan nor require resolicitation of votes on the Plan under section 1126 of the Bankruptcy Code or Bankruptcy Rules 3018 or 3019.  The filing with the Bankruptcy Court of the Plan as modified by the Plan Modifications, and the disclosure of the Plan Modifications on the record at the Confirmation Hearing, constitute due and sufficient notice thereof.  Accordingly, pursuant to section 1127(a) of the Bankruptcy Code and Bankruptcy Rule 3019, none of these modifications require additional disclosure under section 1125 of the Bankruptcy Code or resolicitation of votes under section 1126 of the Bankruptcy Code.  The Plan as modified and attached hereto, and as may be further modified consistent with the terms of this Confirmation Order and the Plan, shall constitute the Plan submitted for Confirmation by the Bankruptcy Court.

**O.    Presumed Acceptance of Plan as Modified**

19.    In accordance with section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019, all Holders of Claims who voted to accept the Plan or who are conclusively presumed to have accepted the Plan are presumed to have accepted the Plan as modified by the Plan Modifications.  No Holder of a Claim who has voted to accept the Plan shall be permitted to change

its vote as a consequence of the Plan Modifications.  All modifications to the Plan or Plan Supplement made after the Voting Deadline are hereby approved pursuant to section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019.

**P.      Compliance with the Bankruptcy Code (11 U.S.C. §§ 1125 and 1127)**

20.      The Debtors have complied with section 1125 of the Bankruptcy Code with respect to the Disclosure Statement and the Plan.  The requirements of section 1127 of the Bankruptcy Code have been satisfied.

**Q.      Plan Compliance with the Bankruptcy Code (11 U.S.C. § 1129)**

21.      The Plan complies with all applicable provisions of section 1129 of the Bankruptcy Code.

**a)  Compliance with Applicable Provisions of the Bankruptcy Code (11 U.S.C. § 1129(a)(1)).**

22.      The Plan complies with all applicable provisions of the Bankruptcy Code as required by section 1129(a)(1) of the Bankruptcy Code, including sections 1122 and 1123 of the Bankruptcy Code.  In addition, the Plan is dated and identifies the Entities submitting it, thereby satisfying Bankruptcy Rule 3016(a).

**i.    Proper Classification (11 U.S.C. §§ 1122 and 1123(a)(1)).**

23.      The Plan satisfies sections 1122 and 1123(a)(1) of the Bankruptcy Code, and the classification of Claims and Interests under the Plan is proper under the Bankruptcy Code. Article III of the Plan provides for the separate classification of Claims and Interests into [eleven] Classes, based on differences in the legal nature or priority of such Claims and Interests (other than Administrative Claims, Priority Tax Claims, Professional Fee Claims, and payment of U.S. Trustee statutory fees, which are addressed in Article II of the Plan and which are not required to be designated as separate Classes pursuant to section 1123(a)(1) of the Bankruptcy Code).  Valid

business, factual, and legal reasons exist for the separate classification of the various Classes of Claims and Interests created under the Plan.  The classifications were not promulgated for any improper purpose, and the creation of such Classes does not unfairly discriminate between or among Holders of Claims or Interests.  In accordance with section 1122(a) of the Bankruptcy Code, each Class of Claims and Interests contains only Claims or Interests that are substantially similar to the other Claims or Interests within that Class.  The Plan, therefore, satisfies the requirements of sections 1122(a), 1122(b), and 1123(a)(1) of the Bankruptcy Code.

ii.    **Specified Unimpaired and Impaired Classes (11 U.S.C. §§ 1123(a)(2) and 1123(a)(3)).**

24.    The Plan satisfies sections 1123(a)(2) and 1123(a)(3) of the Bankruptcy Code. Article III of the Plan specifies that Claims in Classes 1, 2, and 3 are Unimpaired.  Article III of the Plan also specifies the treatment of each Impaired Class under the Plan, which are Classes 4, 5, 6A, 6B, 6C, and 6D.  Holders of Claims and Interests in Classes 7 and 8 are deemed to accept or deemed to reject the Plan depending on whether such Claims or Interests are reinstated or canceled and released without any distribution on account of such Claims or Interests.  Holders of Claims and Interests in Classes 9, 10, and 11 are Impaired under the Plan and are conclusively deemed to have rejected the Plan.

iii.    **No Discrimination (11 U.S.C. § 1123(a)(4)).**

25.    The Plan satisfies the requirements of section 1123(a)(4) of the Bankruptcy Code. Article III of the Plan provides the same treatment for each Claim or Interest within a particular

Class unless the Holder of a particular Claim or Interest has agreed to a less favorable treatment with respect to such Claim or Interest.

### iv.     Implementation of the Plan (11 U.S.C. § 1123(a)(5)).

26.     The Plan and the various documents included in the Plan Supplement (collectively, the "Plan Documents") satisfy the requirements of section 1123(a)(5) of the Bankruptcy Code. The Plan and the Plan Documents provide adequate and proper means for the Plan's implementation, including by providing for, among other things, consummation of the Restructuring Transactions and the appointment of a Creditor Trustee and Plan Administrator.

### v.     Non-Voting Equity Securities (11 U.S.C. § 1123(a)(6)).

27.     The Plan does not provide for the issuance of equity or other securities by the Debtors or the Wind-Down Debtor.  Accordingly, the requirements of section 1123(a)(6) are inapplicable in these Chapter 11 Cases.

### vi.     Designation of Directors and Officers (11 U.S.C. § 1123(a)(7)).

28.     The Plan satisfies the requirements of section 1123(a)(7) of the Bankruptcy Code. The Plan discharges all of the Debtors' officers, directors, members, and managers from their duties effective as of the Effective Date without any further action.  The Plan further provides for continuation of the Wind-Down Debtor and the appointment of the Plan Administrator.

### vii.     Discretionary Contents of the Plan (11 U.S.C. § 1123(b)).

29.     The Plan satisfies the requirements of section 1123(b) of the Bankruptcy Code.  The other provisions of the Plan are appropriate and consistent with the applicable provisions of the Bankruptcy Code.

(b)     **Executory Contracts and Unexpired Leases (11 U.S.C. § 1123(b)(2)).**

30.     Pursuant to sections 365 and 1123(b)(2) of the Bankruptcy Code, upon the occurrence of the Effective Date, Article V.A of the Plan provides that, except as otherwise provided in the Plan or in the Sale Orders, each Executory Contract or Unexpired Lease not previously assumed, assumed and assigned, or rejected shall be deemed automatically rejected, pursuant to sections 365 and 1123 of the Bankruptcy Code, unless such Executory Contract or Unexpired Lease (1) is identified on the Assumed Executory Contracts and Unexpired Leases Schedule; (2) is the subject of a motion to assume (or assume and assign) such Executory Contract that is pending on the Confirmation Date; (3) is a contract, instrument, release, indenture, or other agreement or document entered into in connection with the Plan; (4) is a directors and officers insurance policy; (5) is subject to the terms of the Asset Purchase Agreements; or (6) is to be assumed by the Debtors and assigned to the Purchasers in connection with the Sale Transaction and pursuant to the Sale Transaction Documents.  Neither the Plan nor this Confirmation Order is intended to or shall be construed as limiting the Debtors' authority under the Sale Orders to assume and assign Executory Contracts and Unexpired Leases to Purchaser pursuant to the Asset Purchase Agreements.  Notwithstanding anything to the contrary in the Plan, the Debtors, the Wind-Down Debtor, and the Plan Administrator, as applicable, with the consent of the Purchasers, not to be unreasonably withheld, shall have the right to alter, amend, modify, or supplement the Assumed Executory Contracts and Unexpired Leases Schedule and the Rejected Executory Contracts and Unexpired Leases Schedule identified in Article V of the Plan and in the Plan Supplement.

31.     The Debtors' determinations regarding the assumption or rejection of Executory Contracts and Unexpired Leases are based on and within the sound business judgment of the

15

Debtors, are necessary to the implementation of the Plan and are in the best interests of the Debtors, their Estates, Holders of Claims or Interests and other parties in interest in these Chapter 11 Cases.

**(c)   Settlement, Releases, Exculpation, Injunction, and Preservation of Claims and Causes of Action (11 U.S.C. § 1123(b)(3)).**

32.     **Compromise and Settlement.  T**o the extent provided for by the Bankruptcy Code and Bankruptcy Rule 9019 (as applicable), and in consideration for the classification, distributions, releases, and other benefits provided under the Plan, on the Effective Date, the provisions of the Plan shall constitute a good-faith compromise and settlement of all Claims, Interests, Causes of Action, and controversies released, settled, compromised, or otherwise resolved pursuant to the Plan, including the terms of the Global Settlement and incorporating the terms of the Global Settlement Term Sheet.  To the extent provided for by the Bankruptcy Code and Bankruptcy Rule 9019, the Plan shall be deemed a motion to approve the good-faith compromise and settlement of all such Claims, Interests, Causes of Action, and controversies pursuant to Bankruptcy Rule 9019, including the Global Settlement, and the entry of this Confirmation Order shall constitute the Bankruptcy Court's approval of such compromise and settlement under Bankruptcy Rule 9019, as well as a finding by the Bankruptcy Court that such settlement and compromise is fair, equitable, reasonable, and in the best interests of the Debtors and their Estates.  Subject to Article VI of the Plan, all distributions made to Holders of Allowed Claims and Allowed Interests (as applicable) in any Class are intended to be and shall be final.

33.     **Debtor Release.**  Consistent with sections 157 and 1334(a) and (b) of title 28 of the United States Code, and sections 105(a), 1123(b)(3), and 1123(b)(6) of the Bankruptcy Code, the Bankruptcy Court has jurisdiction and constitutional adjudicatory authority to approve the release set forth in Article VIII.B of the Plan (the "Debtor Release").  The Debtor Release is an essential component of the Plan.  The scope of the Debtor Releases is appropriately tailored under

the facts and circumstances of these Chapter 11 Cases. The Debtor Release is given and made after due notice and opportunity for hearing.

34.   The Debtor Release represents a valid exercise of the Debtors' business judgment and is the result of a good-faith and arm's-length negotiation between sophisticated parties that had representation from able counsel and advisors. The Debtor Release appropriately offers protection to parties that participated in the Debtors' chapter 11 process, and such participation in these Chapter 11 Cases is critical to the Debtors' successful emergence from bankruptcy. Each of the Released Parties shares a common goal with the Debtors in seeing the Plan succeed and Implementing the transactions contemplated in the Plan. The record shows that the releases relating to the Debtors' current and former directors, officers, affiliates, and principals have an identity of interest in supporting the release because the Debtors will assume certain indemnification obligations under the Plan and the Wind-Down Debtor will honor such obligations in accordance with the terms of the Plan. The evidence establishes that the Debtors conducted a thorough analysis of the Debtors' claims and causes of action in determining to grant the Debtor Release and that the Debtors have satisfied the business judgment standard in granting the Debtor Release under the Plan.

35.   Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the Debtor Release, which includes by reference each of the related provisions and definitions contained in the Plan, and further, shall constitute the Bankruptcy Court's finding that the Debtor Release is:  (1) in exchange for the good an valuable consideration provided by the Released Parties, including, the Released Parties' contribution to facilitating the Restructuring Transactions and implementing the plan; (2) a good faith settlement and compromise of the Claims released by the Debtor Release; (3) in the best interests of the

Debtors, the Wind-Down Debtor, and all Holders of Claims and Interests; (4) fair, equitable, and reasonable; (5) given and made after due notice and opportunity for a hearing; and (6) a bar to any of the Debtors, the Wind-Down Debtor, or the Debtors' Estates asserting any Claim or Cause of Action released pursuant to the Debtor Release.

36.    **Releases by Holders of Claims and Interests.**  Consistent with sections 157 and 1334(a) and (b) of title 28 of the United States Code, and sections 105(a), 1123(b)(3), and 1123(b)(6) of the Bankruptcy Code, the Bankruptcy Court has jurisdiction and constitutional adjudicatory authority to approve the release set forth in Article VIII.C of the Plan (the "Third-Party Release").  The Third-Party Release is given and made after due notice and opportunity for hearing.

37.    The Third-Party Release is consensual with respect to the Releasing Parties.  The Ballots sent to all Holders of Claims and Interests entitled to vote, the Non-Voting Status Notice sent to Holders of Claims and Interests not entitled to vote, and the notice of the Confirmation Hearing sent to parties in interest unambiguously provided in bold letters that the Third-Party Release was contained in the Plan.  Such parties in interest were provided due and adequate notice of these Chapter 11 Cases, the Plan, the Third-Party Release, the deadline to object to confirmation of the Plan, the opportunity to opt out of (or otherwise object to) the Third-Party Release, and were properly informed that the Holders of Claims against or Interests in the Debtors that did not check the "Opt Out" box on the applicable Ballot or Opt-Out Form, returned in advance of the Voting Deadline would be deemed to have expressly, unconditionally, generally, individually, and collectively consented to the release of all Claims and Causes of Action against the Debtors and the Released Parties.  Additionally, the release provisions of the Plan were conspicuous, emphasized with boldface type in the Plan, the Disclosure Statement, the Ballots, and the Non-

Voting Status Notice. Thus, the Third-Party Release is consensual as to those Releasing Parties that did not specifically and timely object.

38.     Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the Third-Party Release, which includes by reference each of the related provisions and definitions contained in the Plan, and further, shall constitute the Bankruptcy Court's finding that the Third-Party Release is: (1) consensual; (2) essential to the Confirmation of the Plan; (3) given in exchange for the good and valuable consideration provide by the Released Parties; (4) a good faith settlement and compromise of the Claims released by the Third-Party Release; (5) in the best interests of the Debtors, the Wind-Down Debtor, and the Estates; (6) fair, equitable, and reasonable; (7) given and made after due notice and opportunity for a hearing; and (8) a bar to any of the Releasing Parties asserting any Claim or Cause of Action released pursuant to the Third-Party Release.

39.     **Exculpation.** Consistent with sections 157 and 1334(a) and (b) of title 28 of the United States Code, and sections 105(a), 1123(b)(3), and 1123(b)(6) of the Bankruptcy Code, the Bankruptcy Court has jurisdiction and authority to approve the exculpation set forth in Article VIII.D of the Plan (the "Exculpation"). The Exculpation is essential to the Plan. The evidence before the Bankruptcy Court demonstrates that the Plan's Exculpation was critical to the parties' willingness to support the Debtors' chapter 11 efforts and that these parties would not have been so inclined to participate in the Plan process without the promise of exculpation, and such parties did so in reliance upon the protections afforded in the Exculpation. The Exculpation appropriately affords protection to those parties who constructively participated in and contributed to the Debtors' chapter 11 process consistent with their duties under the Bankruptcy Code, and it is appropriately tailored to protect the Exculpated Parties from inappropriate litigation.

40.     **Injunction.**  Section 105(a) and section 1123(b)(3) and (b)(6) of the Bankruptcy Code permit issuance of the injunction provisions set forth in Article VIII.E of the Plan (the "Injunction") and are within the jurisdiction of this Bankruptcy Court under sections 1334(a), 1334(b), and 1334(d) of the Judicial Code.  The Injunction is essential to the Plan and is necessary to implement the Plan and to preserve and enforce the Debtor Release, the Third-Party Release, and the Exculpation provisions in Article VIII of the Plan.  Such Injunction is appropriately tailored to achieve those purposes.

**viii.     Cure of Defaults (11 U.S.C. § 1123(d)).**

41.     Article V.D of the Plan provides for the satisfaction of cure Claims associated with each Executory Contract and Unexpired Lease to be assumed in accordance with section 365(b)(1) of the Bankruptcy Code.  Any monetary defaults under each Assumed Executory Contract or Unexpired Lease pursuant to the Plan (it being understood that the assumption and assignment of the Executory Contracts or Unexpired Leases pursuant to the Asset Purchase Agreements shall be authorized and governed by the Bidding Procedures Order and applicable Sale Order, and, in the event of any inconsistency between the Plan, Bidding Procedures Order, and Sale Orders concerning the assumption and assignment of such Executory Contracts or Unexpired Leases, the terms of the applicable Sale Order shall govern and control) shall be satisfied, pursuant to section 365(b)(1) of the Bankruptcy Code, by payment of the cure amount in Cash on the Effective Date, or as soon as reasonably practicable thereafter, subject to the limitation described below, or on such other terms as the parties to such Executory Contracts or Unexpired Leases may otherwise agree.  Any disputed cure amounts will be determined in accordance with the procedures set forth in Article V.D of the Plan, and applicable bankruptcy and non-bankruptcy law.  As such, the Plan provides that the Debtors, the Wind-Down Debtor, or the Purchaser, as applicable, will cure defaults with respect to assumed Executory Contracts and Unexpired Leases in accordance with

section 365(b)(1) of the Bankruptcy Code.  Thus, the Plan complies with section 1123(d) of the Bankruptcy Code.

**b) The Debtors' Compliance with the Bankruptcy Code (11 U.S.C. § 1129(a)(2)).**

42.     The Debtors, as Plan proponents, have complied with all applicable provisions of the Bankruptcy Code as required by section 1129(a)(2) of the Bankruptcy Code, including sections 1122, 1123, 1124, 1125, 1126, and 1128, and Bankruptcy Rules 3017, 3018, and 3019.

43.     The Debtors and their agents solicited votes to accept or reject the Plan after the Bankruptcy Court entered the Disclosure Statement Order approving the Solicitation Packages and Solicitation and Voting Procedures.

44.     The Debtors and their agents have solicited and tabulated votes on the Plan and have participated in the activities described in section 1125 of the Bankruptcy Code fairly and in good faith within the meaning of section 1125(e) of the Bankruptcy Code, and in a manner consistent with the applicable provisions of the Disclosure Statement Order, the Disclosure Statement, the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and all other applicable rules, laws, and regulations, and are entitled to the protections afforded by section 1125(e) of the Bankruptcy Code and the Exculpation provisions set forth in Article X.E of the Plan.

**c) Plan Proposed in Good Faith (11 U.S.C. § 1129(a)(3)).**

45.     The Plan satisfies the requirements of section 1129(a)(3) of the Bankruptcy Code. The Debtors have proposed the Plan and Plan Documents in good faith and not by any means forbidden by law.  In determining that the Plan has been proposed in good faith, the Bankruptcy Court has examined the totality of the circumstances surrounding the filing of these Chapter 11 Cases, the Plan itself, the process leading to its formulation, and the transactions to be implemented pursuant thereto.  Consistent with the overriding purpose of chapter 11, these Chapter 11 Cases were filed, and the Plan was proposed, with the legitimate purpose of allowing the Debtors to

maximize the value of the Debtors' Estates.  The Debtors' good faith is evident from the facts and record of these Chapter 11 Cases, the Disclosure Statement, the Disclosure Statement Hearing, the record of the Confirmation Hearing, and all the other proceedings held in these Chapter 11 Cases and before the Bankruptcy Court.

46.     The Plan was proposed with the legitimate and honest purpose of maximizing the value of the Debtors' Estates and to effectuate a successful chapter 11 proceeding for the Debtors. The Plan was the product of extensive negotiations conducted at arm's length among the Debtors and certain of their key stakeholders including, but not limited to, the Committee.  Further, the Plan's classification, settlement, exculpation, release, and injunction provisions have been negotiated in good faith and at arm's length, are consistent with sections 105, 1122, 1123(b)(3)(A), 1123(b)(6), 1125(e), 1129, and 1142 of the Bankruptcy Code, and are each necessary for the Debtors to consummate a value-maximizing conclusion to these Chapter 11 Cases.  Accordingly, the requirements of section 1129(a)(3) of the Bankruptcy Code are satisfied.

**d)  Payment for Services or Costs and Expenses (11 U.S.C. § 1129(a)(4)).**

47.     Payments made or to be made by the Debtors for services or for costs and expenses incurred in or in connection with these Chapter 11 Cases, or in connection with the Plan and incident to these Chapter 11 Cases, have been approved by, or are subject to the approval of, the Bankruptcy Court as reasonable.   The Plan, therefore, satisfies the requirements of section 1129(a)(4) of the Bankruptcy Code.

**e)  Directors, Officers, and Insiders (11. U.S.C. § 1129(a)(5)).**

48.     Because the Plan provides for the orderly wind-down of the Debtors and resignation of the Debtors' officers, directors, and managers, section 1129(a)(5) of the Bankruptcy Code does not apply.  To the extent section 1129(a)(5) of the Bankruptcy Code applies to the Wind-Down

Debtor, the Debtors have satisfied the requirements of this provision by, among other things, disclosing the identity of the Creditor Trustee and Plan Administrator.

**f) No Rate Changes (11 U.S.C. § 1129(a)(6)).**

49.     The Plan does not contain any rate changes subject to the jurisdiction of any governmental regulatory commission and will not require governmental regulatory approval. Therefore, section 1129(a)(6) of the Bankruptcy Code does not apply to the Plan.

**g) Best Interests of Creditors (11 U.S.C. § 1129(a)(7)).**

50.     The Plan satisfies the requirements of section 1129(a)(7) of the Bankruptcy Code. The evidence in support of the Plan that was proffered or adduced at the Confirmation Hearing and the facts and circumstances of these Chapter 11 Cases establish that each Holder of Allowed Claims or Interests in each Class will recover as much or more value under the Plan on account of such Claim or Interest, as of the Effective Date, than the amount such Holder would receive if the Debtors were liquidated on the Effective Date under chapter 7 of the Bankruptcy Code.  The Liquidation Analysis (as defined in the Disclosure Statement and attached as <u>Exhibit B</u> thereto), and the other evidence related thereto, as supplemented by any evidence proffered or adduced at or prior to the Confirmation Hearing, are persuasive and credible.  The Liquidation Analysis demonstrates that recoveries under the Plan are at least as high as they would be in a hypothetical liquidation.  The methodology used and assumptions made in the Liquidation Analysis as supplemented by any evidence proffered or adduced at or prior to the Confirmation Hearing, are reasonable.

**h) Acceptance by Certain Classes (11 U.S.C. § 1129(a)(8)).**

51.     The Plan satisfies section 1129(a)(8) of the Bankruptcy Code.  Classes 1, 2, and 3 are Unimpaired Classes of Claims, each of which is conclusively presumed to have accepted the Plan in accordance with section 1126(f) of the Bankruptcy Code.  [Class 4 (Prepetition First Lien

Claims), Class 5 (Prepetition Second Lien Claims), Class 6A (Continuing Trade Claims), Class 6B (Other General Unsecured Claims), Class 6C (Litigation Claims), and Class 6D (CFPB Claims)] voted to accept the Plan]. Class 7 and Class 8 are either Unimpaired by the Plan and conclusively presumed to have accepted the Plan or Impaired and deemed to have rejected the Plan. Class 9, Class 10, and Class 11 are Impaired Classes that will not receive or retain any property under the Plan on account of the Claim in each such Class, are not entitled to vote on the Plan, and are deemed to reject the Plan. [To the extent a Class contains Claims or Interests eligible to vote and no Holders of Claims or Interests eligible to vote in such Class vote to accept or reject the Plan, such Class shall be deemed to have accepted the Plan.] Nevertheless, as set forth below, the Debtors satisfy the requirements under section 1129(b) of the Bankruptcy Code with respect to the Claims that have rejected or are deemed to reject the Plan.

i) **Deemed Rejecting Classes (11 U.S.C. § 1129(b)).**

52.     Because the Plan has not been accepted by the Deemed Rejecting Classes, the Debtors seek Confirmation under section 1129(b), rather than section 1129(a)(8), of the Bankruptcy Code. Thus, although section 1129(a)(8) has not been satisfied with respect to the Deemed Rejecting Classes, the Plan is confirmable because the Plan does not discriminate unfairly and s fair and equitable with respect to the Deemed Rejecting Classes and thus satisfies section 1129(b) of the Bankruptcy Code with respect to such Classes, as described further below.

j) **Treatment of Claims Entitled to Priority Pursuant to Section 507(a) of the Bankruptcy Code (11 U.S.C. § 1129(a)(9)).**

53.     The treatment of Administrative Claims, Priority Tax Claims, Other Priority Claims, Professional Fee Claims, and payment of U.S. Trustee statutory fees under Article XII of the Plan satisfies the requirements of, and complies in all respects with, section 1129(a)(9) of the Bankruptcy Code.

**k) Acceptance by at Least One Impaired Class of Claims (11 U.S.C. § 1129(a)(10)).**

54.     The Plan satisfies the requirements of section 1129(a)(10) of the Bankruptcy Code. As set forth in the Voting Report, all Voting Classes are Impaired, and the requisite number and amount of Claims specified under the Bankruptcy Code voted to accept the Plan, determined without including any acceptance of the Plan by any insider (as that term is defined in section 101(31) of the Bankruptcy Code).  Further, as set forth in the Voting Report, the Classes that are not entitled to receive or retain any property under the Plan are, therefore, deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code.

**l)   Feasibility of the Plan (11 U.S.C. § 1129(a)(11)).**

55.     The evidence proffered or adduced at or prior to the Confirmation Hearing and in the Wallace Declaration and the Confirmation Brief:  (a) is reasonable, persuasive, and credible as of the dates such evidence was prepared, presented, and/or proffered; (b) has not been controverted by other evidence; (c) establishes that the Plan is feasible; and (d) establishes that the Debtors or the Wind-Down Debtor will have sufficient funds available to meet their obligations under the Plan.  The Plan, therefore, satisfies the requirements of section 1129(a)(11) of the Bankruptcy Code.

**m) Payment of Bankruptcy Fees (11 U.S.C. § 1129(a)(12)).**

56.     Article XIII.C of the Plan provides for the payment of all fees payable by the Debtors under section 1930(a) of the Judicial Code.  The Plan, therefore, satisfies the requirements of section 1129(a)(12) of the Bankruptcy Code.

**n)  Non-Applicability of Certain Sections (11 U.S.C. §§ 1129(a)(13), 1129(a)(14), (15), and (16)).**

57.     The Debtors do not owe retiree benefit obligations, any domestic support obligations, are not individuals, and are not nonprofit corporations.   Therefore, sections

1129(a)(13), 1129(a)(14), 1129(a)(15), and 1129(a)(16) of the Bankruptcy Code do not apply to these Chapter 11 Cases.

**o)  Only One Plan (11 U.S.C. § 1129(c)).**

58.    Other than the Plan (including previous versions thereof), no other plan has been filed for the Debtors in these Chapter 11 Cases.  The Plan, therefore, satisfies the requirements of section 1129(c) of the Bankruptcy Code.

**p)  Principal Purpose of the Plan (11 U.S.C. § 1129(d)).**

59.    The principal purpose of the Plan is not the avoidance of taxes or the avoidance of the application of Section 5 of the Securities Act, 15 U.S.C. § 77e.  The Plan, therefore, satisfies the requirements of section 1129(d) of the Bankruptcy Code.

**q)  Not a Small Business Case (11 U.S.C. § 1129(e)).**

60.    These Chapter 11 Cases are not small business cases, and accordingly section 1129(e) of the Bankruptcy Code is inapplicable in these Chapter 11 Cases.

**r)  Satisfaction of Confirmation Requirements.**

61.    Based upon the foregoing, the Plan satisfies the requirements for plan confirmation set forth in section 1129 of the Bankruptcy Code.

**R.     Likelihood of Satisfaction of Conditions Precedent to the Effective Date**

62.    Each of the conditions precedent to the Effective Date, as set forth in Article IX.B of the Plan, has been or is reasonably likely to be satisfied or waived in accordance with Article IX.C of the Plan.

**S.     Implementation**

63.    The Plan, all documents contained in the Plan Supplement, and all other relevant and necessary documents have been negotiated in good faith and at arm's length, are fair and reasonable, are supported by reasonably equivalent value and fair consideration, are in the best

interests of the Debtors, their Estates, and the Wind-Down Debtor, and shall, upon completion of documentation and execution in accordance with the terms and conditions of the Plan, be valid, binding, and enforceable documents and agreements not in conflict with any federal, state, or local law.  The documents and agreements are essential elements of the Plan and the Debtors have exercised reasonable business judgment in determining which documents and agreements to enter into and have provided sufficient and adequate notice of such documents and agreements.

**T.    Good Faith Solicitation (11 U.S.C. § 1125(e))**

64.    The Debtors have proposed the Plan in good faith, with the legitimate and honest purpose of maximizing the value of the Debtors' Estates for the benefit of their stakeholders.  The Plan accomplishes this goal.  Accordingly, the Debtors, the Released Parties, and the Exculpated Parties have been, are, and will continue to be acting in good faith if they proceed to: (a) consummate the Plan and the agreements, transactions, transfers, and other actions contemplated thereby, regardless of whether such agreements, transactions, transfers, and other actions are expressly authorized by this Confirmation Order; and (b) take any actions authorized and directed or contemplated by this Confirmation Order.  Therefore, the Plan has been proposed in good faith to achieve a result consistent with the objectives and purposes of the Bankruptcy Code and the aforementioned parties have also acted in good faith within the meaning of section 1125(e) of the Bankruptcy Code and are entitled to the protections afforded by section 1125(e) of the Bankruptcy Code and the Exculpation provision set forth in Article VIII.D of the Plan.  The Exculpated Parties have, and upon completion o the Plan shall be deemed to have, participated in good faith and in compliance with the applicable laws with regard to the solicitation of votes and distributions pursuant to the Plan and, therefore, are not, and on account of such distributions shall not be, liability at any time for the violation of any applicable law, rule, or

regulation governing the solicitation of acceptance of rejections of the Plan or such distributions made pursuant to the Plan.

**U.     Executory Contracts and Unexpired Leases**

65.     Pursuant to sections 365 and 1123(b)(2) of the Bankruptcy Code, the Plan provides for the assumption or rejection of certain Executory Contracts and Unexpired Leases, effective as of the Effective Date except as otherwise provided in the Plan or the Asset Purchase Agreements. The Debtors' determinations regarding the assumption or rejection of Executory Contracts and Unexpired Leases are based on and within the sound business judgment of the Debtors, are necessary to the implementation of the Plan, and are in the best interests of the Debtors, their Estates, Holders of Claims and Interests and other parties in interest in these Chapter 11 Cases.

**V.     Disclosure:  Agreements and Other Documents**

66.     The Debtors have disclosed all material facts regarding:  (a) the Plan; (b) the sources and distribution of Cash under the Plan; (c) the adoption, execution, and delivery of all contracts, leases, instruments, releases, indentures, and other agreements related to any of the foregoing; (d) the various releases set forth in Article VIII of the Plan; and (e) the adoption, execution, and implementation of the other matters provided for under the Plan involving corporate action to be taken by or required of the Wind-Down Debtor.

**ORDER**

BASED ON THE FOREGOING FINDINGS OF FACT AND CONCLUSIONS OF LAW, IT IS THEREFORE ORDERED, JUDGED, AND DECREED THAT:

**W.     Findings of Fact and Conclusions of Law**

67.     The above-referenced findings of fact and conclusions of law are hereby incorporated by reference as though fully set forth in this Confirmation Order and constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable by

Bankruptcy Rule 9014.  To the extent that any finding of fact is determined to be a conclusion of law, it is deemed so, and vice versa.

## X.  Final Approval of Disclosure Statement

68.    The Disclosure Statement shall be, and hereby is, approved on a final basis as containing adequate information within the meaning of section 1125 of the Bankruptcy Code and sufficient information of a kind necessary to satisfy the disclosure requirements of any applicable non-bankruptcy laws, rules, and regulations.

## Y.  Confirmation of the Plan

69.    The Plan, attached hereto as **Exhibit A**, including all exhibits thereto, shall be, and hereby is, confirmed under section 1129 of the Bankruptcy Code.  The Debtors are authorized to enter into and execute the all documents and agreements related to the Plan (including all exhibits and attachments thereto and documents referred to therein, including the Plan Supplement), and the execution, delivery, and performance thereafter by the Wind-Down Debtor and the Creditor Trust, are hereby approved and authorized.  The Debtors, the Wind-Down Debtor and the Creditor Trust, as applicable, are authorized to take all actions necessary or appropriate to enter into, implement, and consummate the contracts, instruments, releases, leases, indentures, and other agreements or documents created in connection with the Plan, including without limitation entry into any agreements contained in the Plan Supplement, as applicable, as may be modified by the Debtors in their business judgment subject to the terms and conditions of the Plan.  The terms of the Plan (including the Plan Supplement) shall be effective and binding as of the Effective Date.

70.    The failure to include or refer to any particular article, section, or provision of the Plan, the Plan Supplement or any related document, agreement, or exhibit does not impair the effectiveness of that article, section, or provision; it being the intent of the Court that the Plan, the Plan Supplement, and any related document, agreement, or exhibit are approved in their entirety.

**Z.      Objections**

71.     To the extent that any objections (including any reservations of rights contained therein) to Confirmation of the Plan or approval of the Disclosure Statement have not been withdrawn, waived, or settled before entry of this Confirmation Order, are not cured by the relief granted in this Confirmation Order, or have not been otherwise resolved as stated on the record of the Confirmation Hearing, all such objections (including any reservation of rights contained therein) are hereby overruled in their entirety and on the merits in all respects.

**AA.     The Releases, Injunction, Exculpation, and Related Provisions Under the Plan**

72.     The release, exculpation, injunction, and related provisions set forth in Article VIII of the Plan are incorporated herein in their entirety, are hereby approved and authorized in their entirety, are so ordered, and shall be immediately effective and binding upon the Effective Date without further action or notice by this Bankruptcy Court, any of the Parties subject to such provisions, or any other party, including, but not limited to:

    a.  **Liens**.  The release of liens provisions set forth in Article VIII.A of the Plan are hereby approved.

    b.  **Releases by the Debtors**.  The Debtor Release provisions set forth in Article VIII.B of the Plan are hereby approved.

    c.  **Third-Party Releases**.  The Third-Party Release provisions set forth in Article VIII.C of the Plan are hereby approved.

    d.  **Exculpation**.  The Exculpation provisions set forth in Article VIII.D of the Plan are hereby approved.

    e.  **Injunction**.  The Injunction provisions set forth in Article VIII.E of the Plan are hereby approved.

**BB.     Classifications of Claims and Interests**

73.     The terms of the Plan shall govern the classification of Claims and Interests for purposes of the distributions to be made thereunder.  The classifications set forth on the Ballots

tendered to or returned by the Holders of Claims or Interests in connection with voting on the Plan: (a) were set forth thereon solely for purposes of voting to accept or reject the Plan; (b) do not necessarily represent, and in no event shall be deemed to modify or otherwise affect, the actual classification of Claims and Interests under the Plan for distribution purposes; (c) may not be relied upon by any Holder of a Claim or Interest as representing the actual classification of such Claim or Interest under the Plan for distribution purposes; and (d) shall not be binding on the Debtors except for voting purposes.

## CC.   Provisions Regarding the United States

74.     As to the United States, nothing in the Plan, this Confirmation Order, any Plan Supplement, or any implementing Plan documents, notwithstanding any provision to the contrary contained therein, shall: (a) enjoin or affect any Governmental Unit's setoff rights under federal law, as recognized in section 553 of the Bankruptcy Code, and/or recoupment rights, and such rights shall be preserved and are unaffected (provided that the Debtors expressly reserve all defenses to any such rights of setoff or recoupment); (b) be construed as a compromise or settlement of any liability, claim, cause of action, or interest of the United States, except as explicitly provided for in respect of the CFPB Claim and in accordance with the Stipulated Final Judgment and Order; or (c) be deemed a waiver or release of any liability, claim, cause of action, or interest of the United States, except as otherwise provided in respect of the CFPB Claim and in accordance with the Stipulated Final Judgment and Order.

## DD.   Plan Supplement

75.     The documents contained in the Plan Supplement, and any amendments, modifications, and supplements thereto, and all documents and agreements introduced into evidence by the Debtors at the Confirmation Hearing (including all exhibits and attachments thereto and documents referred to in the Plan Supplement), and the execution, delivery, and

performance thereof by the Debtors, the Wind-Down Debtor, the Creditor Trust and their successors are authorized when they are finalized, executed, and delivered. Without further order or authorization of this Bankruptcy Court, the Debtors, the Wind-Down Debtor, the Creditor Trust and their successors are authorized and empowered to make all modifications to all documents included as part of the Plan Supplement that are consistent with the Plan. Execution versions of the documents comprising or contemplated by the Plan Supplement shall constitute legal, valid, binding, and authorized obligations of the respective parties thereto, enforceable in accordance with their terms and, to the extent applicable, shall create all mortgages, Liens, deeds of trust, pledges, and security interests purported to be created thereby to the extent set forth in this Confirmation Order.

## EE.    Restructuring Transactions

76.      On or before the Effective Date, the applicable Debtors or the Wind-Down Debtor shall enter into any transaction and shall take any actions as may be necessary or appropriate to effect the transactions described herein, including, as applicable, consummation of the Sale Transaction pursuant to the Asset Purchase Agreements, the issuance of all certificates and other documents required to be issued pursuant to the Plan, one or more intercompany mergers, consolidations, amalgamations, arrangements, continuances, restructurings, conversions, dispositions, dissolutions, transfers, liquidations, spinoffs, intercompany sales, purchases, or other corporate transactions (collectively, the "Restructuring Transactions"). The actions to implement the Restructuring Transactions may include:  (1) the execution and delivery of appropriate agreements or other documents of merger, consolidation, amalgamation, arrangement, continuance, restructuring, conversion, disposition, dissolution, transfer, liquidation, spinoff, sale, or purchase containing terms that are consistent with the terms of the Plan and Asset Purchase Agreements and that satisfy the applicable requirements of applicable law and any other terms to

which the applicable Entities may agree; (2) the execution and delivery of appropriate instruments of transfer, assignment, assumption, or delegation of any asset, property, right, liability, debt, or obligation on terms consistent with the terms of the Plan and having other terms for which the applicable Entities agree; (3) the Filing of appropriate certificates or articles of incorporation, reincorporation, formation, merger, consolidation, conversion, amalgamation, arrangement, continuance, or dissolution pursuant to applicable state or provincial law; and (4) all other actions that the applicable Entities determine to be necessary or appropriate, including making Filings or recordings that may be required by applicable law in connection with the Plan.  This Confirmation Order shall, and shall be deemed to, pursuant to sections 363 and 1123 of the Bankruptcy Code, authorize, among other things, all actions as may be necessary or appropriate to effect any transaction described in, contemplated by, or necessary to effectuate the Plan.

**FF.    Sources of Consideration for Plan Distribution**

77.    The Debtors and Wind-Down Debtor, as applicable, shall fund the distributions and obligations under the Plan with Available Cash from the Wind-Down Budget held in the Wind-Down Debtor Account, as applicable, on the Effective Date.  Sources to fund the distributions and obligations under the Plan include cash from the Creditor Trust in the amount of $100,000, from the GUC Trade Settlement Cash in the amount of $3.25 million, from the GUC Litigation Claims Settlement Cash in the amount of $750,000 (of which $50,000 will be paid to the Holder of the Allowed CFPB Claim on account of the CFPB Claim as set forth in Article III of the Plan), and from the PIK Notes to be issued by the Progrexion Purchaser.  As indicated in Article II of the Plan, pursuant to the Sale Orders, the DIP Claims have been satisfied in full in connection with the Sale Transaction.

## GG.    Wind-Down Debtor

78.     The Debtors shall continue in existence after the Effective Date as the Wind-Down Debtor solely for the purposes of (l) winding down the Debtors' businesses and affairs as expeditiously as reasonably possible and liquidating any assets held by the Wind-Down Debtor, if any, (2) resolving any Disputed Claims, (3) paying or otherwise satisfying Allowed Claims, (4) filing appropriate tax returns, and (5) administering the Plan in an efficacious manner.  The Wind-Down Debtor shall be deemed to be substituted as the party-in-lieu of the Debtors in all matters, including (x) motions, contested matters, and adversary proceedings pending in the Bankruptcy Court and (y) all matters pending in any courts, tribunals, forums, or administrative proceedings outside of the Bankruptcy Court, in each case without the need or requirement for the Plan Administrator to File motions or substitutions of parties or counsel in each such matter; *provided, however*, that the Creditor Trustee shall have the rights, powers and authority as provided in Article IV.G of the Plan and in the Creditor Trust Agreement, and shall be substituted as the party-in-lieu of the Debtors to the extent provided therein.

79.     On the Effective Date, the Wind-Down Debtor Assets shall vest in the Wind-Down Debtor for the primary purpose of liquidating the Wind-Down Debtor Assets and winding down the Debtors' Estates, with no objective to continue or engage in the conduct of a trade or business. The Wind-Down Debtor will, in an expeditious but orderly manner, liquidate and convert to Cash the Wind-Down Debtor Assets, make timely distributions pursuant to the Plan and Confirmation Order, and not unduly prolong its duration.  Such assets shall be held free and clear of all Liens, Claims, and interests of Holders of Claims and Interests, except as otherwise provided in the Plan. The Wind-Down Debtor shall be deemed to be fully bound by the terms of the Plan and the Confirmation Order.

## HH.   Plan Administrator

80.     Upon entry of the Confirmation Order, the authority, power, and incumbency of the persons acting as directors and officers of each of the Debtors shall be deemed to have been terminated and such persons shall be deemed to have resigned, solely in their capacities as such, and the Plan Administrator shall be appointed by each Debtor as the sole director and the sole officer of such Wind-Down Debtor and shall succeed to the powers of such Debtor's directors and officers.  The Plan Administrator shall be the sole representative of, and shall act for each Wind-Down Debtor in the same fiduciary capacity as applicable to a board of managers and officers, subject to the provisions hereof (and all certificates of formation, membership agreements, and related documents are deemed amended by the Plan to permit and authorize the same), except as applicable to the Creditor Trustee to the extent provided in Article IV.G of the Plan and in the Creditor Trust Agreement.  For the avoidance of doubt, the foregoing shall not limit the authority of each Wind-Down Debtor or the Plan Administrator, as applicable, to continue the employment of any former director or officer.

81.     The Plan Administrator shall have the right to retain the services of attorneys, accountants, and other professionals that, in the discretion of the Plan Administrator, are necessary to assist the Plan Administrator in the performance of his or her duties.  The reasonable fees and expenses of such professionals shall be paid by the Wind-Down Debtor, upon the monthly submission of statements to the Plan Administrator and in accordance with the Wind-Down Budget.  The payment of the reasonable fees and expenses of the Plan Administrator's retained professionals shall be made in the ordinary course of business and shall not be subject to the approval of the Bankruptcy Court.

II.     **The Creditor Trust**

82.     The Committee shall have the right in its sole discretion, but not the obligation, to appoint the Creditor Trustee at any time prior to the Plan Supplement Filing Date.  If so appointed, the Creditor Trust will be established on the Effective Date and governed by the terms of the Creditor Trust Agreement, and the cash from the Debtors' cash on hand in the amount of $100,000, Excess Distributable Cash, and the PIK Notes shall be transferred, and the Other Assets and all rights to pursue the liquidation and/or monetization of the Other Assets (including collecting amounts due under or realizing upon the PIK Notes), shall be deemed transferred, to the Creditor Trust free and clear of all Claims, Liens, encumbrances, charges, and other interests without any further action of any of the Debtors, the Plan Administrator on behalf of the Wind-Down Debtor, the Committee, the Creditor Trustee, or any employees, officers, directors, members, partners, shareholders, agents, advisors, or representatives of the Debtors or the Wind-Down Debtor.  The Creditor Trustee's duties, powers, responsibilities, and compensation will be established by the Creditor Trust Agreement.  Pursuant to Bankruptcy Code section 1123(b)(3), the Creditor Trustee shall be deemed the appointed representative to liquidate and/or monetize the Other Assets, collect amounts due under or realize upon the PIK Notes, and effectuate all distributions as detailed in the Creditor Trust Agreement, and the Creditor Trustee shall be granted standing, authority, power and right to assert, prosecute and/or settle or take any other actions necessary to effectuate those duties and all other duties as detailed in the Creditor Trust Agreement based upon its powers as a bankruptcy appointed representative of the Debtors' Estates with the same or similar abilities possessed by bankruptcy or insolvency trustees, receivers, examiners, conservators, liquidators, rehabilitators, creditors' committees, or similar officials or entities.

83.     Distributions made with respect to Holders of Allowed Other General Unsecured Claims in Class 6B shall be made by the Creditor Trustee.  Ryniker Consultants, LLC is recognized

36

and approved as the initial Creditor Trustee, and the Creditor Trustee is (a) authorized to execute and perform under the Creditor Trust Agreement, to appear and be heard before this Bankruptcy Court on all matters relating to these Chapter 11 Cases and to present to creditors, other courts of competent jurisdiction, and any other party the Creditor Trust Agreement, the Plan, and this Confirmation Order as evidence of its authority and (b) vested with all of the power and authority set forth in the Plan and the Creditor Trust Agreement and otherwise as is necessary or proper to carry out the provisions of the Plan or the Creditor Trust Agreement, as applicable.

**JJ.   Plan Administrator and Creditor Trustee Exculpation, Indemnification, Insurance, and Liability Limitation**

84.   The Plan Administrator, the Creditor Trustee, and all professionals retained by the Plan Administrator and the Creditor Trustee, each in their capacities as such, shall be deemed exculpated and indemnified, except for fraud, willful misconduct, or gross negligence, in all respects by each Wind-Down Debtor.  The Plan Administrator and the Creditor Trustee may each obtain, at the expense of the Wind-Down Debtor, commercially reasonable liability or other appropriate insurance with respect to the indemnification obligations of the Wind-Down Debtor. The Plan Administrator and the Creditor Trustee may rely upon written information previously generated by the Debtors.

**KK.   Tax Returns**

85.   After the Effective Date, the Plan Administrator shall complete and file all final or otherwise required federal, state, and local tax returns for each of the Debtors and the Wind-Down Debtor, and, pursuant to section 505(b) of the Bankruptcy Code, may request an expedited determination of any unpaid tax liability of such Debtor or its Estate for any tax incurred during the administration of such Debtor's Chapter 11 Case, as determined under applicable tax laws.

**LL.    Dissolution of the Wind-Down Debtor**

86.     Upon a certification to be Filed with this Bankruptcy Court by the Plan Administrator of all distributions having been made and completion of all its duties under the Plan and entry of a final decree closing the last of these Chapter 11 Cases, the Wind-Down Debtor shall be deemed to be dissolved without any further action by the Wind-Down Debtor, including the Filing of any documents with the secretary of state for the state in which the Wind-Down Debtor is formed or any other jurisdiction.  The Plan Administrator, however, shall have authority to take all necessary actions to dissolve the Wind-Down Debtor in and withdraw the Wind-Down Debtor from applicable states.

**MM.    Statutory Committee and Cessation of Fee and Expense Payment**

87.     On the Effective Date, any statutory committee appointed in these Chapter 11 Cases, including the Committee, shall dissolve, and any such committee, and members and professionals thereof, shall be released and discharged from all rights and duties from or related to these Chapter 11 Cases, except for the Filing of applications for compensation.  The Wind-Down Debtor shall no longer be responsible for paying any fees or expenses incurred by any statutory committee, including the Committee, after the Effective Date, except in connection with applications for payment of any fees or expenses for services rendered prior to the Effective Date that are Allowed by this Bankruptcy Court.

**NN.    Cancellation of Securities and Agreements**

88.     On the Effective Date, except as otherwise specifically provided for in the Plan: (1) the obligations of the Debtors under the Prepetition Loan Documents and any other certificate, Security, share, note, bond, indenture, purchase right, option, warrant, or other instrument or document directly or indirectly evidencing or creating any indebtedness or obligation of or ownership interest in the Debtors giving rise to any Claim or Interest (except such certificates,

notes, or other instruments or documents evidencing indebtedness or obligation of or ownership interest in the Debtors that are Reinstated pursuant to the Plan) shall be cancelled solely as to the Debtors and their affiliates, and the Wind-Down Debtor shall not have any continuing obligations thereunder; and (2) the obligations of the Debtors and their affiliates pursuant, relating, or pertaining to any agreements, indentures, certificates of designation, bylaws, or certificate or articles of incorporation or similar documents governing the shares, certificates, notes, bonds (but not including any surety bonds issued on behalf of any of the Debtors), indentures, purchase rights, options, warrants, or other instruments or documents evidencing or creating any indebtedness or obligation of or ownership interest in the Debtors (except such agreements, certificates, notes, or other instruments evidencing indebtedness or obligation of or ownership interest in the Debtors that are specifically Reinstated pursuant to the Plan) shall be released.  Notwithstanding the foregoing, no executory contract or unexpired lease that (i) has been, or will be, assumed pursuant to Section 365 of the Bankruptcy Code or (ii) relating to a Claim that was paid in full prior to the Effective Date, shall be terminated or cancelled on the Effective Date.

**OO.   Corporate Action**

89.     Upon the Effective Date, all actions contemplated under the Plan, regardless of whether taken before, on or after the Effective Date, shall be deemed authorized and approved in all respects, including:  (1) selection of the Plan Administrator; (2) selection of the Creditor Trustee; (3) implementation of the Restructuring Transactions; (4) consummation of the Sale Transaction under the Asset Purchase Agreements; (5) funding of all applicable escrows and accounts; (6) entry into and consummation of the Creditor Trust Agreement; and (6) all other actions contemplated under the Plan (whether to occur before, on, or after the Effective Date).  All matters provided for in the Plan or deemed necessary or desirable by the Debtors before, on, or after the Effective Date involving the corporate structure of the Debtors or the Wind-Down Debtor,

and any corporate action required by the Debtors or the Wind-Down Debtor in connection with the Plan or corporate structure of the Debtors or Wind-Down Debtor shall be deemed to have occurred and shall be in effect on the Effective Date, without any requirement of further action by the security holders, directors, managers, or officers of the Debtors or the Wind-Down Debtor. Before, on, or after the Effective Date, the appropriate officers of the Debtors or the Wind-Down Debtor, as applicable, shall be authorized to issue, execute, and deliver the agreements and documents, securities, and instruments contemplated under the Plan (or necessary or desirable to effect the transactions contemplated under the Plan) in the name of and on behalf of the Wind-Down Debtor. The authorizations and approvals contemplated by Article IV.M of the Plan shall be effective notwithstanding any requirements under non-bankruptcy law.

**PP.   Effectuating Documents; Further Transactions**

90.    On and after the Effective Date, the Plan Administrator may issue, execute, deliver, file, or record such contracts, Securities, instruments, releases, and other agreements or documents and take such actions as may be necessary or appropriate to effectuate, implement, and further evidence the terms and conditions of the Plan, the Restructuring Transactions, without the need for any approvals, authorization, or consents except for those expressly required pursuant to the Plan.

**QQ.   Section 1146 Exemption**

91.    To the fullest extent permitted by section 1146(a) of the Bankruptcy Code, any transfers (whether from a Debtor to the Wind-Down Debtor, Creditor Trust, or to any other Person) of property under the Plan or pursuant to:  (1) the issuance, distribution, transfer, or exchange of any debt, equity security, property, or other interest in the Debtors or the Wind-Down Debtor; (2) the Restructuring Transactions; (3) any Sale Transactions; (4) the transfer of the Creditor Trust Assets to the Creditor Trust; (5) the creation, modification, consolidation, termination, refinancing,

and/or recording of any mortgage, deed of trust, or other security interest, or the securing of additional indebtedness by such or other means; (6) the making, assignment, or recording of any lease or sublease; or (7) the making, delivery, or recording of any deed or other instrument of transfer under, in furtherance of, or in connection with, the Plan, including any deeds, bills of sale, assignments, or other instrument of transfer executed in connection with any transaction arising out of, contemplated by, or in any way related to the Plan, shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, real estate or bulk transfer tax, mortgage recording tax, Uniform Commercial Code Filing or recording fee, regulatory Filing or recording fee, or other similar tax or governmental assessment, and upon entry of this Confirmation Order, the appropriate state or local governmental officials or agents shall forgo the collection of any such tax or governmental assessment and accept for Filing and recordation any of the foregoing instruments or other documents without the payment of any such tax, recordation fee, or governmental assessment.  All Filing or recording officers (or any other Person with authority over any of the foregoing), wherever located and by whomever appointed, shall comply with the requirements of section 1146(a) of the Bankruptcy Code, shall forgo the collection of any such tax or governmental assessment, and shall accept for Filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

**RR.    Director and Officer Liability Insurance; Other Insurance**

92.    On or before the Effective Date, the Debtors shall purchase (to the extent not already purchased) and maintain directors, officers, managers, and employee liability tail coverage for the six-year period following the Effective Date on terms no less favorable than the Debtors' existing director, officer, manager, and employee coverage and with an aggregate limit of liability upon the Effective Date of no less than the aggregate limit of liability under the existing director,

officer, manager, and employee coverage upon placement.  Reasonable directors and officers insurance policies shall remain in place in the ordinary course during the Chapter 11 Cases and from and after the Effective Date.

93.     Any directors and officers insurance policies shall be assumed by the Debtors on behalf of the applicable Debtor and assigned to the Wind-Down Debtor effective as of the Effective Date, pursuant to sections 365 and 1123 of the Bankruptcy Code, unless such insurance policy previously was rejected by the Debtors or the Debtors' Estates pursuant to a Bankruptcy Court order or is the subject of a motion to reject pending on the Effective Date, and coverage for defense and indemnity under any such policies shall remain available to all individuals within the definition of "Insured" in any such policies. In addition, on and after the Effective Date, all officers, directors, agents, or employees who served in such capacity at any time before the Effective Date shall be entitled to the full benefits of any directors and officers insurance policy in effect or purchased as of the Effective Date for the full term of such policy regardless of whether such officers, directors, agents, and/or employees remain in such positions on or after the Effective Date, in each case, to the extent set forth in such policies.

**SS.     Preservation of Causes of Action**

94.     Pursuant to the Sale Transaction Documentation, the Debtors assigned and transferred to the Purchasers all of the Transferred Causes of Action pursuant to the Sale Transaction Documentation in connection with the Sale Transactions and in accordance with the Sale Orders.  For the avoidance of doubt, the Wind-Down Debtors or the Plan Administrator, as applicable, will retain the right to enforce the terms of the Sale Transaction Documentation.

95.     Except as otherwise provided in the Plan or in the Sale Orders, in accordance with section 1123(b) of the Bankruptcy Code, but subject to Article VIII of the Plan, each Debtor reserves and, as of the Effective Date, assigns to the Wind-Down Debtor the Retained Causes of

Action which shall include those actions specifically enumerated in the Schedule of Retained Causes of Action. On and after the Effective Date, the Wind-Down Debtor and the Plan Administrator (following transfer of such Causes of Action to the Plan Administrator) may enforce all rights to commence and pursue, as appropriate, any and all of the Retained Causes of Action on behalf of and for the benefit of the applicable beneficiaries, whether arising before or after the Petition Date, including any actions specifically enumerated in the Schedule of Retained Causes of Action, and the Wind-Down Debtor's or the Plan Administrator's rights to commence, prosecute, or settle such Causes of Action shall be preserved notwithstanding the occurrence of the Effective Date, other than the Causes of Action released by the Debtors pursuant to the releases and exculpations contained in the Plan, including in Article VIII of the Plan, which shall be deemed released and waived by the Debtors and the Wind-Down Debtor as of the Effective Date.

96.     The Wind-Down Debtor or the Plan Administrator, as applicable, may pursue such Retained Causes of Action, as appropriate, in accordance with the best interests of the Wind-Down Debtor. **No Entity may rely on the absence of a specific reference in the Plan, the Plan Supplement, or the Disclosure Statement to any Retained Cause of Action against it as any indication that the Debtors, the Wind-Down Debtor, or the Plan Administrator, as applicable, will not pursue any and all available Causes of Action against it. The Debtors, the Wind-Down Debtor, or the Plan Administrator, as applicable, expressly reserve all rights to prosecute any and all Retained Causes of Action against any Entity, except as otherwise expressly provided in the Plan, including Article VIII of the Plan.** Unless any Causes of Action of the Debtors against a Person or Entity are waived, relinquished, exculpated, released, compromised, or settled in the Plan or a Final Order, the Wind-Down Debtor or the Plan Administrator, as applicable, expressly reserve all Causes of Action, for later adjudication, and,

therefore, no preclusion doctrine, including the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable, or otherwise), or laches, shall apply to such Causes of Action upon, after, or as a consequence of the Confirmation or Consummation. For the avoidance of doubt, prior to the Effective Date any Litigation Settlement or other settlement of any Litigation Claim (for the avoidance of doubt, other than the CFPB Claim) shall be subject to the consent of the Committee (which consent shall not be unreasonably withheld), and on and after the Effective Date, such consent rights shall belong to the Creditor Trustee.

**TT.    Treatment of Executory Contracts and Unexpired Leases**

97.    The provisions governing the treatment of Executory Contracts and Unexpired Leases set forth in Article V of the Plan (including the procedures regarding any and all disputes concerning the assumption, assumption and assignment, or rejection, as applicable, of such Executory Contracts and Unexpired Leases) shall be, and hereby are, approved in their entirety.

98.    On the Effective Date, except as otherwise provided in the Plan or in the Sale Orders, each Executory Contract or Unexpired Lease not previously assumed, assumed and assigned, or rejected shall be deemed automatically rejected, pursuant to sections 365 and 1123 of the Bankruptcy Code, unless such Executory Contract or Unexpired Lease:  (1) is identified on the Assumed Executory Contracts and Unexpired Leases Schedule; (2) is the subject of a motion to assume (or assume and assign) such Executory Contract that is pending on the Confirmation Date; (3) is a contract, instrument, release, indenture, or other agreement or document entered into in connection with the Plan; (4) is a directors and officers insurance policy; (5) is the Asset Purchase Agreements; or (6) is to be assumed by the Debtors and assigned to the Purchasers in connection with the Sale Transaction and pursuant to the Sale Transaction Documents.

99.    Entry of this Confirmation Order by the Bankruptcy Court shall constitute a Final Order approving the assumptions, assumptions and assignments, or rejections of the

Executory Contracts or Unexpired Leases pursuant to the Plan; *provided* that neither the Plan nor this Confirmation Order is intended to or shall be construed as limiting the Debtors' authority under the Sale Order to assume and assign Executory Contracts and Unexpired Leases to Purchaser pursuant to the Asset Purchase Agreements. Any motions to assume Executory Contracts or Unexpired Leases pending on the Effective Date shall be subject to approval by this Bankruptcy Court on or after the Effective Date by a Final Order but may be withdrawn, settled, or otherwise prosecuted by the Wind-Down Debtor. Each Executory Contract and Unexpired Lease assumed pursuant to Article V.A of the Plan or by any order of this Bankruptcy Court, which has not been assigned to a third party prior to the Confirmation Date, if any, shall revest in and be fully enforceable by the Wind-Down Debtor in accordance with its terms, except as such terms are modified by the provisions of the Plan or any order of this Bankruptcy Court authorizing and providing for its assumption under applicable federal law.

100.    Notwithstanding anything to the contrary in the Plan or the Sale Transaction Documents, the Debtors, the Wind-Down Debtor, the Purchasers and the Plan Administrator, as applicable, reserve the right to alter, amend, modify, or supplement the Assumed Executory Contracts and Unexpired Leases Schedule and the Rejected Executory Contracts and Unexpired Leases Schedule identified in Article V of the Plan and in the Plan Supplement. The Debtors or the Wind-Down Debtor, as applicable, shall provide notice of any amendments to the Rejected Executory Contracts and Unexpired Leases Schedule or the Assumed Executory Contracts and Unexpired Leases Schedule to the parties to the Executory Contracts or Unexpired Leases affected thereby. For the avoidance of doubt, Article V of the Plan relates to Executory Contracts or Unexpired Leases other than such agreements assumed, assumed and assigned, or rejected in accordance with the terms of the Sale Orders.

**UU.   Provisions Governing Distributions**

101.    The procedures governing distributions contained in Article VI of the Plan shall be, and hereby are, approved in their entirety.  Except as otherwise set forth in the Plan or this Confirmation Order, the Distributions under the Plan shall be made by the Disbursing Agent, or the Entity or Entities selected by the Debtors or the Wind-Down Debtor, as applicable, to make or facilitate distributions contemplated under the Plan, including the Plan Administrator, if applicable.

**VV.   Procedures for Resolving Disputed, Contingent, and Unliquidated Claims or Equity Interests**

102.    The procedures for resolving disputed, contingent, and unliquidated claims or equity interests contained in Article VII of the Plan shall be, and hereby are, approved in their entirety.

**WW.   Conditions to Effective Date**

103.    The provisions governing the conditions precedent to the Effective Date set forth in Article IX of the Plan shall be, and hereby are, approved in their entirety.  The Debtors are authorized to consummate the Plan at any time after the entry of this Confirmation Order, subject to satisfaction or waiver of such provisions pursuant to their terms.

**XX.   Retention of Jurisdiction**

104.    The provisions governing the retention of jurisdiction set forth in Article XI of the Plan shall be, and hereby are, approved in their entirety.  This Bankruptcy Court may, and upon the Effective Date shall, retain exclusive jurisdiction over the matters arising in, and under, and related to, these Chapter 11 Cases, as set forth in Article XI of the Plan.

**YY.    Immediate Binding Effect**

105.    Subject to Article IX of the Plan and notwithstanding Bankruptcy Rules 3020(e), 6004(h), or 7062 or otherwise, upon the occurrence of the Effective Date, the terms of the Plan and the Plan Supplement shall be immediately effective and enforceable to the fullest extent permitted under the Bankruptcy Code and applicable nonbankruptcy law and deemed binding upon the Debtors, the Wind-Down Debtor, and any and all Holders of Claims or Interests (irrespective of whether their Claims or Interests are deemed to have accepted the Plan), the Purchasers and its affiliates, all Entities that are parties to or are subject to the settlements, compromises, releases, and injunctions described in the Plan, each Entity acquiring property under the Plan and any and all non-Debtor parties to Executory Contracts and Unexpired Leases with the Debtors.

**ZZ.    Additional Documents**

106.    On or before the Effective Date, the Debtors may File with the Bankruptcy Court such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.  The Debtors or Wind-Down Debtor, as applicable, and all Holders receiving distributions pursuant to the Plan, the Creditor Trustee and all other parties in interest may, from time to time, prepare, execute, and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of the Plan.

**AAA.  Payment of Statutory Fees**

107.    Quarterly Fees due and payable prior to the Effective Date shall be paid by the Debtors on the Effective Date.  After the Effective Date, the Wind-Down Debtor and any entity making disbursements on behalf of any the Wind-Down Debtor, or making disbursements on account of an obligation of any Debtor or the Wind-Down Debtor (each, along with the Creditor Trust, a "<u>Disbursing Entity</u>"), shall be liable to pay Quarterly Fees when due and payable.  The

Debtors shall file with the Bankruptcy Court all monthly operating reports due prior to the Effective Date when they become due, using UST Form 11-MOR.  After the Effective Date, the Wind-Down Debtor, on behalf of itself, the Creditor Trust, or any entity making disbursements on behalf of the Wind-Down Debtor, shall file with the Bankruptcy Court separate UST Form 11-PCR reports when they become due.  Each and every one of the Debtors, the Wind-Down Debtor, the Creditor Trust (until its wind-down) and the Disbursing Entities shall remain obligated to pay Quarterly Fees to the Office of the U.S. Trustee until the earliest of that particular Debtor's case being closed, dismissed, or converted to a case under Chapter 7 of the Bankruptcy Code or the wind-down of the Creditor Trust. The U.S. Trustee shall not be required to file any Administrative Claim in the case, and shall not be treated as providing any release under the Plan.

## BBB.  Reservation of Rights

108.    Except as expressly set forth in the Plan, the Plan shall have no force or effect until entry of this Confirmation Order, and this Confirmation Order shall have no force or effect if the Effective Date does not occur.  None of the Filing of the Plan, any statement or provision contained in the Plan or the taking of any action by any Debtor with respect to the Plan, the Disclosure Statement or the Plan Supplement shall be or shall be deemed to be an admission or waiver of any rights of any Debtor with respect to the Holders unless and until the Effective Date has occurred.

## CCC.  Notices

109.    After the Effective Date, the Wind-Down Debtor may notify Entities that, in order to continue to receive documents pursuant to Bankruptcy Rule 2002, such Entity must File a renewed request to receive documents pursuant to Bankruptcy Rule 2002.  After the Effective Date, the Debtors are authorized to limit the list of Entities receiving documents pursuant to Bankruptcy Rule 2002 to those Entities who have Filed such renewed requests.

**DDD.  Non-Severability of Plan Provisions Upon Confirmation**

110.    The provisions of the Plan, including its release, injunction, exculpation and compromise provisions, are mutually dependent and non-severable.  This Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is:  (1) valid and enforceable pursuant to its terms; (2) integral to the Plan and may not be deleted or modified without the consent of the Debtors, consistent with the terms set forth herein; and (3) non-severable and mutually dependent, provided that, notwithstanding the inclusion of the Asset Purchase Agreements or any documents ancillary thereto in the Plan Supplement, the Sale Transaction contemplated in the Asset Purchase Agreements is severable from the Plan and this Confirmation Order, and the non-Confirmation or non-Consummation of the Plan shall not require or result in the voiding, rescission, reversal, or unwinding of the Sale Transaction contemplated in the Asset Purchase Agreements or the revocation of the Debtors' authority under the Sale Order to consummate such Sale Transaction.

**EEE.  Governmental Approvals Not Required**

111.    Except as otherwise specifically provided in this Confirmation Order, this Confirmation Order shall constitute all approvals and consents required, if any, by the laws, rules, or regulations of any state or other governmental authority with respect to the implementation or consummation of the Plan and Disclosure Statement, any documents, instruments, or agreements, and any amendments or modifications thereto, and any other acts referred to in, or contemplated by, the Plan and the Disclosure Statement.

**FFF.  Recording**

112.    The Debtors and the Wind-Down Debtor hereby are authorized to deliver a notice or short form of this Confirmation Order, with the Plan and Asset Purchase Agreements attached

(in a form complying with any applicable non-bankruptcy rules or regulations), to any state or local recording officer.

## GGG. Effect of Conflict between Plan and Confirmation Order

113.    In the event of an inconsistency between the Plan and the Disclosure Statement, the terms of the Plan shall control in all respects. In the event of an inconsistency between the Plan and the Plan Supplement, the terms of the relevant provision in the Plan Supplement shall control (unless stated otherwise in such Plan Supplement document or in the Confirmation Order). In the event of an inconsistency between the Confirmation Order and the Plan or Plan Supplement, the Confirmation Order shall control.

## HHH. Documents, Mortgages, and Instruments

114.    Each federal, state, commonwealth, local, foreign, or other governmental agency is authorized to accept any and all documents, mortgages, and instruments necessary or appropriate to effectuate, implement, or consummate the Plan, including the Restructuring Transactions, and this Confirmation Order.

## III.    Authorization to Consummate

115.    The Debtors are authorized to consummate the Plan at any time after the entry of this Confirmation Order subject to the satisfaction or waiver (by the required parties) of the conditions precedent to the Effective Date set forth in Article IX of the Plan.

## JJJ.    Debtors' Actions Post-Confirmation Through the Effective Date

116.    During the period from entry of this Confirmation Order through and until the Effective Date, each of the Debtors shall continue to operate their business as a debtor in possession, subject to the oversight of this Bankruptcy Court as provided under the Bankruptcy Code, the Bankruptcy Rules, and this Confirmation Order and any order of this Bankruptcy Court that is in full force and effect.  During such period, the Debtors and all other parties in interest

under the Plan are authorized to execute such documents, agreements, or filings that are contemplated by the Plan, the Plan Supplement or the Restructuring Transactions without any further order of this Bankruptcy Court or corporate action, and to take any actions necessary or advisable or appropriate to implement the documents, agreements, or filings that are contemplated by the Plan, the Plan Supplement or the Restructuring Transactions, in each case subject to the terms and conditions of the Plan.  Notwithstanding anything to the contrary herein or in the Plan, upon entry of this Confirmation Order, the Debtors shall be released from any and all reporting obligations arising under any order of the Bankruptcy Court entered in connection with any of the First Day Pleadings.

**KKK.  Notices of Confirmation and Effective Date**

117.    The Wind-Down Debtor shall serve notice of entry of this Confirmation Order, substantially in the form attached hereto as **Exhibit B** (the "Confirmation Order Notice") in accordance with Bankruptcy Rules 2002 and 3020(c), on all known Holders of Claims and Interests and the Bankruptcy Rule 2002 service list within five Business Days after the Effective Date.  As soon as reasonably practicable after the Effective Date, the Wind-Down Debtor shall file notice of the Effective Date and shall serve a copy of the same on the above-referenced parties. The notice of the Effective Date may be included in this Confirmation Order Notice. Notwithstanding the above, no notice of Confirmation or Consummation or service of any kind shall be required to be mailed or made upon any Entity to whom the Debtors mailed notice of the Confirmation Hearing, but received such notice returned marked "undeliverable as addressed," "moved, left no forwarding address," or "forwarding order expired," or similar reason, unless the Debtors have been informed in writing by such Entity, or are otherwise aware, of that Entity's new address.  Further, the Wind-Down Debtor shall only be required to serve those members who have not filed a proof of claim in these Chapter 11 cases with the Confirmation Order Notice to the

extent that such members have active electronic mail addresses.  In addition, no later than five Business Days after the Effective Date, the Wind-Down Debtor shall cause this Confirmation Order Notice, modified for publication, to be published on one occasion in *USA TODAY* or another similar nationally circulated news publication.  The above-referenced notices are adequate under the circumstances of these Chapter 11 Cases, and no other or further notice is necessary.

118.    After the Effective Date, the Plan Administrator or Wind-Down Debtor may notify parties that, in order to continue to receive service of documents pursuant to Bankruptcy Rule 2002, such party must File a renewed request to receive service of documents pursuant to Bankruptcy Rule 2002.  After the Effective Date, the Plan Administrator or Wind-Down Debtor, as applicable, is authorized to limit the list of parties receiving such service pursuant to Bankruptcy Rule 2002 to those parties who have Filed such renewed requests; provided that the Notice of the Effective Date discloses that parties who wish to continue to receive service of documents must file a renewed request for service under Bankruptcy Rule 2002.

### LLL.   Return of Adequate Assurance Deposits.

119.    On the Effective Date, all funds in the Adequate Assurance Account as defined and established by the Debtors in the *Final Order (I) Approving the Debtors' Proposed Adequate Assurance of Payment for Future Utility Services, (II) Approving the Debtors' Proposed Procedures for Resolving Additional Assurance Requests, (III) Prohibiting Utility Providers from Altering, Refusing or Discontinuing Services, and (IV) Granting Related Relief* [Docket No. 200] shall be returned to the Wind-Down Debtor.

### MMM.      Dissolution of Statutory Committees

120.    On the Effective Date, any statutory committee appointed in these Chapter 11 Cases shall dissolve and the members and professionals thereof, shall be released and discharged from all rights and duties from or related to these Chapter 11 Cases, except for the Filing of applications

for compensation.  The Wind-Down Debtor shall no longer be responsible for paying any fees or expenses incurred by any statutory committee, including the Committee, after the Effective Date, except in connection with applications for payment of any fees or expenses for services rendered prior to the Effective Date that are Allowed by this Bankruptcy Court in accordance with the terms of the Plan and the wind-down budget.

**NNN.  Headings**

121.    Headings utilized in this Confirmation Order are for convenience and reference only, and do not constitute a part of the Plan or this Confirmation Order for any other purpose.

**OOO.  Final Order and Waiver of Stay**

122.    For good cause shown, the stay of this Confirmation Order provided by any Bankruptcy Rule is waived, and this Confirmation Order shall be effective and enforceable immediately upon its entry by this Bankruptcy Court.  This Confirmation Order is a Final Order and shall take effect immediately be effective and enforceable immediately upon entry, and its provisions shall be self-executing, and the period in which an appeal must be filed shall commence upon the entry hereof.  In the absence of any Person obtaining a stay pending appeal, the Debtors are authorized to consummate the Plan.

**<u>Exhibit A</u>**

**Plan**

## Exhibit B

**Confirmation Order Notice**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | ) | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| PGX HOLDINGS, INC., *et al.*,[1] | ) | Case No. 23-10718 (CTG) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

## NOTICE OF (I) ENTRY OF CONFIRMATION ORDER,
## (II) OCCURRENCE OF EFFECTIVE DATE, AND (III) RELATED BAR DATES

**PLEASE TAKE NOTICE THAT** on [●], 2023, the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") confirmed the *Second Amended Joint Chapter 11 Plan of Reorganization of PGX Holdings, Inc. and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. [●]] (the "Plan"),[2] which was attached as Exhibit A to the *Findings of Fact, Conclusions of Law, and Order Confirming the Second Amended Joint Chapter 11 Plan of Reorganization of PGX Holdings, Inc. and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. [●]] (the "Confirmation Order").

**PLEASE TAKE FURTHER NOTICE THAT** the Effective Date, as defined in the Plan, occurred on [_____]**, 2023**.

**PLEASE TAKE FURTHER NOTICE THAT** pursuant to Article V.C of the Plan, unless otherwise wise provided by a Final Order of the Bankruptcy Court, all Proofs of Claim with respect to Claims arising from the rejection of Executory Contracts or Unexpired Leases, pursuant to the Plan or this Confirmation Order, if any, must be Filed with the Bankruptcy Court within thirty (30) days after the later of (1) the date of entry of an order of the Bankruptcy Court (including this Confirmation Order) approving such rejection, (2) the effective date of such rejection, or (3) the Effective Date. All Allowed Claims arising from the rejection of the Debtors' Executory Contracts or Unexpired Leases shall be classified as General Unsecured Claims and shall be treated in accordance with Article III of the Plan or such other treatment as agreed to by the Wind-Down Date Debtor and the Holder of such Claim.

---

[1]   The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are:  PGX Holdings, Inc. (2510); Credit Repair UK, Inc. (4798); Credit.com, Inc. (1580); Creditrepair.com Holdings, Inc. (7536); Creditrepair.com, Inc. (7680); eFolks Holdings, Inc. (5213); eFolks, LLC (5256); John C. Heath, Attorney At Law PC (8362); Progrexion ASG, Inc. (5153); Progrexion Holdings, Inc. (7123); Progrexion IP, Inc. (5179); Progrexion Marketing, Inc. (5073); and Progrexion Teleservices, Inc. (5110).  The location of the Debtors' service address for purposes of these chapter 11 cases is:  257 East 200 South, Suite 1200, Salt Lake City, Utah 84111.

[2]  Capitalized terms used but not otherwise defined herein shall have the meanings given to them in Plan.

**PLEASE TAKE FURTHER NOTICE THAT**, except as otherwise provided by this Confirmation Order, the Plan, or a Final Order of the Bankruptcy Court, the deadline for filing requests for payment of Administrative Claims shall be the later of [_____**], 202[●]** (the "Administrative Claim Bar Date"), which is the first Business Day that is 30 days after the Effective Date.  If a Holder of an Administrative Claim (other than DIP Claims, Professional Fee Claims, or claims subject to section 503(b)(1)(D) of the Bankruptcy Code) that is required to, but does not, file and serve a request for payment of such Administrative Claim by the Administrative Claim Bar Date, such Holder shall be forever barred, estopped, and enjoined from asserting such Administrative Claims against the Debtors, the Wind-Down Debtor, or their property without the need for any objection from the Wind-Down Debtor or any notice to or action, order, or approval of the Bankruptcy Court.

**PLEASE TAKE FURTHER NOTICE THAT**, pursuant to the Plan, the Deadline to file final requests for payment of Professional Fee Claims is [_____**], 202[●]** (the "Professional Fee Application Deadline"), which is the first Business Day that is sixty (60) days after the Effective Date.  All professionals must file final requests for payment of Professional Fee Claims by no later than the Professional Fee Application Deadline to receive final approval of the fees and expenses incurred in these Chapter 11 Cases.

**PLEASE TAKE FURTHER NOTICE THAT** the Plan and its provisions are binding on the Debtors, the Wind-Down Debtor, any Holder of a Claim or Interest and such Holder's respective successors and assigns, whether or not the Claim or Interest of such Holder is Impaired under the Plan, and whether or not such Holder or Entity voted to accept the Plan.

**PLEASE TAKE FURTHER NOTICE THAT** the Plan, this Confirmation Order, and other documents and materials filed in these Chapter 11 Cases may be obtained at no charge from Kurtzman Carson Consultants LLC, the notice and claims agent retained by the Debtors in these Chapter 11 Cases (the "Notice and Claims Agent") by (a) visiting the Debtors' restructuring website at https://www.kccllc.net/pgx, (b) writing to: Kurtzman Carson Consultants LLC, Re: PGX Holdings, Inc., et al., [ADDRESS], (c) emailing [●], or (d) calling the Debtors' Notice and Claims Agent at (888) 249-2721 (Domestic) or +1 (310) 751-2604 (International).  You may also obtain copies of any pleadings filed in these Chapter 11 Cases for a fee via PACER at: https://ecf.deb.uscourts.gov/.

PHIL1\22941\0001\10708157.v4-10/20/23
AFDOCS:198987975.2

Dated:  [●], 2023
Wilmington, Delaware

/s/

**KLEHR HARRISON HARVEY BRANZBURG LLP**
Domenic E. Pacitti (DE Bar No. 3989)
Michael W. Yurkewicz (DE Bar No. 4165)
919 North Market Street, Suite 1000
Wilmington, Delaware 19801
Telephone:     (302) 426-1189
Facsimile:      (302) 426-9193
Email:           dpacitti@klehr.com
                    myurkewicz@klehr.com


- and -

Morton R. Branzburg (*pro hac vice* pending)
1835 Market Street, Suite 1400
Philadelphia, Pennsylvania 19103
Telephone:     (215) 569-3007
Facsimile:      (215) 568-6603
Email:           mbranzburg@klehr.com


*Co-Counsel to the Debtors and Debtors in Possession*

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Joshua A. Sussberg, P.C. (admitted *pro hac vice*)
601 Lexington Ave
New York, New York 10022
Telephone:     (212) 446-4800
Facsimile:      (212) 446-4900
Email:           joshua.sussberg@kirkland.com

- and -

Spencer Winters (admitted *pro hac vice*)
Whitney C. Fogelberg (admitted *pro hac vice*)
Alison J. Wirtz (admitted *pro hac vice*)
300 North LaSalle
Chicago, Illinois 60654
Telephone:     (312) 862-2000
Facsimile:      (312) 862-2200
Email:           spencer.winters@kirkland.com
                    whitney.fogelberg@kirkland.com
                    alison.wirtz@kirkland.com


*Co-Counsel to the Debtors and Debtors in Possession*

3